1  Daniel L. Low, SBN: 218387
2  Kotchen & Low LLP
   1745 Kalorama Road NW, Suite 101
3  Washington, DC 20009
4  202-471-1995
   202-280-1128 (fax)
5  dlow@kotchen.com

6
7  Attorneys for Plaintiff
   ROBERT HEATH

8
                    **UNITED STATES DISTRICT COURT**
9
                 **THE NORTHERN DISTRICT OF CALIFORNIA**
10
11                        **SAN JOSE DIVISION**
12
13  ROBERT HEATH,                          ) Case No.: 15-1824
                                           )
14  Plaintiff, on behalf of himself and    ) **COMPLAINT**
    others similarly situated,             )
15                                         )
                                           ) **FOR VIOLATIONS OF THE AGE**
16  v.                                     ) **DISCRIMINATION IN**
                                           ) **EMPLOYMENT ACT AND**
17                                         ) **THE CALIFORNIA FAIR**
    GOOGLE, INC., a Delaware               ) **EMPLOYMENT AND HOUSING**
18  corporation,                           ) **ACT**
                                           )
19          Defendant.                     )
20                                         ) **CLASS ACTION**
                                           )
21                                         ) **JURY TRIAL DEMANDED**
22                                         )
                                           )
23                                         )
                                           )
24                                         )
                                           )
25                                         )
                                           )
26                                         )
                                           )
27                                         )
    _____   )
28

                                    1

COMPLAINT

## INTRODUCTION

1.      Plaintiff Robert Heath ("Mr. Heath"), on behalf of himself and all others similarly situated, alleges Defendant Google, Inc. ("Google"), through its hiring and employment practices, violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621, *et seq.* and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, *et seq*.

2.      Between 2007 and 2013, Google's workforce grew from 9,500 to over 28,000 employees, yet as of 2013, its employees' median age was 29 years old.

3.      In February 2011, Google failed to hire Mr. Heath, then age 60, for the software engineer position he had applied and interviewed for. Mr. Heath had highly-pertinent qualifications and experience, and a Google recruiter even deemed him a "great candidate." Moreover, Google was in the process of "embarking on its largest recruiting / hiring campaign in its history," Nevertheless, Google did not hire Mr. Heath.

4.      Workforce statistics for 2013, as kept by the U.S. Department of Labor ("DOL"),[1] indicate a median age of all U.S. workers of 42.4 years old. The 2013 DOL data further indicates a median age of 41.1 years old for U.S. workers in all "Computer and mathematical occupations."  The DOL data further indicates:  (a) a

---

[1] These statistics are maintained by the Bureau of Labor Statistics at http://www.bls.gov/cps/occupation_age.htm.

COMPLAINT

median age 42.8 years old for all U.S. workers who are "Computer programmers;" (b) a median age of 40.6 years old for all U.S. workers in the occupations of "Software developers, applications and systems software;" (c) a median age of 44.3 years old for U.S. workers in all "Architecture and engineering occupations;" (d) a median age of 41.7 years old for U.S. "Computer hardware engineers;" and a median age of 44.2 years old for U.S. "Engineers, all other."   Google's workforce, comprised mostly of workers under the age of 40, is grossly disproportionate to these U.S. workforce norms.

5.      Google has publicly acknowledged on its "Diversity" webpage, "We're not where we want to be when it comes to diversity. And it is hard to address these kinds of challenges if you're not prepared to discuss them openly, and with the facts."[2] However, Google's Diversity webpage does not include age-related workforce data, despite disclosing data about other worker characteristics.

## **THE PARTIES**

6.      Mr. Heath is a United States citizen, born on June 28, 1950, and has been 60 years old or older at all pertinent times referenced herein. Mr. Heath currently resides in Boynton Beach, FL, formerly resided in Delray Beach, FL and has resided

---

[2] *See* https://web.archive.org/web/20140905062131/http://www.google.com/diversity/at-google.html (archived copy of Google's webpage titled "Diversity" as it appeared September 5, 2014).

