Daniel L. Low, SBN: 218387
Kotchen & Low LLP
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
202-471-1995
202-280-1128 (fax)
dlow@kotchen.com

Attorney for Plaintiffs
ROBERT HEATH & CHERYL FILLEKES

# UNITED STATES DISTRICT COURT

# THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ROBERT HEATH, and CHERYL FILLEKES,<br><br>Plaintiffs, on behalf of themselves and others similarly situated,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 15-cv-01824- BLF<br><br>**AMENDED COMPLAINT**<br><br>**FOR VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT AND THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**<br><br>**COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiffs Robert Heath ("Mr. Heath") and Cheryl Fillekes ("Ms. Fillekes") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege Defendant Google, Inc. ("Google"), through its hiring and employment practices, violated the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.* Additionally, Plaintiffs, on behalf of themselves, allege Google violated the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*

2.      Between 2007 and 2013, Google's workforce grew from 9,500 to over 28,000 employees, yet as of 2013 its employees' median age was 29 years old.

3.      In February 2011, Google failed to hire Mr. Heath, then age 60, despite his highly-pertinent qualifications and experience for the software engineer position for which he interviewed, despite a Google recruiter having deemed him a "great candidate" and despite Google needing many new hires and professing "Google is embarking on its largest recruiting / hiring campaign in its history."

4.      Between 2007 and 2014, Ms. Fillekes interviewed with Google for four different positions. On each occasion, she performed well during her phone interviews and was invited to Google's offices for an in-person interview. After each in-person interview, and review by Google's hiring committee, Google failed

AMENDED COMPLAINT - Case No. 15-cv-01824-BLF

to hire Ms. Fillekes despite her highly-pertinent qualifications and programming experience.

5.      Workforce statistics for 2013, as kept by the U.S. Department of Labor ("DOL"),[1] indicate a median age of all U.S. workers of 42.4 years old. The 2013 DOL data further indicates a median age of 41.1 years old for U.S. workers in all "Computer and mathematical occupations."  The DOL data further indicates:  (a) a median age 42.8 years old for all U.S. workers who are "Computer programmers;" (b) a median age of 40.6 years old for all U.S. workers in the occupations of "Software developers, applications and systems software;" (c) a median age of 44.3 years old for U.S. workers in all "Architecture and engineering occupations;" (d) a median age of 41.7 years old for U.S. "Computer hardware engineers;" and a median age of 44.2 years old for U.S. "Engineers, all other."  Google's workforce, comprised mostly of workers under the age of 40, is grossly disproportionate to these U.S. workforce norms.

6.      Google has publicly acknowledged on its "Diversity" webpage, "We're not where we want to be when it comes to diversity. And it is hard to address these kinds of challenges if you're not prepared to discuss them openly, and with the

---

[1] These statistics are maintained by the Bureau of Labor Statistics at http://www.bls.gov/cps/occupation_age.htm.

facts."[2] However, Google's Diversity webpage does not include age-related workforce data, despite disclosing data about other worker characteristics.

## THE PARTIES

7.      Mr. Heath is a United States citizen, born on June 28, 1950, and has been 60 years old or older at all pertinent times referenced herein. Mr. Heath currently resides in Boynton Beach, FL, formerly resided in Delray Beach, FL and has resided in Florida at all pertinent times.   Mr. Heath has exhausted his administrative remedies and complied with the statutory prerequisites of filing an ADEA complaint by filing a timely discrimination complaint against Google with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the California Department of Fair Employment & Housing ("DFEH"). Mr. Heath has received right to sue notices from EEOC and DFEH and is timely filing this complaint and the ADEA and FEHA claims herein.

8.      Ms. Fillekes is a United States citizen and has been 47 years old or older at all pertinent times referenced herein. Ms. Fillekes currently resides in upstate New York.  Until 2014, she resided in Austin, Texas.

