Daniel L. Low, CA Bar No. 218387
dlow@kotchen.com
Daniel Kotchen (*pro hac vice*)
dkotchen@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Telephone:  202.841.7164
Facsimile:  202.280.1128

Attorneys for Plaintiff
CHERYL FILLEKES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

ROBERT HEATH, and
CHERYL FILLEKES,
Plaintiffs, on behalf of themselves and
others similarly situated,

         Plaintiffs,

    v.

GOOGLE INC., a Delaware
corporation,

         Defendant.

Case No. 15-cv-01824-BLF

**PLAINTIFF CHERYL FILLIKES' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

Date: November 10, 2016
Time: 9:00 a.m.
Location: Courtroom 3, 5th Floor,
         San Jose

Complaint Filed:  April 22, 2015
Trial Date:  May 1, 2017

## <u>PLAINTIFF CHERYL FILLEKES' NOTICE OF MOTION AND MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on November 10, 2016 at 9:00 a.m., in Courtroom 3, 5th Floor of the above-titled court, located at 280 South 1st Street, San Jose, California 95113, Plaintiff Cheryl Fillekes ("Plaintiff") will, and hereby does, move this Court pursuant to 29 U.S.C. § 216(b), to conditionally certify an opt-in Fair Labor Standards Act collective action of certain applicants age 40 and older who allegedly were discriminated against by Defendant Google, Inc. ("Google") in violation of the Age Discrimination in Employment Act. Plaintiff provided notice to all parties of its intent to file this Motion, and provided written notice to Google on June 28, 2016. Google does not consent to Plaintiff's Motion for Conditional Certification.  Pursuant to Local Rule 7-1(b), Plaintiff requests that this motion be decided without oral argument.

Dated: June 28, 2016

Respectfully submitted,

By: /s/ Daniel Low
    Daniel L. Low, SBN: 218387
    Daniel Kotchen (*pro hac vice*)
    Kotchen & Low LLP
    1745 Kalorama Road NW, Suite 101
    Washington, DC 20009
    202-471-1995
    202-280-1128 (fax)
    dlow@kotchen.com
    dkotchen@kotchen.com

    *Attorneys for Plaintiff Cheryl Fillekes*

# TABLE OF CONTENTS

I.     PROPOSED CLASS ........................................................................ 1

II.    BACKGROUND ........................................................................... 2

III.   LEGAL STANDARDS ................................................................ 9

IV.   ARGUMENT ............................................................................... 12

      A.    This Case Satisfies the Lenient First-Step Standard for Conditional Certification. ................................................ 12

      B.    Class Notice Should Be Authorized. .......................................... 17

      C.    Google Should Be Ordered to Produce Names and Contact Information of Potential Class Members. ................................... 19

V.    CONCLUSION ........................................................................... 20

PLAINTIFF CHERYL FILLEKES' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B)

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530 (N.D. Cal. 2007)......................18

*Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991) ...................17

*Guy v. Casal Inst. of Nev., LLC*, No. 2:13-cv-02263, 2014 WL 1899006 (D. Nev. May 12, 2014)..............................................................................................19

*Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835 (N.D. Cal. 2010) ......................17

*Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001 (N.D. Cal. 2010) ...................10, 11

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ...................................11, 18

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ...........................12, 13

*Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623 (E.D. Cal. 2009) ........10, 11

*Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004) ......................14

*Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124 (N.D. Cal. 2009)...........10, 19, 20

*Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ...................12, 13

*Morden v. T-Mobile USA, Inc.*, No. C05-2112, 2006 WL 2620320 (W.D. Wash. Sept. 12, 2006)..............................................................................................11

*Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2013 WL 4552493 (N.D. Cal. Aug. 27, 2013)..............................................................................................19

*Pagliolo v. Guidant Corp.*, No. 06-943, 2007 WL 2892400 (D. Minn. Sept. 28, 2007) ...........................................................................................12, 13, 16, 17

*Pines v. State Farm Gen. Ins. Co.*, No. CV 89-631, 1992 WL 92398 (C.D. Cal. Feb. 25, 1992)..............................................................................................12, 16

*Prentice v. Fund for Pub. Interest Research, Inc.*, No. C-06-7776SC, 2007 WL 2729187 (N.D. Cal. Sept. 18, 2007)..............................................................11, 13

*Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197 (N.D. Cal. 2013) ........10, 11, 13

*Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268 (N.D. Cal. 2015) ......................17

