UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT HEATH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE INC.,<br><br>    Defendant. | Case No. 15-cv-01824-BLF<br><br>**REDACTED<br>ORDER GRANTING PLAINTIFF<br>CHERYL FILLEKES' MOTION FOR<br>CONDITIONAL CERTIFICATION OF<br>COLLECTIVE ACTION AND<br>DENYING PLAINTIFF ROBERT<br>HEATH'S PARTIAL JOINDER**<br><br>[Re: ECF 107] |

How does age factor into one's Googleyness?[1] Plaintiffs Cheryl Fillekes and Robert Heath allege that it plays a significant role, and seek to conditionally certify two collective actions based on disparate treatment under the federal Age Discrimination in Employment Act ("ADEA"). Mot., ECF 107. Defendant Google Inc. ("Google") contests Plaintiffs' allegations and asks the Court to find that a manageable collective action does not exist here. Opp. 2, ECF 108. For the reasons stated below, the Court GRANTS Plaintiff Cheryl Fillekes' motion for conditional certification and DENIES Plaintiff Robert Heath's partial joinder.

**I.    BACKGROUND**

In April 2015, Heath filed his original complaint asserting age discrimination under the ADEA and the California Fair Employment and Housing Act ("FEHA"). Compl., ECF 1. Heath pled both claims on behalf of himself and a nationwide Rule 23 class. *Id.* ¶ 39. In addition, he asserted the ADEA claim as a collective action. *Id.* at 21 ¶ m.

In June 2015, Google filed a motion to dismiss. ECF 16. In response, Heath filed a first amended complaint ("FAC") that omitted any allegations concerning a Rule 23 class claim under FEHA. FAC ¶¶ 51–52, ECF 18. The FAC also joined Cheryl Fillekes as a plaintiff. *See*

---

[1] Googleyness refers to a candidate's cultural fit at Google. *See* George Anders, *Google's People Chief, Laszlo Bock, Explains How to Hire Right*, Forbes (Oct. 21, 2014), http://www.forbes.com/sites/georgeanders/2014/10/21/googles-people-chief-laszlo-bock-explains-how-to-hire-right/#34edb8d51a5c.

*generally id.* Google answered the FAC. ECF 21. Heath subsequently sought leave to file a second amended complaint to reinstate his FEHA claims as a class action, which Google opposed. ECF 65, 67. The Court denied Heath's motion. ECF 93.

In their FAC, Plaintiffs allege that "Google has engaged in a systematic pattern and practice of discriminating against individuals (including Plaintiffs) who are age 40 and older in hiring, compensation, and other employment decisions with the resultant effect that persons age 40 or older are systematically excluded from positions for which they are well-qualified." FAC ¶ 52, ECF 18. They further allege that Google has engaged in this pattern and practice of discrimination by:

> (a) knowingly and intentionally, in the company's hiring and employment practices, treating adversely individuals who are 40 years old and older, and treating preferentially individuals who are under 40 years old, and (b) filling a disproportionately large percentage of its workforce with individuals under 40 years old . . . even when there are many individuals age 40 or older who are available and well-qualified for the positions at issue.

*Id.* ¶ 55.

Fillekes claims that her personal experience reflects age discrimination by Google. Mot. 5, ECF 107. Between 2007 and 2014, Fillekes interviewed with Google on four separate occasions. FAC ¶ 4, ECF 18. "On each occasion, she performed well during her phone interviews and was invited to Google's offices for an in-person interview." *Id.* Fillekes was never offered a job at Google, and alleges that "Google refused to hire [her] despite her highly-pertinent qualifications and programming experience" because of her age. *Id.* In support of her allegations, she provides several examples of perceived mistreatment because of her age. For example, Fillekes contends that in May 2010, "[a] Google recruiter told [her] that she needed to put her dates of graduation on her resume 'so the interviewers [could] see how old [she was].'" Fillekes Dep. Tr. 152:3-15, Ex. 9 to Mot., ECF 75-9.