COMPLAINT

in Florida at all pertinent times.   Mr. Heath has exhausted his administrative remedies and complied with the statutory prerequisites of filing an ADEA complaint by filing a timely discrimination complaint against Google with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the California Department of Fair Employment & Housing ("DFEH"). Mr. Heath has received right to sue notices from EEOC and DFEH and is timely filing this complaint and the ADEA and FEHA claims herein.

7.      Google is headquartered in Mountain View, California, and is an American multinational corporation with internet-related products and services involving online search, software, computing, and advertising technologies.   Google had revenues of approximately $66 billion in 2014.  At all pertinent times, Google has had 9,500 or more employees in the United States and currently employs over 53,000 employees.   Google, in its own capacity, and as a joint employer with subsidiaries, affiliates, and/or other entities with which it is associated or contracts, has exerted significant control over the hiring and employment decisions and actions herein. Relief is sought against Google as well as its affiliates, employees, agents, assistants, and successors.

## JURISDICTION

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 626(b)-(c), and 29 U.S.C § 216(b).

4

COMPLAINT

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy is greater than $75,000, exclusive of interest and costs, and is between citizens of different states.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) as this matter is a class action with an amount in controversy of greater than $5 million, exclusive of interest and costs, and involves at least one class member (Mr. Heath) who is a citizen of a different state (Florida) than Defendant (California, Delaware).

11.     This Court has supplemental jurisdiction over Mr. Heath's state law claim pursuant to 28 U.S.C. § 1367, as that claim arises out of the same operative facts as Mr. Heath's other claim and, together, they form part of the same case or controversy.

12.     This Court has personal jurisdiction over the Defendant because it engages in continuous and systematic business contacts within the State of California and maintains a substantial physical presence in this State, including the operation of its corporate headquarters in Mountain View, California.

## VENUE AND INTRADISTRICT ASSIGNMENT

13.     Venue in this district is proper pursuant to 28 U.S.C. § 1391, in that Google resides in this District, and a substantial part of the events (including discriminatory hiring practices) giving rise to Mr. Heath's claims occurred in this District.

5

COMPLAINT

Assignment in this Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events giving rise to Mr. Heath's claims occurred in this Division.

## FACTUAL ALLEGATIONS

14.     Mr. Heath graduated from North Carolina State University in 1978 with a B.S. in Computer Science.   Since 1978, Mr. Heath has had extensive work experience in information technology ("IT") positions, including software engineer positions with IBM, Compaq, and General Dynamics.

15.     In February 2011, Mr. Heath was seeking an IT job. He had his resume posted on his personal website (www.bobheath.com). The resume listed his IT jobs dating back to 1978 (*i.e.* over 32 years of post-college jobs), and thus made it apparent he was over 50 years old.

16.     Mr. Heath's website resume stated his desired position involved "opportunities related to software development [and] I would be interested in assignments related to embedded systems or the world wide web and internet assignments regarding C++, Java, PHP, and other software technologies."

17.     Mr. Heath's resume stated he had a master certification in Java, and he had "[s]cored higher than 96% of all previous test takers" for that certification.   His resume further stated he had a master certification in C++, and he had "[s]cored

6

COMPLAINT

higher than 89% of all previous test takers" for that certification. It is rare for an IT professional to have both certifications in Java and C++.

18.     On February 2, 2011, Mr. Heath was contacted by Sam Chun, who worked as a recruiter in Engineering Staffing for Google in the San Francisco Bay Area (on information and belief, in Google's Mountain View, California headquarters). Mr. Chun sent Mr. Heath an electronic message via Mr. Heath's website. The message stated, in pertinent part:

> Not sure if you are aware of this but Google is embarking on its largest recruiting / hiring campaign in its history. With that said I am currently looking for the most talented and brightest software engineers and I was hoping to get a few moments of your time to speak with you about the opportunities we have available at Google. We're specifically looking for engineers with coding expertise in C/C++ or Java for projects related to Chrome OS, Android, Gmail, Search Quality, Adsense, core Google Infrastructure, as well as many other others. After reviewing your experience, I thought you would be a great candidate to come work at Google and add value.