9.      Google is headquartered in Mountain View, California, and is an American multinational corporation with internet-related products and services

---

[2] *See* https://web.archive.org/web/20140905062131/http://www.google.com/diversity/at-

involving online search, software, computing, and advertising technologies. Google had revenues of approximately $66 billion in 2014.  At all pertinent times, Google has had 9,500 or more employees in the United States and currently employs over 53,000 employees.  Google, in its own capacity and as a joint employer with subsidiaries, affiliates and/or other entities with which it is associated or contracts, has exerted significant control over the hiring and employment decisions and actions herein. Relief is sought against Google as well as its affiliates, employees, agents, assistants, and successors.

## JURISDICTION

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C § 216(b), and 29 U.S.C. § 626.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the amount in controversy of greater than $75,000, exclusive of interest and costs, and is between citizens of different states.

12.     This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367 as that claim arises out of the same operative facts as Plaintiffs' other claim and, together, the form part of the same case or controversy.

13.     This Court has personal jurisdiction over the Defendant because it engages in continuous and systematic business contacts within the State of California and

google.html (archived copy of Google's webpage titled "Diversity" as it appeared

AMENDED COMPLAINT - Case No. 15-cv-01824-BLF

maintains a substantial physical presence in this State, including the operation of its corporate headquarters in Mountain View, California.

## VENUE AND INTRADISTRICT ASSIGNMENT

14.     Venue in this district is proper pursuant to 28 U.S.C. § 1391, in that Google resides in this District, and a substantial part of the events (including discriminatory hiring practices) giving rise to Plaintiffs' claims occurred in this District. Assignment in this Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this Division.

## FACTUAL ALLEGATIONS

### *Plaintiff Heath*

15.     Mr. Heath graduated from North Carolina State University in 1978 with a B.S. in Computer Science.   Since 1978, Mr. Heath has had extensive work experience in information technology ("IT") positions, including software engineer positions with IBM, Compaq and General Dynamics.

16.     In February 2011, Mr. Heath was seeking an IT job. He had his resume posted on his personal website (www.bobheath.com). The resume listed his IT jobs dating back to 1978 (*i.e.* over 32 years of post-college jobs), and thus made it apparent he was over 50 years old.

September 5, 2014).

17.     Mr. Heath's website resume stated his desired position involved "opportunities related to software development [and] I would be interested in assignments related to embedded systems or the world wide web and internet assignments regarding C++, Java, PHP, and other software technologies."

18.     Mr. Heath's resume stated he had a master certification in Java, and he had "[s]cored higher than 96% of all previous test takers" for that certification.  His resume further stated he had a master certification in C++, and he had "[s]cored higher than 89% of all previous test takers" for that certification.  It is rare for an IT professional to have both certifications in Java and C++.

19.     On February 2, 2011, Mr. Heath was contacted by Sam Chun, who worked as a recruiter in Engineering Staffing for Google in the San Francisco Bay Area (on information and belief, in Google's Mountain View, CA headquarters). Mr. Chun sent Mr. Heath an electronic message via Mr. Heath's website.  The message stated, in pertinent part:

> Not sure if you are aware of this but Google is embarking on its largest recruiting / hiring campaign in its history.  With that said I am currently looking for the most talented and brightest software engineers and I was hoping to get a few moments of your time to speak with you about the opportunities we have available at Google. We're specifically looking for engineers with coding expertise in C/C++ or Java for projects related to Chrome OS, Android, Gmail, Search Quality, Adsense, core Google Infrastructure, as well as many other others.  After reviewing your experience, I thought you would be a great candidate to come work at Google and add value.

7

20.     Google also informed Mr. Heath that we was being considered for positions in Mountain View, as well as elsewhere.

21.     Later on February 2, 2011, Mr. Heath emailed Mr. Chun in response and stated "Sure, I would be interested in working for Google."  Mr. Heath further stated "As you can see [from his attached resume], I have over 30 years of experience with Java, C/C++, and various assembly languages."  Mr. Heath's email then described his related experience working on various applications, systems and algorithms. Mr. Chun sent an email in reply later that day, and stated "That is great to hear." Mr. Chun asked Mr. Heath to complete a questionnaire, which Mr. Heath promptly completed and emailed to Mr. Chun, along with a copy of his resume. On that questionnaire, Mr. Heath indicated that he was interested in working in Mountain View, among other locations.