PLAINTIFF CHERYL FILLEKES' NOTICE OF MOTION AND MOTION FOR CONDITIONAL
CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B)

*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) ....................11

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ..................................10, 17

*Williams v. Sprint / United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004) ...........12

*Woods v. Vector Mktg. Corp.*, No. C-14-0264, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015)...............................................................................................................18, 19

*Wynn v. Nat'l. Broad. Co.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) ..........................10

**Statutes**

29 U.S.C. § 216 ............................................................................................................1, 9

29 U.S.C. § 626 ...............................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 23 ..........................................................................................................11

## MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION

Plaintiff Cheryl Fillekes ("Plaintiff"), pursuant to 29 U.S.C. § 216(b), moves the Court to conditionally certify an opt-in Fair Labor Standards Act ("FLSA") collective action of certain applicants age 40 and older who allegedly were discriminated against by Defendant Google, Inc. ("Google") in violation of the Age Discrimination in Employment Act ("ADEA"). This case meets the lenient standard for conditional certification as Plaintiff has shown through substantial allegations and declarations that the proposed class members are "similarly situated" pursuant to 29 U.S.C. § 216(b) and were affected by a common policy or plan.

## I.     PROPOSED CLASS

Ms. Fillekes requests that the Court conditionally certify the following class:

> All individuals who interviewed in-person for any Software Engineer ("SWE"), Site Reliability Engineer ("SRE"), or Systems Engineer ("SysEng") position with Google in the United States during the time period from August 13, 2010 through the present; were age 40 or older at the time of the interview; and were refused employment by Google.

The class is objectively defined in a way that allows class members to easily determine whether they are part of the class. Ms. Fillekes was a candidate for each of the positions in the proposed class. The proposed class includes only candidates who participated in an in-person interview. Candidates for Google positions typically participate in a phone-screening interview(s) before being invited to an in-person interview, and only

a subset of candidates who are interviewed by phone are invited to an in-person interview.[1] Limiting the class to candidates who participated in an in-person interview helps ensure that only highly qualified candidates are included in the proposed class. Further, the class is limited to the in-person interview stage of the hiring process, *i.e.*, situations where Google interviewers could observe the approximate age or life stage of the proposed class member.

## II.    BACKGROUND

Ms. Fillekes alleges that "Google has engaged in a systematic pattern and practice of discriminating against individuals (including [Ms. Fillekes]) who are age 40 and older in hiring, compensation, and other employment decisions with the resultant effect that persons age 40 or older are systemically excluded from positions for which they are well-qualified." Am. Compl. ¶ 52 (Dkt. #18). This pattern and practice includes: "(a) knowingly and intentionally, in the company's hiring and employment practices, treating adversely individuals who are 40 years old and older, and treating preferentially individuals who are under 40 years old, and (b) filling a disproportionately large percentage of its workforce with individuals under 40 years old (such that the median workforce age is 29 years old) even when there are many

---

[1] Approximately ▉% of all candidates considered for SWE positions are invited for an on-site intervi▉ at Google. GOOG-HEATH-00004596-97 at 4596 (Ex. 1).

individuals age 40 or older who are available and well-qualified for the positions at issue." *Id.* ¶ 55.

Hiring decisions at Google for SWE, SRE, and SysEng positions are made by ████████████████████████. *See* GOOG-HEATH-00005454-5543 (Ex. 2); GOOG-HEATH-00003452-54 at 3453 (Ex. 3). Candidates for these positions are often ████████████████████████████████████████████████████ ██████████████████████████████████████. *See* Ex. 1 at 4596; Ex. 3 at 3452-53. Candidates who receive from interviewers ██████████████████████ █████████████████████████████████████. *See* Ex. 3 at 3453. Not all candidates, however, ██████████████████████████████████ ████████████████████████████. *See, e.g.,* A.B. Decl. ¶14 (Jan. 28, 2016), Fillekes 0008184-88 (Ex. 4); A.H. Decl. ¶¶ 7, 11, 14 (Jan. 17, 2016), Fillekes 0008189-93 (Ex. 5). The ███████████████████████████████████████████ ████████, among other things, a candidate's "Googleyness" to determine whether to extend an offer to the candidate. *How We Hire,* Google, Inc., https://www.google.com/intl/en/about/careers/lifeatgoogle/hiringprocess/ (last visited June 28, 2016) (Ex. 6).