Heath similarly claims that his personal experience reflects age discrimination by Google. Joinder 3, ECF 78. In February 2011, Heath was contacted by a Google recruiter for the San Francisco Bay Area. FAC ¶ 19, ECF 18. A Google Software Engineer subsequently interviewed Heath, but Heath was not offered the position. *Id.* at ¶¶ 22, 29. Heath believes his phone

interview was sabotaged "because Google did not have a sincere interest in hiring older workers." Joinder 5, ECF 78. After the interview, Heath filed an ADEA complaint against Google with the Equal Employment Opportunity Commission, which was cross-filed with the California Department of Fair Employment and Housing. FAC ¶ 7, ECF 18.

Now before the Court is Fillekes' motion for conditional certification of a collective action pursuant to 29 U.S.C. §216(b) and Heath's partial joinder. ECF 107, 78.

## II. LEGAL STANDARD

The ADEA prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). The Act further provides that it is to be enforced "in accordance with the powers, remedies and procedures" of designated sections of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203 *et seq*. 29 U.S.C. § 626(b). Plaintiffs now request certification of a collective action as prescribed by FLSA § 216(b), which provides, in pertinent part: "An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Unlike class actions certified under Rule 23, potential members of an ADEA collective action must "opt-in" to the suit by filing a written consent with the Court in order to benefit from and be bound by a judgment. 29 U.S.C. §216(b); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). Employees who do not opt-in may bring a subsequent private action. *Leuthold*, 224 F.R.D. at 466 (citing *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1508 n.11 (9th Cir. 1990)). "[O]nce an ADEA action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

The determination of whether a collective action under the ADEA is appropriate is within the Court's discretion. *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007). The named plaintiffs bear the burden to show that they and the proposed class members are "similarly situated." *See id.* (citing 29 U.S.C. § 216(b)). The FLSA does not define "similarly

3

situated." Although the Ninth Circuit has not yet articulated the proper test for certification of an ADEA action, district courts in this Circuit generally apply a two-step inquiry in the FLSA context. *See, e.g.*, *Leuthold,* 224 F.R.D. at 466–67; *Adams*, 242 F.R.D. at 536. The two-step approach distinguishes between conditional certification of the action and final certification. Under the first step, the court makes an initial "notice-stage" determination of whether potential opt-in plaintiffs are similarly situated to the representative plaintiffs, determining whether a collective action should be certified for the sole purpose of sending notice of the action to potential class members. *Leuthold*, 224 F.R.D. at 466–67; *Adams*, 242 F.R.D. at 536. The sole consequence of conditional certification is the "sending of court-approved written notice," to the purported members of the class. *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523 (2013). Those individuals become parties to a collective action only by filing written consent with the court.

For conditional certification at this notice-stage, courts require little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan" and a showing that plaintiffs are "generally comparable to those they seek to represent." *Villa v. United Site Servs. of Cal.*, No. 5:12–CV–00318–LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (citation omitted); *Stanfield v. First NLC Fin. Serv., LLC*, No. C–06–3892–SBA, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006); *see also Morton v. Valley Farm Transp., Inc.*, No. C–06–2933–SI, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-wide" conduct (internal quotation marks and citation omitted)). Thus, a named plaintiff must show that he or she is similarly situated to the absent members of the collective action and present "some identifiable factual or legal nexus [that] binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Russell v. Wells Fargo & Co.*, No. 07–CV–3993–CW, 2008 WL 4104212, at *3 (N.D. Cal. Sept. 3, 2008); *Sanchez v. Sephora USA, Inc.*, No. 11-3396 SBA, 2012 WL 2945753, at *2 (N.D. Cal. July 18, 2012) ("Plaintiff need not show that his position is or was identical to the putative class

4

1  members' positions; a class may be certified under the [ADEA] if the named plaintiff can show
2  that his position was or is similar to those of the absent class members." (citations and quotation
3  marks omitted)).²

4        The standard for conditional certification is a lenient one that typically results in
5  certification. *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627–28 (E.D. Cal. 2009)
6  (citing *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)). As a
7  practical matter, "[a]t this stage of the analysis, courts usually rely only on the pleadings and any
8  affidavits that have been submitted." *Leuthold,* 224 F.R.D. at 468. Plaintiffs need not
9  conclusively establish that collective resolution is proper, because a defendant will be free to
10 revisit this issue at the close of discovery. *Kress*, 263 F.R.D. at 630. However, "[u]nsupported
11 allegations of [ADEA] violations are not sufficient to meet the plaintiffs' burden." *Shaia v.
12 Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 272 (N.D. Cal. 2015) (citation omitted).