19.     Later on February 2, 2011, Mr. Heath emailed Mr. Chun in response and stated, "[s]ure, I would be interested in working for Google." Mr. Heath further stated, "[a]s you can see [from my resume], I have over 30 years of experience with Java, C/C++, and various assembly languages." Mr. Heath's email then described his related experience working on various applications, systems, and algorithms. Mr. Chun sent an email in reply later that day, and stated "That is great to hear." Mr. Chun asked Mr. Heath to complete a questionnaire, which Mr. Heath promptly completed and emailed to Mr. Chun, along with a copy of his resume.

7

COMPLAINT

20.     On February 3, 2011, Mr. Chun emailed Mr. Heath and informed him "a technical phone interview" of Mr. Heath, to be conducted by a "Google Software Engineer," was scheduled for Tuesday, February 8, 2011 at 10:00 AM PST.  The email indicated the Software Engineer would call Mr. Heath, and "[t]he interview requires you to be at a computer with internet connection throughout the call in case coding is tested in real time via shared document." The email gave Mr. Heath a link so he could access shared documentation via the web-based word program Google Docs.

21.     On February 8, 2011, the Google interviewer began the interview by calling Mr. Heath ten minutes later than scheduled.  This in turn caused the interview to be shorter than the allotted time, and to end before the interview questions were all answered, because, according to the interviewer, he had to terminate the interview at 11:00 AM PST.

22.     The Google interviewer was barely fluent in English. The interviewer used a speaker phone that did not function well. Mr. Heath asked him, politely and repeatedly, if he would use his phone's handset, and the interviewer refused, stating that "we" would have to "suffer" through the interview using the speaker phone because he did not want to have to hold the handset through the whole interview. Communication was very difficult, and Mr. Heath and the interviewer had difficulties understanding each other throughout the interview.

8

COMPLAINT

23.     The Google interviewer began by asking Mr. Heath how his employment would help Google.   Mr. Heath began to answer, but before he finished, the interviewer interrupted him and told him he had answered the question. During the remainder of the interview, the interviewer never asked about Mr. Heath's background, accomplishments, or qualifications.

24.     The remainder of the interview consisted of three sections of technical questions.   The first two sections of questions dealt with calculating the size requirements of a program using arrays and the order of complexity of a sort algorithm. Mr. Heath answered these questions completely and accurately.

25.     The third section of questions involved Mr. Heath writing a short program to find the answer to a problem presented by the interviewer. Mr. Heath arrived at a solution, and asked the interviewer if he would access Mr. Heath's solution — *i.e.*, the coding and program Mr. Heath had written — via the shared Google Docs documentation.

26.     The Google interviewer refused to use Google Docs or access the shared documentation with Mr. Heath's program.   Mr. Heath offered to email the interviewer the program, but the interviewer refused that as well.   The interviewer required Mr. Heath to read the program coding over the phone, which Mr. Heath did. However, the interviewer — whose lack of English fluency and use of the

9

speaker phone further complicated this exchange — seemed not to understand what Mr. Heath was reading, despite Mr. Heath's best efforts.

27.     On February 10, 2011, Mr. Chun emailed Mr. Heath and stated, "[u]nfortunately, based on the feedback we received from the engineer who conducted your technical phone interview, we're not going to be continuing on to the next step in the process." No detail was stated as to why Google did not hire Mr. Heath for the position.

28.     Following the interview, Mr. Heath contacted Google Human Resources ("HR") and explained what had occurred during the interview to an HR representative. The HR representative stated that the interviewer had acted inappropriately. The HR representative stated that the interviewer should have used the Google Docs software to receive the program that he had asked Mr. Heath to write.

29.     On information and belief, by conducting the interview as described above, Google intentionally did not allow Mr. Heath to communicate or demonstrate his full technical abilities, and did not have a sincere interest in hiring Mr. Heath.

30.     On information and belief, Google's interview policies and practices with respect to Mr. Heath and similarly situated workers age 40 or older are disadvantageous as compared to those used with workers under the age of 40, who Google treats preferentially and hires in significantly greater numbers.

10

COMPLAINT

31.     On information and belief, Google failed to hire Mr. Heath and other members of the putative class in favor of younger applicants under the age of 40.