22.     On February 3, 2011, Mr. Chun emailed Mr. Heath and informed him "a technical phone interview" of Mr. Heath, to be conducted by a "Google Software Engineer," was scheduled for Tuesday, February 8, 2011 at 10:00 AM PST.  The email indicated the Software Engineer would call Mr. Heath, and "[t]he interview requires you to be at a computer with internet connection throughout the call in case coding is tested in real time via shared document." The email gave Mr. Heath a link so he could access shared documentation via Google Docs.

23.     On February 8, 2011, the Google interviewer began the interview by calling Mr. Heath ten minutes later than scheduled.  This in turn caused the interview to be shorter than the allotted time, and to end before the interview questions were all answered, because, according to the interviewer, he had to terminate the interview at 11:00 AM PST.

24.     The Google interviewer was barely fluent in English. The interviewer used a speaker phone that did not function well. Mr. Heath asked him, politely and repeatedly, if he would use his phone's handset, and the interviewer refused, stating that "we" would have to "suffer" through the interview using the speaker phone because he did not want to have to hold the handset through the whole interview.  Communication was very difficult, and Mr. Heath and the interviewer had difficulties understanding each other throughout the interview.

25.     The Google interviewer began by asking Mr. Heath how his employment would help Google.  Mr. Heath began to answer, but before he finished, the interviewer interrupted him and told him he had answered the question. During the remainder of the interview, the interviewer never asked about Mr. Heath's background, accomplishments, or qualifications.

26.     The remainder of the interview consisted of three sections of technical questions.   The first two sections of questions dealt with calculating the size

requirements of a program using arrays and the order of complexity of a sort algorithm. Mr. Heath answered these questions completely and accurately.

27.     The third section of questions involved Mr. Heath writing a short program to find the answer to a problem presented by the interviewer. Mr. Heath arrived at a solution, and asked the interviewer if he would access Mr. Heath's solution — *i.e.* the coding and program Mr. Heath had written — via the shared Google Docs documentation.

28.     The Google interviewer refused to use Google Docs or access the shared documentation with Mr. Heath's program.  Mr. Heath offered to email the interviewer the program, and interviewer refused that as well.  The interviewer required Mr. Heath to read the program coding over the phone, which Mr. Heath did. However, the interviewer — whose poor English and use of the speaker phone further complicated this exchange — seemed not to understand what Mr. Heath was reading, despite Mr. Heath's best efforts.

29.     On February 10, 2011, Mr. Chun emailed Mr. Heath and stated "Unfortunately, based on the feedback we received from the engineer who conducted your technical phone interview, we're not going to be continuing on to the next step in the process." No detail was stated as to why Google did not hire Mr. Heath for the position. On information and belief, Mr. Chun, along with other Google representatives located in California, were involved with the decision to

not offer Mr. Heath a position. On information and belief, the phone interviewer who interviewed Mr. Heath had worked in California for Google and his input, and/or the input of Google representatives senior to him who were located in California, contributed to the decision not to hire Mr. Heath.

30.     Following the interview, Mr. Heath contacted Google Human Resources ("HR") and explained what had occurred during the interview to an HR representative. The HR representative stated that the interviewer had acted inappropriately. The HR representative stated the interviewer should have used the Google Docs software to receive the program that he had asked Mr. Heath to write.

31.     On information and belief, by conducting the interview as described above, Google intentionally did not allow Mr. Heath to communicate or demonstrate his full technical abilities and did not have a sincere interest in hiring Mr. Heath.

*Plaintiff Fillekes*

32.     Ms. Fillekes started programming as a high school student in 1976. She attended Cornell University, where she earned a B.S. in engineering in 1982. In 1990, she earned a PhD in geophysics from the University of Chicago. In 1993, she served as the Mary I. Bunting Science Scholars Postdoctoral Fellow at Harvard University. She has approximately 40 years of programing experience in a variety

of programming languages (including Pascal, Basic, PL1, C, C++, and Python), and specializes in Unix and Linux systems programming.

33.    In 2007, a Google recruiter contacted Ms. Fillekes for possible employment in either Google's Engineering and Testing group, or Google's Software Development group. After performing well during a series of telephone interviews, Google invited Ms. Fillekes for an in-person interview in Mountain View. After the interview, the Google recruiter told Ms. Fillekes that she had performed very well and that her application would be submitted to Google's centralized hiring committee in Mountain View. However, Ms. Fillekes did not hear from Google for several months. When she ultimately reached out to Google, she was told that she had not been selected.