In comparison to the 29 year-old median age of Google's workforce, the median age in the United States for "computer programmers" is 42.8 years old, and for "computer hardware engineers" is 41.7 years old. Am. Compl. ¶¶ 2, 5. On its website,

Google acknowledges that "We're not where we want to be when it comes to diversity." *Id.* ¶ 6.

The EEOC has received multiple complaints of age discrimination by Google, and is currently conducting an extensive investigation into Google's employment policies and practices. *Id.* ¶ 49; Google Answer ¶ 49 (Dkt. #21).

While Plaintiffs' Complaint seeks recovery for age-related discrimination only in hiring, Google pattern and practice of age discrimination also manifests itself in discriminatory pay, promotions, performance reviews, and terminations. For instance, in a prior lawsuit, *Reid v. Google, Inc.*, the California Supreme Court held that former Google executive Brian Reid (formerly Google's Director of Operations and Director of Engineering) had presented sufficient evidence in alleging age discrimination to warrant a trial and denial of summary judgment, including statistical evidence supporting preferential performance reviews and bonuses for workers under 40 and negative statements by high-level executives concerning older workers. Am. Compl. ¶ 50. Mr. Reid presented evidence that executives and colleagues at Google had made negative statements reflecting animus towards workers over the age of 40, including: (a) that a supervisor had made age-related comments to Reid "every few weeks," including statements to Reid that his opinions and ideas were "obsolete," and "too old to matter;" (b) that other colleagues at Google had referred to Reid as an "old man," an "old guy," and an "old fuddy-duddy," and had told him his knowledge was ancient;

(c) that Reid alleged that in a performance evaluation he received, his supervisor stated "Right or wrong, Google is simply different: Younger contributors, inexperienced first line managers, and the super fast pace are just a few examples of the environment;" (d) that Reid was told he was not a "cultural fit" as a reason for his job termination; and (e) that a former Google recruiter testified that the term "cultural fit" was used in company circles only to describe older workers. *Id.*; *Reid v. Google, Inc.*, 235 P.3d 988, 992, 993 (Cal. 2010). Google, and its employees, refer to older workers at Google as "greyglers." *See Google Diversity*, Google, Inc., https://www.google.com/diversity/at-google.html (last visited June 27, 2016) (Ex. 7); GOOG-HEATH-00000441-44 at 441 (Ex. 8).

Plaintiff Cheryl Fillekes' personal experience reflects age discrimination by Google. Ms. Fillekes started programming as a high school student in 1976, received a B.A. in engineering at Cornell University in 1982, received a Ph.D. from the University of Chicago in 1990 in computational geophysics, and served as a Postdoctoral Fellow at Harvard University in 1993. Am. Compl. ¶ 32. She has approximately 40 years of programming experience in a variety of programming languages. *Id.* Between 2007 and 2014, Google interviewed her on separate occasions for four different openings, including some occasions when Google affirmatively reached out to her about the opening based on her impressive qualifications. *Id.* ¶¶ 4, 33-42. On each occasion, she performed well during her phone interviews and was

invited to Google's offices for an in-person interview. *Id.* After each in-person interview, and review by ████████████████ on at least two occasions, Google refused to hire Ms. Fillekes despite her highly-pertinent qualifications and programming experience. *Id.*

In May 2010, Ms. Fillekes interviewed for a position as Software Engineer. A Google recruiter told Ms. Fillekes that she needed to put her dates of graduation on her resume "so the interviewers can see how old you are." Fillekes Depo. Tr. 152:3-15 (Dec. 17, 2015) (Ex. 9); *accord* Heath-Fillekes 00005043-49 at 0005044 (Ex. 10); Fillekes 0008221 (Ex. 11); Heath-Fillekes 0008181-83 at 8181 (Ex. 20). She performed well at her in-person interview, but received a rejection the following week stating that "[a]lthough you have an impressive background, there wasn't a strong enough match to move forward at this time." Heath-Fillekes 00002118 (Ex. 12).

On another occasion, in 2014, Ms. Fillekes interviewed to be a Systems Engineer. She received ████████████████████. *See* GOOG-HEATH-00000848-49 at 848 (Ex. 13). In considering her application, one Google employee expressed: "████████████████████████[.]" GOOG-HEATH-00001487-98 at 1487 (Ex. 14). A few days later, an internal e-mail about bringing Ms. Fillekes for an on-site interview similarly expressed: "████████████████ ████████████████[.]" Ex. 13 at 848.