13       Courts have emphasized that a lenient standard is used at the notice-stage step because a
14 court does not have much evidence at that point in the proceedings—just the pleadings and any
15 declarations submitted. In contrast, at the second step, a stricter standard is applied because there
16 is much more information available, "which makes a factual determination possible." *Vasquez v.
17 Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1123 (E.D. Cal. 2009); *see also Labrie v. UPS
18 Supply Chain Sols., Inc.*, No. C 08–3182 PJH, 2009 WL 723599, at *4 (N.D. Cal. Mar. 18, 2009)
19 (noting that the first step "is characterized by a fairly lenient standard, necessitated by the fact that
20 not all discovery will have been completed at the time of the motion," while, at the second step,
21 "the court engages in a more stringent inquiry into the propriety and scope of the collective action"
22 because "discovery is complete and the case is ready to be tried").

23       In considering whether the lenient notice-stage standard has been met in a given case,
24 courts bear in mind the following:

---

² The "similarly situated" requirement is "considerably less stringent than the requirement of Fed. R. Civ. Proc. 23(b)(3) that common questions predominate." *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 305 (N.D. Cal. 1991) (citation omitted); *Villa*, 2012 WL 5503550 at * 14 ("[A] collective action does not require a showing that common claims predominate.").

1          (1) A plaintiff need not submit a large number of declarations or affidavits to make the requisite factual showing that class members exist who are similarly situated to him. A handful of declarations may suffice. *See, e.g.*, *Gilbert v. Citigroup, Inc.*, No. 08–0385 SC, 2009 WL 424320, at *2 (N.D. Cal. Feb. 18, 2009) (finding standard met based on declarations from plaintiff and four other individuals); *Escobar v. Whiteside Constr. Corp.*, No. C 08–01120 WHA, 2008 WL 3915715, at *3–4 (N.D. Cal. Aug 21, 2008) (finding standard met based on declarations from three plaintiffs); *Leuthold,* 224 F.R.D. at 468–69 (finding standard met based on affidavits from three proposed lead plaintiffs).

          (2) The "fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." *See Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) (citation omitted). As Judge Alsup of this District has noted, competing declarations simply create a "he–said–she–said situation"; while "[i]t may be true that the [defendant's] evidence will later negate [Plaintiffs'] claims, that should not bar conditional certification at the first stage." *Escobar*, 2008 WL 3915715, at *4.

          At the second step of the two-step inquiry, "the party opposing the certification may move to decertify the class once discovery is complete." *Adams*, 242 F.R.D. at 536 (citation omitted); *Escobar*, 2008 WL 3915715, at *3 ("Certification is called 'conditional' during the first stage because the opposing party could always (successfully) move for decertification."). "[T]he Court then determines the propriety and scope of the collective action using a stricter standard." *Stanfield*, 2006 WL 3190527, at *2. At that point, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Leuthold,* 224 F.R.D. at 467. It is at the second stage that the Court makes a factual determination about whether the plaintiffs are actually similarly situated by weighing various factors, such as: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Id.* Even at this second stage, the standard courts apply is different, and easier to satisfy, than the requirements for a class action certified under Federal Rule of Civil Procedure 23(b)(3). *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).

## III. DISCUSSION

### A. The Notice-Stage Standard Applies Here

As a preliminary matter, the Court faces the threshold question of what standard to apply to Plaintiffs' motion. Plaintiffs argue that the Court should apply the more lenient first-step analysis. Mot. 12, ECF 107. In a footnote, Google argues, "that the two-stage process for conditional certification/decertification as well as the lenient standard for conditional certification under the FLSA . . . should not apply in collective actions under the ADEA." Opp. 5 n.3, ECF 108. Instead, Google contends that the Court should "'apply a more rigorous modified Rule 23 analysis in ADEA collective actions.'" *Id.* at 6 (citing and quoting *Shushan v. Univ. of Colo.*, 132 F.R.D. 263, 264–65 (D. Colo. 1990). Despite this footnote, Google's opposition addresses only whether Plaintiffs have satisfied their burden at the notice stage. *See generally* Opp., ECF 108.