32.     Google, with respect to its hiring decisions and other terms and conditions of employment described herein, discriminates against job applicants and workers who are age 40 or older.

33.     Google's hiring and employment policies and practices described herein, from the pertinent period of August 13, 2010 (300 days preceding the date of Mr. Heath's EEOC complaint) through present, have denied equal opportunities involving hiring, employment and compensation to job applicants and workers who are age 40 or older.

34.     On information and belief, Google managers and executives with control over and/or responsibility for hiring policies, practices, and decisions (including those for Mr. Heath and the putative Class) have made negative and discriminatory statements with regard to older workers age 40 and older.

35.     In a prior lawsuit, *Reid v. Google, Inc.*, the California Supreme Court and Court of Appeal (Sixth District) held that former Google executive Brian Reid (formerly Google's Director of Operations and Director of Engineering) had presented sufficient evidence in alleging age discrimination – including statistical evidence supporting preferential performance reviews and bonuses for workers under 40 and negative statements by high-level executives concerning older workers

11

COMPLAINT

– to warrant a trial and denial of summary judgment.  *See* 235 P.3d 988 (Cal. 2010); 66 Cal. Rptr.3d 744 (Cal. Ct. App. 2007).  As those Courts' found, in addition to presenting statistical evidence, Mr. Reid presented evidence that executives and colleagues at Google  had made negative statements reflecting animus towards workers over the age of 40, including: (a) that Urs Hölzle (Google's eighth employee, former VP of Engineering, and now a senior vice president of technical infrastructure at Google) had supervised Reid and had made age-related comments to Reid "every few weeks," including statements to Reid that his opinions and ideas were "obsolete," and "too old to matter;" (b) that other colleagues at Google had referred to Reid as an "old man," an "old guy," and an "old fuddy-duddy," had told him his knowledge was ancient, and had joked that his CD jewel case office placard should be an "LP" instead of a "CD;" (c) that Reid alleged that in a performance evaluation he received, his supervisor stated "Right or wrong, Google is simply different: Younger contributors, inexperienced first line managers, and the super fast pace are just a few examples of the environment;" (d) that Google's Vice President of Engineering Wayne Rosing (to whom Reid and Hölzle reported) and executive Larry Page (one of Google's co-founders) were involved with Reid's job termination and that Reid was told he was not a "cultural fit" as a reason for his job termination;  and (e) that a former Google recruiter testified that the term "cultural fit" was used in company circles only to describe older workers.

12

36.     Google has engaged in a systematic pattern and practice of discriminating against individuals (including Mr. Heath) who are age 40 and older in hiring, compensation, and other employment decisions with the resultant effect that persons age 40 or older are systemically excluded from positions for which they are well-qualified. The end result of Google's pattern and practice of age discrimination is a workforce with a median age of 29. On information and belief, Google's discriminatory conduct was intentional.

37.     Google's policies and practices, even if facially neutral, have had a substantial adverse impact on the hiring and employment opportunities of applicants and workers (including Mr. Heath) who are age 40 or older and qualified for available positions.

38.     Thus, this Class Action is brought by Mr. Heath on behalf of himself individually and all similarly-situated workers age 40 and older against whom Google has discriminated on the basis of age by implementing its policies and practices of systemically recruiting and hiring workers under the age of 40 in lieu of older qualified workers such that Google's median workforce age is 29.

## CLASS ACTION ALLEGATIONS

39.     Mr. Heath brings this Class Action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), seeking injunctive and monetary relief for the systemic pattern and practice of discriminatory employment practices based

13

COMPLAINT

upon individuals' age.  This action is brought on behalf of the following class of individuals:

> All individuals who are age 40 or older who sought a work position with Google and were not hired from August 13, 2010 through the present.

40.     Members of the class are so numerous and geographically dispersed across the United States that joinder is impracticable.  While the exact number of class members is unknown to Mr. Heath, it is believed to be in the thousands. Furthermore, the class is readily identifiable from information and records in possession of Google.