34.    In April 2010, Steven Norton, a California-based Google recruiter, contacted Ms. Fillekes. Mr. Norton informed Ms. Fillekes that "we are now hiring for hundreds of openings this year" and asked whether she was interested in applying. Mr. Norton was aware that Ms. Fillekes had previously applied for a position with Google and stated that "I can tell by your profile on linkedin and your previous interview scores, you are an ideal candidate!" Ms. Fillekes responded that she was interested. On April 8, 2010, Ms. Fillekes interviewed with Mr. Norton and another recruiter, Neha Chaudary.

AMENDED COMPLAINT - Case No. 15-cv-01824-BLF

35.      After performing well, Ms. Fillekes was asked to participate in a second phone interview. On April 19, 2010 she participated in a technical phone interview with Ernest Lam. Later that day, Mr. Norton told Ms. Fillekes that "I am happy to inform you that you did great on your interview."

36.      Mr. Norton handed Ms. Fillekes' application off to Karen Cutler, a Google Software Engineering Recruiter responsible for coordinating Ms. Fillekes' next round of interviews. As requested, Ms. Fillekes sent Ms. Cutler her resume. However, Ms. Cutler was dissatisfied and sought additional information, asking "can you please send me an updated resume that shows your graduation dates for each degree." Ms. Fillekes provided her with this information.

37.      On May 10, 2010, Ms. Fillekes attended an in-person interview in Mountain View and met with a number of Google representatives. Ms. Fillekes performed well during these interviews and was told that her application would be reviewed by Google's hiring committee. On May 17, 2010, Ms. Cutler emailed Ms. Fillekes to inform her that after review by Google's hiring committee, she had not been selected.

38.      On August 30, 2011, Google recruiter Svetlana Sladkova contacted Ms. Fillekes about a position as a Site Reliability Engineering ("SRE") Systems Engineer on the Google.com (SRE) team. As Ms. Sladkova noted, Ms. Fillekes' "Linux expertise may be an excellent fit for our Google.com team." After

AMENDED COMPLAINT - Case No. 15-cv-01824-BLF

performing well during several phone interviews with Google technical recruiters and a member of the SRE team, Ms. Fillekes was invited for an on-site interview.

39.     On November 29, 2011, Ms. Fillekes attended in-person interviews in Mountain View and met with a number of Google representatives, including Gary Arneson. Ms. Fillekes performed well during these interviews and was told that her application would be reviewed by Google's hiring committee. However, on December 8, 2011, Mr. Arneson informed Ms. Fillekes that after review by Google's hiring committee, she had not been selected.

40.     On December 13, 2013, Google recruiter John Wilson contacted Ms. Fillekes about another job opportunity at Google. Ms. Fillekes expressed interested and, on March 14, 2014, she was interviewed by phone by Google recruiter Mawulom Nenonene. In mid-June 2014, Ms. Fillekes participated in a second interview with Google recruiter Emily Mao. After performing well during these screening interviews, Ms. Fillekes participated in a technical phone interview on July 16, 2014. After the results of the technical interview were reviewed by Google's hiring committee, Ms. Fillekes was invited for in-person interviews.

41.     On August 24, 2014, Ms. Fillekes attended in-person interviews at Google's New York City offices, and met with a number of Google representatives. Ms. Fillekes performed well during these interviews and was told that her application would be reviewed by Google's hiring committee. However,

on August 29, 2014, Kevin Pierpont, a Google Technical recruiter, informed Ms. Fillekes that after review by Google's hiring committee, she had not been selected.

42.     Despite being very well qualified for each of the positions she interviewed for, Google did not hire her for any position after she attended her in-person interviews.

43.     On information and belief, Google's interview policies and practices with respect to Plaintiffs and similarly situated workers age 40 or older are disadvantageous as compared to those used with workers under 40 years old, who Google treats preferentially and hires in significantly greater numbers.

44.     On information and belief, Google failed to hire Plaintiffs and other similarly situated individuals in favor of younger applicants under the age of 40.