Other highly qualified older applicants have had similar experiences, passing phone interviews and performing well at in-person interviews, but were rejected after the in-person interview allowed screeners to judge the age of the applicant. For example:

- J.W. has interviewed with Google five or six times, beginning when she was 41. J.W. Decl. ¶¶ 4, 6 (Dec. 23, 2015), Fillekes 0008204-07 (Ex. 15). Despite performing well at in-person interviews, she was not hired. One interviewer expressed concern about a cultural fit, noting that she might not be up for the "lifestyle." *Id.* ¶ 10. Although J.W. assured him that she was willing to work long hours, the interviewer replied that he was still worried that she was "not Googley enough." *Id.*

- M.B. was recruited by Google, passed phone interviews, and performed well at an in-person interview in 2014. M.B. Decl. ¶¶ 4, 7-9 (Jan. 19, 2016), Fillekes 0008212-16 (Ex. 16). M.B., who was 60, was repeatedly questioned about how he would "fit into their culture" and handle "the fast pace at Google," and the interviewers expressed skepticism. *Id.* ¶¶ 5, 9. M.B. was rejected by the hiring committee, and believes that he was rejected because of his age. *Id.* ¶¶ 11-12.

- A.B. was considered for positions in 2014 and 2015. Ex. 4 ¶¶ 4-5, 9. Despite performing well in an in-person interview in 2015, and despite receiving a

glowing recommendation, A.B. was rejected, and he believes that he "was not hired by Google because of my age." *Id.* ¶¶ 13-16.

- A.H. has interviewed with Google three times after being contacted by a Google recruiter, starting in 2002 or 2003, when he was 41 years old. Ex. 5 ¶¶ 4-6. After an in-person interview in 2010 or 2011, he left "feeling that I had been treated unfairly because of my age," and believes that he was not hired "because of my age." *Id.* ¶¶ 14-15.

- A.M. interviewed with Google in 2011, when he was 51 years old, and all six of his interviewers appeared to be in their twenties. A.M. Decl. ¶¶ 11, 12 (Jan. 17, 2016), Fillekes 0008194-98 (Ex. 17). He believes that he "was not hired by Google because of my age," and declined to pursue other opportunities at Google because he believed that it would be futile to pursue those opportunities because of his age. *Id.* ¶¶ 14-15.

- D.A. was recruited to interview with Google three times, likely based on his ████████████████████████████████. D.A. Decl. ¶¶ 2, 4-5 (Jan. 19, 2016), Fillekes 0008199 – Fillekes 0008203 (Ex. 18). In 2007, he was told he ranked highest in one category on a technical phone interview. *Id.* ¶¶ 7, 10. He performed well at the in-person interviews in 2007 and 2009, and was told by one interviewer that the interviewer was surprised that D.A. was not hired. *Id.* ¶ 7. D.A. believes that he "was not hired by Google because of my age." *Id.* ¶ 15.

- K.T. performed well at in-person interviews, but was rejected from employment at Google, and was told on one occasion that it was because he was not a good "fit" for the role. K.T. Decl. ¶¶ 8-11 (Jan. 27, 2016), Fillekes 0008208-11 (Ex. 19). K.T. believes that he "was not hired by Google because of my age." *Id.* ¶ 12.

### III.   LEGAL STANDARDS

Collective actions under the ADEA are authorized by 29 U.S.C. § 626(b), which expressly incorporates collective action enforcement provisions of the FLSA, 29 U.S.C. § 216(b). Under § 216(b), a collective action is appropriate if the proposed opt-in class of employees is "similarly situated":

> An action to recover the liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other *employees similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).

Courts take a two-step approach to determine whether plaintiffs are similarly situated. *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). First, the court makes an initial, conditional "determination of whether plaintiffs are similarly situated, deciding whether a collective action should be certified for the purpose of sending notice of the action to potential class members." *Id.* "The standard

for certification at this stage is a lenient one that typically results in certification." *Id.* (citing *Wynn v. Nat'l. Broad. Co.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)). The sole consequence of conditional certification is the sending of court-approved written notice to potential class members. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043 (2016).