The Court disagrees with Google's assertion that a more rigorous modified Rule 23 analysis should apply here. "[C]ourts have repeatedly rejected attempts like [Defendant's] to equate [ADEA] class actions and Rule 23 class actions." *Flores v. Velocity Exp., Inc.*, No. 12-cv-5790-JST, 2013 WL 2468362, at *7 (N.D. Cal. June 7, 2013). Instead, courts have held that "[t]he requirements of class actions under Rule 23 of the Federal Rules of Civil Procedure should not be invoked to impede plaintiffs' opportunity to bring an ADEA class action." *Church*, 137 F.R.D. at 304. This is because requiring ADEA class actions to satisfy Rule 23 "would impede ADEA plaintiffs' opportunity to proceed collectively and, therefore, is contrary to the broad remedial purposes of prohibiting arbitrary age discrimination." *Id.* at 306.

Accordingly, the Court finds that the notice-stage standard applies in this case. After discovery is complete, Google can move for decertification and the Court will then apply the heightened second-stage review.

### B. Evidentiary Objections

Google objects to Plaintiffs' use of certain evidence to support their allegations in their motions, arguing that the evidence cited is irrelevant, hearsay, inadmissible, or not authenticated. Opp. 28–30, ECF 108. Google fails to acknowledge, however, that "a majority of courts have determined that evidentiary rules should be relaxed" at the conditional certification stage. *Shaia*,

7

306 F.R.D. at 275 (citations omitted). Thus, the Court may consider evidence that may not be admissible at trial. *Keiholtz v. Lennox Health Prods., Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) (explaining that at the class certification stage, "the Court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims"). For example, "the limitation on hearsay is relaxed." *Syed v. M-I, L.L.C.*, No. 12-cv-1718 AWI MJS, 2014 WL 6685966, at *7 (E.D. Cal. Nov. 26, 2014). Accordingly, the Court OVERRULES Google's objections based upon hearsay or inadmissibility.

Additionally, Google contends that the Plaintiffs' allegations and statements in their declarations contain speculative and conclusory testimony not based on personal knowledge in violation of Federal Rule of Evidence 602. Opp. 28, ECF 108. However, the declarations are based on the declarants' own experiences, and can be relied upon at the conditional certification stage. *Sliger v. Prospect Mortg. LLC*, No. CIV. S-11-465 LKK/EFB, 2011 WL 3747947, at *3 n.31 (E.D. Cal. Aug. 24, 2011). Thus, "[i]f what plaintiffs saw with their own eyes gave them an incorrect view [of the situation], then defendant can bring that up on a motion to de-certify the class." *Id.* The Court also OVERRULES Google's evidentiary objections based upon lack of personal knowledge.

### C. Application of the Notice-Stage Standard to this Case

#### i. Cheryl Fillekes' Motion

Fillekes' seeks conditional certification of a collective action, which would permit court-authorized notices to be sent to potential opt-in plaintiffs. Fillekes' asserts that Google violated the ADEA by discriminating against "certain applicants age 40 and older." Mot. 1, ECF 107. The class Fillekes' proposes for her collective action consists of:

> All individuals who interviewed in-person for any Software Engineer ("SWE"), Site Reliability Engineer ("SRE"), or Systems Engineer ("SYSEng") position with Google in the United States during the time period from August 13, 2010 through the present; were age 40 or older at the time of the interview; and were refused employment by Google.

*Id.* Fillekes seeks an order (1) conditionally certifying the proposed class, (2) requiring Google to produce a class list to Plaintiffs' counsel within 15 days from the date of the order, and (3)

8

directing the dissemination of the notice of the pendency of the action by e-mail. Proposed Order, ECF 75-23. She claims there are less than ▇ individuals nationwide who are "similarly situated." Reply 2, ECF 103.