41.     There are numerous questions of law and fact common to members of the class.  Among the common questions of law or fact are:  (a) whether Google, in making hiring and employment decisions, has intentionally discriminated against individuals who are age 40 and older; (b) whether Google has adopted policies and practices (including but not limited to recruitment, interview and hiring policies and practices) that involve the preferential and discriminatory hiring of workers under the age of 40 to the detriment of workers aged 40 and older; (c) whether Google's policies and/or practices of hiring workers of a median age of 29 have involved a pattern and practice of discrimination against workers aged 40 and older; (d) whether Google's policies and/or practices of hiring workers of a median age of 29 have had a disparate impact on workers aged 40 and older; (e) whether the disparate

14

COMPLAINT

impact of Google's policies and practices is justified by business or commercial necessity or a "reasonable factor other than age;" (g) whether there were alternative, objective means for recruiting, hiring, and employing workers that would have had a less disparate impact on workers aged 40 and older; (h) whether Google has violated the ADEA; (i) whether Google has violated the FEHA; and (j) whether damages, equitable and injunctive relief are warranted for the Class.

42.     Mr. Heath's claims are typical of the Class.  All members of the Class were damaged by the same discriminatory policies and procedures employed by Google.

43.     Mr. Heath will fairly and adequately protect the interest of other class members because he has no interest that is antagonistic to or which conflicts with those of any other class member, and Mr. Heath is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class litigation to represent him and the other class members.

44.     Mr. Heath and the Class he seeks to represent have suffered substantial losses in earnings and other employment benefits and compensation as a result of Google's actions.

45.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Google has acted and/or refused to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to Mr. Heath and the Class as a whole.  The Class members

15

COMPLAINT

are entitled to declaratory and injunctive relief to end Google's systematic, common, uniform, unfair, and discriminatory policies and/or practices.

46.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) for determination of the damages claims of individual class members because the issue of liability is common to the class and the common nucleus of operative facts forms the central issue, which predominates over individual issues of proof.  The primary question common to the Class is whether Google has discriminated on the basis of age in its hiring and employment practices. This question is central to the case and predominates over individual issues among the members of the proposed class.  Google has engaged in a common course of discriminatory conduct in a manner that has harmed all of the class members.  Class certification under Rule 23(b)(3) would be superior to other methods for fair and efficient resolution of the issues because certification will avoid the need for repeated litigation by each individual class member.  The instant case will be eminently manageable as a class action.  Mr. Heath knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

47.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(c)(4) to litigate Mr. Heath's claims for prospective classwide compliance and affirmative injunctive relief necessary to eliminate Google's

COMPLAINT

discrimination.  Certification under this rule is also appropriate to decide whether Google has adopted a systemic pattern and practice of age discrimination in hiring and employment decisions.  Certification under this rule is also appropriate to determine classwide equitable relief and damages, including punitive damages.

**COUNT I**
(Age Discrimination in Employment Act, 29 U.S.C § 621, *et seq.*)
(On Behalf of Plaintiff and the Class)

48.     Mr. Heath re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

49.     The ADEA claims herein are brought by Mr. Heath on behalf of himself and the Class.

50.     Throughout the class liability period, Google has engaged in a pattern and practice of discriminating against individuals who are age 40 and older by:  (a) knowingly and intentionally, in the company's hiring and employment practices, treating adversely individuals who are age 40 and older, and treating preferentially individuals who are under 40 years old, and (b) filling a disproportionately large percentage of its workforce with individuals under 40 years old (such that the median workforce age is 29 years old) even when there are many individuals age 40 or older who are available and well-qualified for the positions at issue.

51.     As a direct and proximate result of Google's intentional discrimination, Mr. Heath and the members of the Class have been denied employment, denied the fair

17

COMPLAINT

opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Defendants.

52.     Throughout the class liability period, Google has used policies and practices related to hiring and employment described herein, that have had a disparate impact on the basis of age (discriminating against workers who are age 40 and older) that are not job-related for the positions at issue, not consistent with business necessity and are not necessitated by any reasonable factor other than age.