45.     Google, with respect to its hiring decisions and other terms and conditions of employment described herein, discriminates against job applicants and workers who are forty years old and older.

46.     Google's hiring and employment policies and practices described herein, from the pertinent period of August 13, 2010 (300 days preceding the date of Mr. Heath's EEOC complaint) through present, have denied equal opportunities involving hiring, employment and compensation to job applicants and workers who are forty years old and older.

AMENDED COMPLAINT - Case No. 15-cv-01824-BLF

47.     On information and belief, Google's discriminatory conduct has occurred by reckless indifference and/or intentional discrimination.

48.     On information and belief, Google managers and executives with control over and/or responsibility for hiring policies, practices, and decisions (including those for Plaintiffs and similarly situated individuals) have made negative and discriminatory statements with regard to older workers age 40 and older.

*Related Actions*

49.     The EEOC has received multiple complaints of age discrimination by Google, and is currently conducting an extensive investigation into Google's employment policies and practices. As part of that investigation, the EEOC requested a copy of Google's hiring policies and related documents. Google refused to provide these documents to the EEOC and has refused to cooperate with the EEOC's investigation.

50.     In a prior lawsuit, *Reid v. Google, Inc.*, the California Supreme Court and Court of Appeal (Sixth Circuit) held that former Google executive Brian Reid (formerly Google's Director of Operations and Director of Engineering) had presented sufficient evidence in alleging age discrimination – including statistical evidence supporting preferential performance reviews and bonuses for workers under 40 and negative statements by high-level executives concerning older workers – to warrant a trial and denial of summary judgment. *See* 235 P.3d 988

(Cal. 2010); 66 Cal. Rptr.3d 744 (Cal. Ct. App. 2007).  As those Courts' found, in addition to presenting statistical evidence, Mr. Reid presented evidence that executives and colleagues at Google  had made negative statements reflecting animus towards workers over the age of 40, including: (a) that Urs Hölzle (Google's eighth employee, former VP of Engineering, and now a senior vice president of technical infrastructure at Google) had supervised Reid and had made age-related comments to Reid "every few weeks," including statements to Reid that his opinions and ideas were "obsolete," and "too old to matter;" (b) that other colleagues at Google had referred to Reid as an "old man," an "old guy," and an "old fuddy-duddy," had told him his knowledge was ancient, and had joked that his CD jewel case office placard should be an "LP" instead of a "CD;" (c) that Reid alleged that in a performance evaluation he received, his supervisor stated "Right or wrong, Google is simply different: Younger contributors, inexperienced first line managers, and the super fast pace are just a few examples of the environment;" (d) that Google's Vice President of Engineering Wayne Rosing (to whom Reid and Hölzle reported) and executive Larry Page (one of Google's co-founders) were involved with Reid's job termination and that Reid was told he was not a "cultural fit" as a reason for his job termination;  and (e) that a former Google recruiter testified that the term "cultural fit" was used in company circles only to describe older workers.

## ADEA COLLECTIVE ACTION ALLEGATIONS

51.     Plaintiffs bring this case as an ADEA collective action pursuant to the 29 U.S.C. 216(b), on behalf of themselves and all individuals similarly situated individuals: *i.e.*, individuals who are age 40 or older who sought a work position with Google located in the United States and were not hired from August 13, 2010 through the present.

52.     Google has engaged in a systematic pattern and practice of discriminating against individuals (including Plaintiffs) who are age 40 and older in hiring, compensation, and other employment decisions with the resultant effect that persons age 40 or older are systemically excluded from positions for which they are well-qualified. The end result of Google's pattern and practice of age discrimination is a workforce with a median age of 29.

## COUNT I
(Age Discrimination in Employment Act, 29 U.S.C § 621, *et seq.*)
(On Behalf of Plaintiffs and Similarly Situated Individuals)

53.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

54.     The ADEA claims herein are brought by Plaintiffs and similarly situated individuals.

55.     Throughout the liability period, Google has engaged in a pattern and practice of discriminating against individuals who are age 40 and older by:  (a)

18

knowingly and intentionally, in the company's hiring and employment practices, treating adversely individuals who are 40 years old and older, and treating preferentially individuals who are under 40 years old, and (b) filling a disproportionately large percentage of its workforce with individuals under 40 years old (such that the median workforce age is 29 years old) even when there are many individuals age 40 or older who are available and well-qualified for the positions at issue.