Plaintiff need only show "some identifiable factual or legal nexus [that] binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010). Plaintiff "must simply provide 'substantial allegations, supported by declarations or discovery.'" *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1203 (N.D. Cal. 2013) (quoting *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009)). "And, courts *need not even consider* evidence provided by defendants at this stage." *Id.* (citing *Kress*, 263 F.R.D. at 628). Because a motion for conditional certification comes before discovery is complete and "is made in anticipation of a later more searching review, a movant bears a *very light burden* in substantiating the allegations at this stage." *Prentice v. Fund for Pub. Interest Research, Inc.*, No. C-06-7776SC, 2007 WL 2729187, at *2 (N.D. Cal. Sept. 18, 2007) (emphasis added).

"[C]ourts in this circuit overwhelmingly 'refuse to depart from the notice stage

analysis prior to the close of discovery.'" *Ramirez*, 941 F. Supp. 2d at 1203 (quoting *Kress*, 263 F.R.D. at 629).

The second determination in the two-step process is made after the close of discovery, usually on a motion for decertification by the defendant, utilizing a stricter standard for "similarly situated." *Id*.

Notably, collective actions under the FLSA are not subject to the requirements of Fed. R. Civ. P. 23, and the FLSA requirements are "considerably less stringent." *Hill*, 690 F. Supp. 2d at 1009; *see also Morden v. T-Mobile USA, Inc.*, No. C05-2112, 2006 WL 2620320, at *1-2 (W.D. Wash. Sept. 12, 2006) (rejecting argument that class representative holding one employment position could not also bring collective action on behalf of a second position because the Rule 23 typicality requirement did not apply).

Numerous courts have granted conditional certifications for collective actions alleging violations of the ADEA. *See, e.g.*, *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-73 (1989) (authorizing notice to ADEA class); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1107-08 (10th Cir. 2001) (reversing de-certification of ADEA collective action); *Pines v. State Farm Gen. Ins. Co.*, No. CV 89-631, 1992 WL 92398, at *4, 13 (C.D. Cal. Feb. 25, 1992) (certifying ADEA class in part based on statistical evidence); *Williams v. Sprint / United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004) (finding differences in positions, managers, performance ratings, etc.

between plaintiffs or class members "simply not relevant at the notice stage when plaintiff … has set forth substantial allegations that all plaintiffs were subjected to a pattern or practice of age discrimination").

Statistical evidence of an imbalanced workforce "is often a telltale sign of purposeful discrimination," and can be used to establish a prima facie case of discrimination. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 n.20 (1977); *see also Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1476 (9th Cir. 1995) (statistics relevant to proving pattern and practice of intentional age discrimination); *Pagliolo v. Guidant Corp.*, No. 06-943, 2007 WL 2892400, at *3 (D. Minn. Sept. 28, 2007) (conditionally certifying ADEA class where "[f]acially, plaintiffs have demonstrated a pattern based on their preliminary statistical analysis").

## IV.  ARGUMENT

**A.    This Case Satisfies the Lenient First-Step Standard for Conditional Certification.**

Plaintiff has satisfied her "very light burden" of providing substantial allegations, along with declarations or other discovery showing that class members are "similarly situated" because she and the class members will rely on common evidence to demonstrate that workers over 40 years old were similarly affected by a pattern or practice of age discrimination. *Ramirez*, 941 F. Supp. 2d at 1203; *Prentice*, 2007 WL 2729187, at *2.

For example, Plaintiff has made detailed allegations of statistical evidence showing a pattern of age discrimination. Statistical analysis demonstrates that the median age of workers at Google is 29 years old, compared to an average age in the U.S. workforce of 42.8 for "computer programmers" and 41.7 for "computer hardware engineers." Am. Compl. ¶¶ 2, 5, 5 n.1.[2] Statistical evidence also shows that workers under 40 received preferential performance reviews and bonuses. *Id.* ¶ 50. Such statistical evidence can provide prima facie evidence of a pattern or practice of age discrimination. *Int'l Bhd. of Teamsters*, 431 U.S. at 339 n.20; *Mangold*, 67 F.3d at 1476; *Pagliolo*, 2007 WL 2892400, at *3.

Plaintiff has also offered evidence of how Google's practice of intentional age discrimination was enacted. Google screens out older candidates like Ms. Fillekes at the in-person interview stage after observing and gaining other evidence of the applicant's age. Ms. Fillekes, for example, reached the in-person interview stage of the screening process on all four occasions when she was considered for a position,

---

[2] The complaint cites Bureau of Labor Statistics data for U.S. workforce statistics. Am. Compl. ¶ 5 n.1 (citing http://www.bls.bov/cps/occupation_age.htm). Google's median employee age of 29 years old is reflected in data from Pay Scale. *See* http://www.payscale.com/data-packages/employee-loyalty/full-list (reporting median age of Google employee at 29 years old); *see also Dark Side of Social Media: Age Discrimination*, CBS News, *available at* http://www.cbsnews.com/news/dark-side-of-social-media-age-discrimination/ ("According to PayScale, which claims to have the world's largest employee compensation database, the median age[] of employees at . . . Google [is] 31," compared to HP and IBM, "both of which have a median employee age of 44.").