To support her allegation that Google has engaged in a systematic pattern and practice of discriminating against individuals aged 40 and older in hiring, compensation, and other employment decisions, Fillekes provides the declarations of seven individuals alleging that they had similar experiences. *See* Low Decl. ¶ 4, ECF 75-22 (citing Barnes, Heirich, Westfall, Buchanan, Miller, Ash, and Thomas declarations). Fillekes also cites to various statistical information related to the median age of Google's workforce compared to the median age in the United States for computer programmers and computer hardware engineers, complaints of age discrimination filed before the EEOC, and a prior lawsuit against Google that alleged age discrimination. Mot. 3–4, ECF 107.

Google offers several arguments in opposition to Plaintiffs' motion for conditional certification, none of which the Court finds compelling.[3] Google first contends that "the only evidence of a single decision, policy, or plan is Google's written EEO policy that prohibits discrimination on the basis of age or other protected categories. Opp. 8, ECF 108. In her motion and reply, Fillekes makes substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan. For example, Fillekes explains "[i]n comparison to the 29 year-old median age of Google's workforce, the median age in the United States for 'computer programmers' is 42.8 years old, and for 'computer hardware engineers' is 41.7 years old," and states that "[t]he EEOC has received multiple complaints of age discrimination by Google." Mot. 3–4, ECF 107.[4] Fillekes also recounts her own experience. Among other things, Fillekes describes an instruction from a Google recruiter to "put her dates of graduation on her resume 'so the interviewers [could] see

---

[3] The Court notes that many of Google's arguments pertain to the merits, which the Court will not entertain at this conditional certification stage.
[4] The Court does not find discussions of *Reid v. Google, Inc.*, 235 P.3d 988 (Cal. 2010) relevant to this issue. *See* Mot. 5, ECF 107.

9

how old [she is]'" and various concerns about her years of experience. *Id.* at 6.[5]  Finally, Fillekes' allegations are supported by several declarations that support her own allegations. *Id.* at 7.

That Google's EEO policy proclaims that "[e]mployment [at Google] is based solely upon individual merits and qualifications" and "strictly prohibit[s] unlawful discrimination or harassment of any kind, including discrimination or harassment on the basis of . . . age" is insufficient to negate Fillekes' assertions at this stage. Ex. 1 to Silverstein Decl., ECF 96-2. Having such a policy does not necessarily shield a company from a discrimination suit, particularly in light of the evidence and allegations presented here. If the Court were to conclude otherwise, no age discrimination suit would proceed past the conditional certification stage— today, most, if not all, companies are well versed in anti-discrimination law and make great efforts to ensure that their written policies comply with anti-discrimination law.

Second, Google contends that conditional certification is inappropriate because determining whether Plaintiff and putative class members are similarly situated will entail individualized inquiries into the qualifications and situation of each member of the collective action. Opp. 11–17, ECF 108. Courts in this District have "rejected similar arguments during the first stage of the [ADEA] conditional certification process, finding that these arguments go to the merits and are better addressed at the second stage, after discovery has closed." *Sanchez*, 2012 WL 2945753, at *4 (collecting cases). This Court finds those decisions persuasive, and agrees that Google's argument regarding individualized inquiries would be more appropriately addressed in a motion to decertify, if any.

Google then argues that Fillekes' evidence and allegations are "contradicted by the facts." Opp. 17, ECF 108. For this proposition, Google submits records from gHire, e-mail records, and various declarations, among other forms of evidence. However, "federal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants." *Sanchez*,

---

[5] Google argues that these "stray remark[s] do not warrant an inference of discrimination." Opp. 14, ECF 108. The Court makes no determination on this argument, as it more closely relates to the merits of Fillekes' claims, and is thus more appropriately addressed at the decertification stage.

2012 WL 2945753, at *4 (citations omitted).  Nevertheless, the Court has considered Google's evidence and finds it unpersuasive at this stage of the litigation.

At the hearing, in an attempt to demonstrate the differences between this case and other ADEA cases, Google stated that this case is unlike prior ADEA collective actions such as *Pines v. State Farm Gen. Ins. Co.*, No. SACV89-631AHS (RWRX), 1992 WL 92398 (C.D. Cal. Feb. 25, 1992), in which the plaintiffs provided direct evidence of discrimination in writing.  According to Google, unlike collective actions like the one in *Pines*, Fillekes' collective action lacks the "glue" necessary to demonstrate a pattern or practice of discrimination.  However, the cases cited by Google do not establish the floor for conditional certification.  And, as discussed above, limiting a plaintiff's ability to bring an ADEA collective action to those in which there is a written policy of discrimination would effectively eviscerate the collective action remedy to an alleged violation of the ADEA.