53.     Google's actions constitute unlawful discrimination in violation of the ADEA.

### COUNT II
(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.*)
(On Behalf of Plaintiff and the Class)

54.     Mr. Heath re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

55.     The FEHA prohibits an employer from discriminating on the basis of age. Cal. Gov. Code § 12940(a). The FEHA claims herein are brought by Mr. Heath on behalf of himself and the Class.

56.     Throughout the class liability period, Google has engaged in a pattern and practice of discriminating against individuals who are age 40 and older by:  (a) knowingly and intentionally, in the company's hiring and employment practices, treating adversely individuals who are 40 years old and older, and treating

COMPLAINT

preferentially individuals who are under 40 years old, and (b) filling a disproportionately large percentage of its workforce with individuals under 40 years old (such that the median workforce age is 29 years old) even when there are many individuals age 40 or older who are available and well-qualified for the positions at issue.

57.     As a direct and proximate result of Google's intentional discrimination, Mr. Heath and the members of the Class have been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Defendants.

58.     Throughout the class liability period, Google has used policies and practices related to hiring and employment described herein, that have had a disparate impact on the basis of age (discriminating against workers who are age 40 and older) that are not job-related for the positions at issue, not consistent with business necessity and are not necessitated by any reasonable factor other than age.

59.     Google's actions constitute unlawful discrimination in violation of the FEHA.

## JURY TRIAL DEMAND

60.      Pursuant to Fed. R. Civ. P. 38(b), Mr. Heath, on behalf of himself and others similarly situated, demands a trial by jury of all claims asserted in this Complaint so triable.

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Heath requests the Court enter judgment against Google:

a.      Certifying the case, including the FEHA claims, as a class action pursuant to Federal Rule of Civil Procedure 23;

b.      Designating Mr. Heath as representative of the Class;

c.      Designating Mr. Heath's counsel as counsel for the Class;

d.      Rendering a declaratory judgment that the practices complained of herein are unlawful and violate the ADEA and FEHA;

e.      Issuing a permanent injunction against Google and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in unlawful policies, practices, customs, and usages set forth herein;

f.      Ordering Google to adopt a valid, non-discriminatory method for hiring;

g.      Ordering Google to post notices concerning its duty to refrain from discriminating against employees on the basis of age;

h.      Ordering Google to pay Mr. Heath and the Class compensatory damages for harms suffered as a result of Google's violations of the ADEA and FEHA;

i.      Awarding Mr. Heath and the Class prejudgment interest at the prevailing rate on the compensatory damages as a result of Defendants' discriminating against them;

20

COMPLAINT

j.      Awarding Mr. Health and the Class front- and back-pay, and such other

equitable relief as the court deems just and appropriate;

k.      Awarding Mr. Heath and the Class liquidated, exemplary and punitive

damages;

l.      Awarding reasonable attorneys' fees, expert witness fees, expenses, and

costs of this action and of prior administrative actions;

m.      Declaring this action to be an ADEA collective action properly

maintained under 29 U.S.C. §216(b); and

n.      Awarding Mr. Heath and the Class such other relief as this Court deems

just and appropriate.

Dated:  April 22, 2015

By: /s/ Daniel Low

Daniel L. Low, SBN: 218387
Daniel A. Kotchen (*motion pro hac vice to be filed),* SBN: WI 1029853
Michael von Klemperer (*motion pro hac vice to be filed),* SBN: DC 1015469
Kotchen & Low LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
202-471-1995
202-280-1128 (fax)
dlow@kotchen.com
dkotchen@kotchen.com
mvonklemperer@kotchen.com

21

COMPLAINT

Michael F. Brown (*motion pro hac vice to be* filed*),* SBN: WI 1041753
DVG Law Partner LLC
P.O. Box 645
Neenah, WI 54957
920-238-6781
920-273-6177 (fax)
mbrown@dvglawpartner.com

Vonda K. Vandaveer (*motion pro hac vice to be filed)* SBN: DC 483807; CA Bar. No. 206807 (inactive)
V.K. Vandaveer, P.L.L.C.
P.O. Box 27317
Washington, DC  20038-7317
202-340-1215
202-521-0599 (fax)
atty@vkvlaw.com

*Attorneys for Plaintiff Heath*

22

COMPLAINT