56.     As a direct and proximate result of Google's intentional discrimination, Mr. Heath and similarly situated individuals have been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Defendants.

57.     Google's actions constitute unlawful discrimination in violation of the ADEA.

## COUNT II
(California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*)
(On Behalf of Plaintiffs individually)

58.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

59.     The FEHA prohibits an employer from discriminating on the basis of age. Cal. Gov. Code § 12940(a). The FEHA claims herein are brought by Plaintiffs individually.

60.     Throughout the liability period, Google has engaged in a pattern and practice of discriminating against individuals who are age 40 and older by:  (a) knowingly and intentionally, in the company's hiring and employment practices, treating adversely individuals who are 40 years old and older, and treating preferentially individuals who are under 40 years old, and (b) filling a disproportionately large percentage of its workforce with individuals under 40 years old (such that the median workforce age is 29 years old) even when there are many individuals age 40 or older who are available and well-qualified for the positions at issue.

61.     As a direct and proximate result of Google's intentional discrimination, Plaintiffs have been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Google.

62.     Google's actions constitute unlawful discrimination in violation of the FEHA.

## **JURY TRIAL DEMAND**

63.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs, on their behalf and on behalf of others similarly situated, demand a trial by jury of all claims asserted in this Amended Complaint so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request this Court enter judgment against Google:

a.      Declaring this action to be an ADEA collective action properly maintained under 29 U.S.C. §216(b);

b.      Designating Plaintiffs as representatives of the Collective action;

c.      Designating Plaintiffs' counsel as counsel for the Collective action;

d.      Rendering a declaratory judgment that the practices complained of herein are unlawful and violate the ADEA and FEHA;

e.      Issuing a permanent injunction against Google and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in unlawful policies, practices, customs, and usages set forth herein;

f.      Ordering Google adopt a valid, non-discriminatory method for hiring;

g.      Ordering Google post notices concerning its duty to refrain from discriminating against employees on the basis of age;

h.      Ordering Google pay Plaintiffs, and similarly situated individuals, compensatory damages for harms suffered as a result of Google's violations of the ADEA;

AMENDED COMPLAINT - Case No. 15-cv-01824-BLF

i.   Ordering Google pay Plaintiffs compensatory and punitive damages, attorneys' fees, and costs for harms suffered as a result of Google's violations of FEHA;

j.   Awarding Plaintiffs, and similarly situated individuals, prejudgment interest at the prevailing rate on the compensatory damages as a result of Defendants' discriminating against them;

k.   Awarding Plaintiffs, and similarly situated individuals, liquidated, exemplary and punitive damages;

l.   Awarding reasonable attorneys' fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

m.   Awarding Plaintiffs, and similarly situated individuals, such other relief as this Court deems just and appropriate.

Dated:  June 25, 2015

By: /s/ Daniel Low

    Daniel L. Low, SBN: 218387
    Daniel A. Kotchen (*motion pro hac vice to be filed)*, SBN: WI 1029853
    Michael von Klemperer (*motion pro hac vice to be filed)*, SBN: DC 1015469
    Kotchen & Low LLP
    1745 Kalorama Road NW, Suite 101
    Washington, DC 20009
    202-471-1995
    202-280-1128 (fax)
    dlow@kotchen.com
    dkotchen@kotchen.com

22

mvonklemperer@kotchen.com


Michael F. Brown, SBN: WI 1041753
DVG Law Partner LLC
P.O. Box 645
Neenah, WI 54957
920-238-6781
920-273-6177 (fax)
mbrown@dvglawpartner.com

Vonda   K.   Vandaveer,   SBN:   DC
483807; CA Bar. No. 206807 (inactive)
V.K. Vandaveer, P.L.L.C.
P.O. Box 27317
Washington, DC  20038-7317
202-340-1215
202-521-0599 (fax)
atty@vkvlaw.com

*Attorneys for Plaintiffs*

AMENDED COMPLAINT - Case No. 15-cv-01824-BLF