Case No. 15-cv-01824-BLF

PLAINTIFF CHERYL FILLEKES' MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL
CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B)

but each time was denied employment despite performing well in the interviews. On one of those occasions, a Google recruiter required Ms. Fillekes to put her dates of graduation on her resume "so the interviewers can see how old you are." Ex. 9 152:3-15; *accord* Ex. 10 at 5044, Ex. 11; Ex. 20 at 8181 (Ex. 20). Although she performed well at her in-person interview, and was told she had "an impressive background," she was rejected for not being a good "match." Ex. 12 at 2118.

Plaintiff has further satisfied the requirements for conditional certification by offering a variety of other detailed allegations, declarations, or discovery to support her claim of a pattern or practice of age discrimination similarly affecting class members. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("courts usually rely only on the pleadings and [] affidavits," and "[s]ome courts only require that plaintiffs make 'substantial allegations' that the putative class members were subject to a single illegal policy, plan or decision.") For example, as described in the Background section above, Ms. Fillekes offers the following allegations or evidence:

- Google admitted in its answer that the EEOC has received complaints of age discrimination by Google and is currently investigating Google. Google Answer ¶ 49; *see also* Am. Compl. ¶ 49.

- As alleged in the complaint, and as reflected in evidence accepted as admissible in other court proceedings, high-level Google executives and

PLAINTIFF CHERYL FILLEKES' MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B)

supervisors have made negative statements concerning older workers, including negative statements to former Google executive Brian Reid by his supervisor "every few weeks," such as statements that his ideas were "obsolete" and "too old to matter;" that Google colleagues referred to Reid as an "old man," an "old guy," and an "old fuddy-duddy"; that Reid was told he was terminated because of a lack of "cultural fit," which is a term that a former Google recruiter testified was used in company circles only to describe older workers. *Id.* ¶ 50; *Reid,* 235 P.3d at 992, 993.

- The declaration of applicant J.W. that a Google interviewer expressed concern that she might not be up for the "lifestyle" and might not be "Googley enough." Ex. 15 ¶ 10.

- Declarations from six applicants who believe that they were not hired by Google because of their age. Ex. 4 ¶ 16; Ex. 5 ¶ 15; Ex. 16 ¶ 12; Ex. 17 ¶ 15; Ex. 18 ¶ 15; Ex. 19 ¶ 12.

- As reflected ███████████████████████ on Google's own website, Google sometimes refers to older works as "greyglers." Ex. 7; Ex. 8 at 441.

- Plaintiff Cheryl Fillekes' allegations and testimony reflect that, despite her impressive credentials and experience, and after passing phone interviews with high scores, Plaintiff Cheryl Fillekes was repeatedly rejected for

positions at Google after interviewers met her in person and knew her approximate age. Am. Compl. ¶¶ 4, 32-42; Ex. 9 12:23-13:6.

- Discovery documents reflect that Google expressed concern about Ms. Fillekes' age: "████████████████████████████[,]" Ex. 14 at 1487, "████████████████████████████ ████[.]" Ex. 13 at 848.

Plaintiff's statistical evidence, combined with the declarations and other discovery evidence, are sufficient for plaintiff to meet her minimal burden of establishing that conditional certification is appropriate. *Pines,* 1992 WL 92398, at *3-4 (relying on statistics and other evidence of a practice of age discrimination); *Pagliolo*, 2007 WL 2892400, at *3 (relying on affidavit, interrogatory answers, and preliminary statistical analysis).

The fact that Plaintiff is seeking to certify three (3) different types of positions – Software Engineer ("SWE") positions, Site Reliability Engineer ("SRE") positions, and Systems Engineer ("SysEng") positions – for discrimination in hiring and employment is immaterial to the "similarly situated" analysis in this case, as they were subjected to the same pattern or practice of age discrimination. *See*, *e.g.*, *Tyson Foods,* 136 S. Ct. at 1045-50 (affirming verdict for plaintiffs in FLSA collective action involving multiple jobs with varying amounts of time required for donning and doffing protective gear); *Pagliolo*, 2007 WL 2892400, at *2 (granting conditional certification

despite "different job duties, . . . [and] different supervisors, . . . ages and lengths of service"); *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 298 (N.D. Cal. 1991) (notice appropriate in ADEA action even though class members "were employed at 112 different locations in 74 different jobs and left employment on 103 different dates" and defendants argued that decision-making was "highly decentralized").