Finding that Fillekes has made a showing that she is generally comparable to those she seeks to represent and has made substantial allegations supported by declarations and limited discovery that the putative class members were together the victims of a single decision, policy, or plan, and to avoid a multiplicity of duplicative suits, this Court GRANTS Fillekes' motion to conditionally certify an ADEA collective action.

### ii. Robert Heath's Joinder

Heath seeks to join in Fillekes' motion "in all parts except the proposed scope of the class and the identification of the collective action counsel."  Joinder 1, ECF 78.  Heath objects to Fillekes' class definition because it would exclude him.  *Id.* at 2 n.1.  Instead, he proposes the following class definition:

> [A]ll applicants for any Software Engineer ("SWE"), Site Reliability Engineer ("SRE"), or Systems Engineer ("SysEng") positions with Google in the United States during the time since Google began its pattern or practice of discriminating against applicants over the age of 40 (which Plaintiff is informed and believes was no later than August 13, 2010 through the present, and possibly earlier); who were 40 years of age or older at the time of their application; and who were rejected for the position.

*Id.* at 1–2.  Heath claims there are less than 630,000 individuals nationwide who a similarly

situated, but cannot estimate the exact figure.  Joinder 7, ECF 78.

Heath does not explain how the individual members of his collective action are "similarly situated."  Instead, he asks the Court to "decline to engage in the similarly situated analysis" at this stage.  Joinder 6, ECF 78 (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988)).  In its opposition, Google alleges that "Heath is not similarly situated to members of his proposed class" because of his own allegations that the "TPS interviewer also discriminated against him on the basis of his U.S. citizenship in addition to his age."  Opp. 10, ECF 108.  Heath responds to this by arguing that "[l]isting out the alleged factual differences amongst the proposed class, especially while discovery remains open, distorts the focus of th[e notice stage] because 'whether the disparate factual and employment settings of the individual plaintiffs means that this case cannot proceed collectively . . . is a matter to be determined at the second stage of the certification process.'"  Reply ISO Joinder 7, ECF 104 (citations and emphasis omitted).  The Court disagrees with Heath given the scope of his proposed class.

Although the standard for conditional certification at the notice-stage is lenient, there is a standard.  *See, e.g.*, *LeFave v. Salamander Innisbrook, LLC*, No. 8:09-CV-0432-T-27EAJ, 2009 U.S. Dist. LEXIS 115563 (M.D. Fla. Oct. 9, 2009) (granting conditional certification where plaintiffs submitted affidavits alleging that employees forty years of age and older were "systematically removed from their positions"); *Pagliolo v. Guidant Corp.*, No. 06-943, 2007 WL 2892400 (D. Minn. Sept. 28, 2007) (granting conditional certification based on the lead plaintiff's affidavit and interrogatory answers, and because plaintiffs "demonstrated a pattern based on their preliminary statistical analysis" showing disparate impact); *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483 (D. Kan. July 1, 2004) (rejecting Sprint's focus on dissimilarities between named plaintiffs and potential opt-ins because "such differences are simply not relevant at the notice stage when plaintiff, as here, has set forth substantial allegations that all plaintiffs were subjected to a pattern and practice of age discrimination" and granting the plaintiffs' motion to conditionally certify their ADEA action as a collective action because plaintiffs showed that they and "the potential plaintiffs were terminated during the reduction in force as a result of Sprint's pattern and practice of discriminating against older workers in implementing the reduction in force").  Indeed,