Similarly, any argument offered by Google attacking the merits of Plaintiff's claims is premature, as "[t]he initial 'notice stage' is not the appropriate time for a court to evaluate the merits of plaintiffs' . . . claims." *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 272 (N.D. Cal. 2015); *see also Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) ("The fact that a defendant submits competing declarations will not as a general rule preclude conditional certification.").

In sum, Plaintiff has offered enough evidence of Google's pattern and practice of age discrimination to meet the lenient standard for conditional certification.

**B.    Class Notice Should Be Authorized.**

The only consequence of conditional certification is the sending of court-approved written notice to potential class members, who join the collective action only if they file written consent with the court. *Tyson Foods*, 136 S. Ct. at 1043. Court approval and facilitation of written notice serves the goals of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche*, 493 U.S. at 172.

Plaintiff has attached a proposed notice and consent form as Exhibit 21. Plaintiff proposes a 90-day opt-in period, consistent with what other courts have approved for large potential classes. *Woods v. Vector Mktg. Corp.*, No. C-14-0264, 2015 WL 1198593, at *4 (N.D. Cal. Mar. 16, 2015) (citing *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 542 (N.D. Cal. 2007)).

Plaintiff proposes that notice be given as follows: notice will be delivered to all potential class members by e-mail; an official case web page will be created where potential collective action members can review the official notice and submit an opt-in form; and depending on the number of undeliverable e-mails, Plaintiff will be permitted, but not required, to send a follow-up postcard notice via U.S. mail to potential class members whose email notice was returned as undeliverable, and the postcard will direct them to the official case web page. Collective action members will be permitted to submit opt-in claim forms on the official case web page using online signatures, and may be permitted to submit claim forms via e-mail if they are incapable of submitting their claim online.

When, as here, "[t]he potential class members [are technology workers, they] are likely to be particularly comfortable communicating by email and thus this form of communication is just as, if not more, likely to effectuate notice than first class mail." *Lewis*, 669 F. Supp. 2d at 1128-29. Courts have often approved notice via e-mail. *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2013 WL 4552493, at *5 (N.D.

Cal. Aug. 27, 2013) (approving notice by email as "the most appropriate method for effectuating notice in this case"); *Guy v. Casal Inst. of Nev., LLC*, No. 2:13-cv-02263, 2014 WL 1899006, at *7 (D. Nev. May 12, 2014) (authorizing notice by email and/or first class mail).

Courts have authorized the use of an official case website and submission of online claim forms through the case website using electronic signatures. *Woods*, 2015 WL 1198593, at *4, 6.

Plaintiff requests that the Court approve the proposed notice and consent form.

**C.      Google Should Be Ordered to Produce Names and Contact Information of Potential Class Members.**

Google should be ordered to provide, within 15 days, the names and contact information for potential class members, *i.e.*, every applicant who interviewed for any SWE, SRE, or SysEng position and was, based on date of birth (if known) or college graduation date, was 40 years of age or older at the time of application. *See Hoffmann-La Roche*, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."). This contact information should be provided in electronic format in an excel spreadsheet, and should include: position applied for; dates of employment interview(s) for SRE, SWE, or SysEng positions, along with their: name, e-mail address, mailing address, telephone number, college and (if applicable) graduate school graduation date(s), and date of birth (if known). Courts have approved discovery of such information. *See, e.g.*, *Lewis*, 669 F. Supp. 2d

at 1129-30.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court conditionally certify the proposed class, authorize notice, and require production of the names and conduct information of potential class members.

Dated: June 28, 2016    Respectfully submitted,

          By: /s/ Daniel Low
           Daniel L. Low, SBN: 218387
           Daniel Kotchen (*pro hac vice*)
           Kotchen & Low LLP
           1745 Kalorama Road NW, Suite 101
           Washington, DC 20009
           202-471-1995
           202-280-1128 (fax)
           dlow@kotchen.com
           dkotchen@kotchen.com

          *Attorneys for Plaintiff Cheryl Fillekes*