several courts have denied motions for conditional certification where the plaintiffs did not satisfy their burden of establishing that a similarly situated class existed or that they were subjected to a common policy or plan of discrimination. *See, e.g.*, *Roberts v. Target Corp.*, No. CIV-11-0951-HE, 2013 WL 5256867 (W.D. Okla. Sept. 17, 2013) (denying conditional certification for class of all former employees of Target within the United States who worked for Target for at least 5 years, were terminated or constructively discharged, and were forty years of age or older when their employment ended because plaintiff presented "no evidence of a common denominator that would link any of the alleged acts of discrimination," and thus, plaintiff did not "meet her burden of establishing a similarly situated class exist[ed]"); *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 942 (D. Minn. 2009) (denying conditional certification of FLSA collective action for failure to show a common policy or plan where plaintiffs sought certification of a class of "tens of thousands of employees . . . at hundreds of different locations throughout the United States"); *Gallender v. Empire Fire & Marine Ins. Co.*, No. 5:05cv220-DCB-JMR, 2007 WL 325792 (S.D. Miss. Jan. 31, 2007) (denying conditional certification for class of all former employees of the defendants who worked as sales executives from 2001 to 2004 and were over the age of 40 because affidavits provided in support of conditional certification showed, "at most, the alleged discriminatory animus of the national sales manager" rather than a "company-wide decision, policy, or plan to discriminate"); *Wynn*, 234 F. Supp. 2d 1067 (denying conditional certification for class of former or current writers for television programming because, among other things, the only similarities among the plaintiffs was that they were writers and over the age of forty—"[t]heir individual skills, work experience, and relationships to the proposed Defendants" were completely varied).

Heath's class does not satisfy this standard because he cannot demonstrate that he is similarly situated to the absent members of his putative collective action. To the contrary, Heath alleges that he was contacted by a Google recruiter and given a phone interview with a Google software engineer. The proposed class would include an unknown number of "applicants" who demonstrate no plausible qualifications for the job. To establish a prima facie case of an ADEA violation, the plaintiff must show, among other things, that he was qualified for the position.

13

1  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *see Pottenger v. Potlach*
2  *Corp.*, 329 F.3d 740, 745–46 (9th Cir. 2003). Heath's vast class would include every individual
3  applicant over the age of 40 without regard to their qualifications, including, for example, a lawyer
4  applying for a software engineer position. Common sense dictates that Google would have
5  rejected those individuals based on their lack of qualifications, not their age. Accordingly, even
6  under the lenient standard for stage one conditional certification, members of Heath's proposed
7  class are not similarly situated to Heath, who purports to have been qualified for the positions to
8  which he applied.
9        For this reason, Heath's proposed collective action faces the same deficiency as did the
10 proposed collective action in *Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666, 2008 WL
11 1860161 (S.D. Cal. Apr. 22, 2008). In *Trinh,* the plaintiffs proposed an FLSA collective action on
12 behalf of

> All current and former loan officers of [JP Morgan Chase & Co.] who, at any time in the three year period before the filing of th[e] action or at any time thereafter, worked more than 40 hours in any given workweek but were not paid at least one and one-half times their regular rate of pay for all hours worked beyond 40 hours in such workweek."

16 *Id.* at 2. There, plaintiffs "simply stat[ed] that [they and] members of the putative class had
17 essentially the same job description and training and were compensated in the same manner," but
18 provided only boilerplate and legal conclusions without support. *Id.* at *3. The *Trinh* court stated
19 conditional certification would be proper upon a "modest factual showing that [plaintiffs] and the
20 broad class they wish to represent are similarly situated with respect to job requirements and pay
21 provisions." *Id.* at *4. The court denied conditional certification because the plaintiffs did not
22 satisfy this "modest factual showing" requirement by failing to "provide [any] real evidence,
23 beyond their own speculative beliefs" that the absent members of the class were similarly situated.
24 *Id.*
25       Similarly, Heath has not satisfied the "modest factual showing." Like the plaintiffs in
26 *Trinh*, Heath offers no evidence beyond his own speculative beliefs that the absent members of the
27 collective action are similarly situated. Heath does not even provide a single declaration beyond
28 his own. *See* Heath Decl., ECF 78-1. Although this is not dispositive, it is persuasive. The Court

United States District Court
Northern District of California

14

concludes that there are likely to be wide disparities in the class members' qualifications and/or experiences, and the breadth of Heath's putative class must be its death knell.

Exhibit D to Heath's Declaration in support of his Joinder provides further support for this conclusion. In his Declaration, Heath states that he has "corresponded on Internet message boards with several persons who were not hired at the TSP stage of the hiring process and expressed the same types of concerns as [he] did about the process." Heath Decl. ¶ 8, ECF 78-1. Heath attaches Exhibit D, "copies of Internet message board responses to [his] online critiques of Google's discriminatory hiring practices," to support his claim that he is similarly situated with absent members of his class. The Internet postings reproduced in Exhibit D, however, have little to do with age discrimination. *See* Ex. D to Heath Decl., ECF 78-1. Instead, the Internet postings contain various statements regarding the alleged inability of the Google interviewers to speak English. *Id.* ("The problem is that Google personnel who are conducting the interviews cannot speak the English language.") These postings do not support a finding that Heath is similarly situated to the absent members of his class as defined or that the putative class members were together the victims of a single decision, policy, or plan of discrimination based on age.

At the hearing, Heath's counsel argued that although he recognized that the class definition as stated was slightly ambiguous and overbroad, in actuality, only those that were affirmatively rejected after being screened by a recruiter would be included in Heath's collective action. Counsel contended that those who had not received a response from Google were merely not responded to, rather than rejected. The Court finds this argument unpersuasive. It is simply not plausible to suggest that an applicant who hears nothing from Google is not "rejected." Gone are the days when employers feel bound by etiquette to notify in writing every applicant who fails to pass the initial screening, especially where, as here, there are as many as 630,000 applicants. However, those applicants are equally "rejected" as those who proceed through several levels of review and then receive a notice of rejection.

Recognizing that the Court was not inclined to conditionally certify Heath's proposed class, he asked the Court to either narrow the scope itself or allow him to file a renewed motion for conditional certification. The Court declines to narrow the scope of the proposed class on its own

15

1    motion. To do so would improperly prevent Google from identifying infirmities in such an

2    alternative definition and deprive the Court of sufficient evidence and argument on which to base

3    such a determination.

4          Further, the Court denies Heath's request to file a second motion for conditional

5    certification. Not only is trial set for June 2017, thus preventing sufficient time to brief, hear, and

6    decide such a motion, but also this request comes on the heels of Heath's tardy first motion.[6]

7    Prejudice to Google would thus be substantial and there is no good explanation why Heath

8    reached so far in his initial class definition if he recognized that it was ambiguous and overbroad

9    as his attorney acknowledged at the hearing.

10         Accordingly, the Court DENIES Heath's motion for conditional certification.

11   **D.     Modifications to the Class Notice**

12         In addition to determining whether conditional certification is warranted, Plaintiffs

13   requested that the Court facilitate notice of the pending action to potential claimants so they would

14   have an opportunity to opt-in to the case. Mot. 17–19, ECF 107. Google objected to the provision

15   of Plaintiffs' proposed class notice. Opp. 28, ECF 108. Google argued that 15 days to compile a

16   list of potential class members was unreasonable because "Google does not maintain birthday or

17   age data on its job applicants." *Id.* Further, Google stated that "a 15-day production deadline

18   would create an overwhelming burden on Google." *Id.*

19         However, after briefing on Plaintiffs' motions to conditionally certify collective actions

20   was completed, the parties filed a joint case management statement addressing these issues. ECF

21   110. In the joint statement, Google "request[ed] that the Court instruct the parties to meet and

22   confer on the proper form and content of the notice to be sent to potential opt-ins, and on the

23   appointment of a third-party administrator to issue the notice and process opt-ins." *Id.* Google

24   also asked the Court to "instruct the parties to meet and confer on how to use applicants'

25   graduation date information as a proxy for age, where available in Google's gHire database, to

---

[6] This motion was only allowed to proceed after the Court denied Google's motion to strike. ECF 109. The Court's case scheduling order clearly required Heath to file this motion no later than March 11, 2016. He was four months late in bringing this motion.

identify the candidates to whom the third-party administrator will send notice." *Id.* Because "Plaintiffs [did] not oppose the meet and confer process proposed by Google," the Court ordered the parties to meet and confer on these issues and provide the Court with a status update. *See* ECF 115.

## IV. ORDER

For the foregoing reasons, the Court GRANTS Fillekes' motion to conditionally certify an ADEA collective action and DENIES Heath's partial joinder.

**IT IS SO ORDERED.**

Dated: October 5, 2016

_____
BETH LABSON FREEMAN
United States District Judge