Thomas M. McInerney, CA Bar No. 162055
tmm@ogletree.com
Brian D. Berry, CA Bar No. 229893
brian.berry@ogletree.com
Lisa M. Bowman, CA Bar No. 253843
lisa.bowman@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:     415.442.4810
Facsimile:     415.442.4870

A. Craig Cleland, *pro hac vice*
craig.cleland@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree St., NE., Suite 4800
Atlanta, GA 30303
Telephone:     404.881.1300
Facsimile:     404.870.1732

Elizabeth A. Falcone, CA Bar No. 219084
elizabeth.falcone@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone:     503.552.2166
Facsimile:     503.224.4518

Attorneys for Defendant
GOOGLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HEATH, on behalf of himself and CHERYL FILLEKES, on behalf of herself  and others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> GOOGLE INC., a Delaware corporation, <br><br> Defendant. | Case No. 5:15-cv-01824-BLF <br><br> **DEFENDANT GOOGLE INC.'S RULE 12 MOTION TO DISMISS PLAINTIFFS' ADEA DISPARATE IMPACT CLAIM WITH PREJUDICE** <br><br> Date:          January 18, 2018 <br> Time:          9:00 a.m. <br> Location:    Courtroom 3 – 5th Floor <br><br> Complaint Filed:  April 22, 2015 <br> Trial Date:         April 1, 2019 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on January 18, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 3, 5th Floor of the above-titled court, located at 280 South 1st Street, San Jose, California, 95113, Defendant Google Inc. ("Google") will, and hereby does, move this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing with prejudice the disparate impact claim pleaded in the Second Amended Complaint for failure to state a claim upon which relief can be granted.  The grounds for relief under Rule 12(b)(6) are that a disparate impact claim by a job applicant is not actionable under the Age Discrimination in Employment Act ("ADEA"); the disparate impact claim has been waived; and the disparate impact claim is barred for failure to exhaust administrative remedies.  In addition, Google will, and hereby does, move this Court pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for an order dismissing with prejudice the disparate impact claim because the court lacks subject-matter jurisdiction over the claim due to the failure to exhaust administrative remedies.

The Motion to Dismiss is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice filed concurrently herewith, the pleadings on file in this action, and such arguments and admissible evidence as may be presented at the time of hearing.

DATED:  October 6, 2017

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:   /s/ *Brian D. Berry*

Thomas M. McInerney
Brian D. Berry
A. Craig Cleland
Lisa M. Bowman
Elizabeth A. Falcone

Attorneys for Defendant
GOOGLE INC.

DEFENDANT'S MOTION TO DISMISS

1

## <u>TABLE OF CONTENTS</u>

2

I.     INTRODUCTION ........................................................................................ 1

3

II.    BACKGROUND ......................................................................................... 2

4

      A.   Relevant Procedural History............................................................ 2

5

      B.   Fillekes' EEOC Charge ................................................................... 3

6

III.   LEGAL STANDARD ................................................................................ 4

7

IV.   ARGUMENT ............................................................................................. 4

8

      A.   Fillekes Waived Any Disparate Impact Claim Long Ago.................................. 4

9

      B.   The ADEA Does Not Authorize Disparate Impact Claims By

10

          Applicants............................................................................................ 6

11

          1.   The Text of Section 4(a)(2) Excludes Job Applicants........................... 7

12

          2.   Other Sections of the ADEA Confirm the Plain Meaning of

13

              Section 4(a)(2)'s Exclusion of Job Applicants...................................... 8

14

          3.   The Amendments to Title VII Show Congress Intended to

              Exclude Job Applicants From Section 4(a)(2). ................................... 10

15

          4.   The District Court's Opinion in *Rabin* Is Erroneous........................... 12

16

      C.   The Disparate Impact Claim Is Barred Because Fillekes Failed to

17

          Exhaust Her Administrative Remedies. ......................................... 16

18

V.     CONCLUSION ........................................................................................ 19

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Pac. Mar. Ass'n*,
336 F.3d 924 (9th Cir. 2003) ................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................4

*B.K.B. v. Maui Police Dept.*,
276 F.3d 1091 (9th Cir. 2002) .......................................................16, 18

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) .................................................................4

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999) ............................................................................15

*Brown v. Ameriprise Fin. Servs., Inc.*,
707 F. Supp. 2d 971 (D. Minn. 2010) ..................................................17

*Butts v. City of New York Dep't of Hous. Pres. & Dev.*,
990 F.2d 1397 (2d Cir. 1993) ..............................................................19

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ............................................................................15

*De Los Santos v. Panda Exp., Inc.*,
No. C 10-01370 SBA, 2010 WL 4971761 (N.D. Cal. Dec. 3, 2010)..............................4, 16, 17

*Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
No. 14-CV-02349-TEH, 2015 WL 5138080 (N.D. Cal. Sept. 1, 2015)......................................6

*Donaldson v. Microsoft Corp.*,
205 F.R.D. 558 (W.D. Wash. 2001) .....................................................17

*EEOC v. Arabian Am. Oil Co.*,
499 U.S. 244 (1991) ............................................................................11

*EEOC v. Francis W. Parker Sch.*,
41 F.3d 1073 (7th Cir. 1994) ..........................................................7, 11

*Ellis v. United Airlines, Inc.*,
73 F.3d 999 (10th Cir. 1996) .........................................................7, 9, 11

*Gazzano v. Stanford Univ.*,
No. C 12-05742 PSG, 2013 WL 2403646 (N.D. Cal. May 31, 2013) .........................................5

*Goethe v. California, Dep't of Motor Vehicles,*
No. 207-CV-01945-MCE-GGH, 2008 WL 489554 (E.D. Cal. Feb. 20, 2008) ........................17

*Grayson v. K Mart Corp.,*
79 F.3d 1086 (11th Cir. 1996) ...................................................................................................19

*Griggs v. Duke Power Co.,*
401 U.S. 424 (1971) ............................................................................................................14, 15

*Gross v. FBL Fin. Services, Inc.,*
557 U.S. 167 (2009) ...................................................................................................................11

*Lacey v. Maricopa County,*
693 F.3d 896 (9th Cir. 2012) ...............................................................................................4, 5, 6

*Lindsey v. United Airlines, Inc.,*
No. C 17-00753 WHA, 2017 WL 2404911 (N.D. Cal. June 2, 2017) ........................................16

*Llampallas v. Mini-Circuits, Lab, Inc.,*
163 F.3d 1236 (11th Cir. 1998) .................................................................................................13

*Lorillard v. Pons,*
434 U.S. 575 (1978) ...................................................................................................................10

*McKinney v. Eastman Kodak Co.,*
975 F. Supp. 462 (W.D.N.Y. 1997)............................................................................................18

*Mims v. Arrow Fin. Servs., LLC,*
565 U.S. 368 (2012) ...................................................................................................................15

*Pacle v. JPMorgan Chase Bank, N.A.,*
No. C13-3379 TEH, 2013 WL 5289020 (N.D. Cal. Sept. 19, 2013) .........................................16

*Phillips v. Ford Motor Co.,*
14-CV-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ................................................5

*Rabin v. PricewaterhouseCoopers LLP,*
236 F. Supp. 3d 1126 (N.D. Cal. 2017).............................................................................. *passim*

*Ratzlaf v. United States,*
510 U.S. 135 (1994) ...................................................................................................................15

*Raytheon Co. v. Hernandez,*
540 U.S. 44 (2003) .....................................................................................................................16

*Rush v. McDonald's Corp.,*
966 F.2d 1104 (7th Cir. 1992) ...................................................................................................19

*Russello v. United States,*
464 U.S. 16 (1983) .................................................................................................................8, 10

DEFENDANT'S MOTION TO DISMISS

*S.E.C. v. McCarthy*,
    322 F.3d 650 (9th Cir. 2003) ........................................................................8, 10

*Serapion v. Martinez*,
    119 F.3d 982 (1st Cir. 1997) .................................................................................13

*Smith v. City of Des Moines*,
    99 F.3d 1466 (8th Cir. 1996) ............................................................................7, 11

*Smith v. City of Jackson*,
    544 U.S. 228 (2005) ...................................................................................... *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................................................4

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
    133 S. Ct. 2517 (2013) ............................................................................................10

*Valadez-Lopez v. Chertoff*,
    656 F.3d 851 (9th Cir. 2011) ....................................................................................4

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) ...................................................................... *passim*

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ..................................................................................4

*Westley v. Oclaro, Inc.*,
    No. C-11-2448 EMC, 2013 WL 2384244 (N.D. Cal. May 30, 2013)........................5

**STATUTES**

Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(2)

    § 703(a)(2) ........................................................................................10, 11, 14

    § 703(a)(2) ...................................................................................................10

29 U.S.C.

    § 623(a)(1) ...................................................................................... *passim*

    § 623(a)(2) ...................................................................................... *passim*

    § 623(c)(2) .....................................................................................................9

    § 623(d) .......................................................................................................10

    § 626(d)(1) ...................................................................................................16

    § 631(b) ........................................................................................................10

    § 633a(a) ......................................................................................................10

    § 633a(b) ......................................................................................................10

42 U.S.C. § 2000e–2(a)(2) ............................................................................................................11

**OTHER AUTHORITIES**

Rule 12.............................................................................................................................................2, 3

Rule 12(b)(1) ......................................................................................................................................4

Rule 12(b)(6) ......................................................................................................................................4

DEFENDANT'S MOTION TO DISMISS

# I.     **INTRODUCTION**

The Court should dismiss the disparate impact claim pleaded in Plaintiff Cheryl Fillekes' and the Opt-In Plaintiffs' ("Plaintiffs") Second Amended Complaint ("SAC").  Fillekes knowingly and voluntarily abandoned her disparate impact claim more than two years ago when she responded to Defendant Google Inc.'s ("Google") motion to dismiss the original complaint by withdrawing the claim and omitting it from the First Amended Complaint ("FAC").  Because her failure to re-plead the disparate impact claim in the FAC constituted a waiver, she cannot now pursue the claim in the SAC.

In addition, Plaintiffs' disparate impact claim must be dismissed because the ADEA does not authorize a job candidate to bring a disparate impact claim.  Although neither the Supreme Court nor the Ninth Circuit have decided this issue, the plain text, context, and structure of the ADEA all leave no doubt that Congress intended to exclude disparate impact claims by job applicants.   The Eleventh Circuit's opinion in *Villarreal* is the only appellate court decision to squarely address the issue, and it held job applicants cannot bring disparate impact claims under the ADEA. This holding is further supported by a three-Justice concurrence in *City of Jackson*, as well as numerous Courts of Appeal who interpreted the applicable sections of the ADEA prior to *City of Jackson*.

The SAC's disparate impact claim should also be dismissed because Fillekes' EEOC charge does not identify a single neutral policy or practice that could form the basis of a disparate impact claim, instead alleging only disparate treatment.  Her charge's passing reference to an incident when a Google recruiter allegedly asked for her graduation dates is insufficient to allege a disparate impact discrimination claim because Fillekes alleges this was *motivated* by age and thus intentional discrimination.  Apart from this, her charge does not even mention any neutral policy or practice, including the ones Plaintiffs *now* identify in the SAC.  To be sure, her charge does include a boilerplate allegation that "Google's policies and practices" had an "adverse impact" on applicants and workers.  However, a generic allegation that *all* Google's policies and practices related to hiring and employment caused a disparate impact on applicants and employees is insufficient to place Google or the EEOC on notice of *any* actual disparate impact claim.  Because Fillekes' charge

failed to give the EEOC and Google the opportunity to respond to and conciliate any disparate impact claim, the SAC's disparate impact claim is neither like nor reasonably related to the allegations in her charge and must be dismissed for failure of administrative exhaustion.

At bottom, the disparate impact claim fails due to waiver, Fillekes' failure to exhaust administrative remedies, and the lack of a statutory basis for the claim. This Court should grant Google's motion and dismiss the disparate impact claim with prejudice.

## II.    BACKGROUND

### A.    Relevant Procedural History

On April 22, 2015, Plaintiff Robert Heath filed his original complaint in this Court. ECF 1. The complaint included a disparate impact claim under the ADEA. *Id.* Google filed a motion to dismiss, explaining that a claim for disparate impact in hiring is not cognizable under the ADEA, among other things. ECF 16-1 (Br. at 3:23-5:23). Google's motion went unopposed. On June 25th, Plaintiffs mooted Google's motion to dismiss by filing their First Amended Complaint ("FAC"), joining Fillekes as a Plaintiff and withdrawing the disparate impact in hiring claim under the ADEA. ECF 18. (At the time, both Heath and Fillekes were represented by the same law firm, which now represents Fillekes and the Opt-In Plaintiffs but not Heath.) Sixteen months later, on October 5, 2016, the Court granted Plaintiff Fillekes' motion to conditionally certify a collective action. ECF 119.

On August 1, 2017, Plaintiffs filed a motion for leave to file the Second Amended Complaint ("SAC"), explaining that Plaintiffs wanted to re-plead a disparate impact claim in light of Judge Tigar's decision in *Rabin v. PricewaterhouseCoopers LLP*, 236 F. Supp. 3d 1126, 1133 (N.D. Cal. 2017). ECF 187. Google opposed the motion on a variety of grounds, including that Plaintiffs had not been diligent, *Rabin* was non-binding authority that did not excuse plaintiffs' delay, introducing new theories of liability at this stage would cause substantial prejudice to Google, and amendment would be futile. ECF 204. The Court granted Plaintiffs' motion for leave to file the Second Amended Complaint, without reaching the merits of any Rule 12 challenge to the pleading. ECF 219.

On September 11, 2017, Plaintiffs filed the SAC. ECF 218. It includes a disparate impact

cause of action that purports to identify at least five neutral policies or practices that allegedly had a disparate impact on Plaintiffs on the basis of their age.  *Id.* (SAC ¶¶ 22-27).  These alleged practices include collecting college and graduate school graduation dates (SAC ¶ 23); emphasizing "abstract, theoretical questions" during interviews (SAC ¶ 24); "ignor[ing] or discount[ing] applicants' real-world experience" (SAC ¶ 25); holding older candidates to a higher standard than younger candidates (SAC ¶ 26); and emphasizing "Googleyness" and "cultural fit" in the interview process (SAC ¶ 27).

**B.**     **Fillekes' EEOC Charge**

The administrative charge Fillekes filed with the EEOC consists of the following allegations:

- Fillekes was over 40 years old each of the four times she interviewed with Google from 2007 through 2014.  Request for Judicial Notice ("RJN"), Ex. 1 (Kotchen Decl., Ex. 3 (Fillekes Charge at ¶¶ 1, 3)).

- Fillekes earned a B.S. and PhD in technical fields from prestigious universities and has approximately 40 years of computer programming experience.  *Id.* at ¶ 3.

- Fillekes performed well at all her technical phone interviews and onsite interviews but she was not selected after review by the hiring committee.  *Id.* at ¶¶ 4-12.

- On one occasion, a recruiter was "disappointed" that Fillekes' resume did not contain graduation dates and asked Fillekes to send this information, which she did.  *Id.* (Charge at ¶ 7.

- Fillekes believes she was qualified to hold the positions for which she interviewed, and that Google did not hire her after she attended "in-person interviews."  *Id.* at ¶ 13.

- Fillekes cites Department of Labor workforce statistics for 2013 related to certain technical and engineering occupations, and alleges Google's workforce is disproportionately young by comparison.  *Id.* at ¶ 14.

- Fillekes alleges Google has engaged in a "pattern and practice" of age discrimination that has resulted in a median age of 29 for its workforce.  She is informed and believes "Google's conduct was intentional."  *Id.* at ¶ 15.

- Without identifying a single age-neutral policy or practice, she then generically alleges "Google's policies and practices, even if facially neutral, have had a substantial adverse impact on the hiring and employment opportunities of applicants and workers…." *Id.* at ¶ 16.

## III.  LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  When ruling on a motion to dismiss, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction.  The challenge may be made "either on the face of the pleadings or by presenting extrinsic evidence."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  A "facial" challenge to the pleadings need not be converted to a "factual" challenge motion where "the additional facts considered by the court are contained in materials of which the court may take judicial notice."  *De Los Santos v. Panda Exp., Inc.*, No. C 10-01370 SBA, 2010 WL 4971761, at *3 (N.D. Cal. Dec. 3, 2010) (citing *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994)).

## IV.  ARGUMENT

### A.  Fillekes Waived Any Disparate Impact Claim Long Ago.

Fillekes knowingly and voluntarily abandoned her disparate impact claim more than two years ago when she decided not to re-plead it in the FAC.  *Compare* ECF 1 (Complaint) *with* ECF 18 (FAC).  Her decision to omit a disparate impact claim from the FAC constitutes a waiver.

It is well-settled that "an amended complaint supersedes the original, the latter being treated thereafter as non-existent.'"  *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) ("for any claims voluntarily dismissed, we

will consider those claims to be waived if not repled").[1]  Relying on *Lacey,* District Courts have repeatedly concluded that a plaintiff waives a claim not re-pleaded in a subsequent complaint.  For instance, in *Gazzano v. Stanford Univ.,* No. C 12-05742 PSG, 2013 WL 2403646 (N.D. Cal. May 31, 2013), the plaintiff responded to a motion for judgment on the pleadings by seeking leave to amend his complaint to omit discrimination and retaliation claims.  *Id.* at *1.  The court explained that the plaintiff's "deletion of these claims from his proposed first amended complaint shows he does not wish to pursue them further.  The court accepts [plaintiff's] voluntary withdrawal of these claims." *Id.* at *4.  In so doing the court explained that a claim voluntarily omitted from an amended complaint is "deemed waived." *Id.* n.31 (citing *Lacey,* 693 F.3d at 928).

Similarly, in *Philips*, the plaintiffs filed a first amended complaint alleging numerous causes of action under state law from a variety of states.  *Phillips v. Ford Motor Co.*, 14-CV-02989-LHK, 2015 WL 4111448, at *4 (N.D. Cal. July 7, 2015).  Given the "unwieldy" complaint, the parties stipulated to proceed only on the California claims for an initial motion to dismiss. *Id.* The plaintiffs then filed a second amended complaint, asserting some but not all the California claims they had previously alleged.  In moving to dismiss the SAC, the defendant argued any California claims omitted from the SAC were waived.  The court agreed, ruling that "[p]laintiffs have waived the claims by failing to replead them" and so were "precluded from reasserting" them in the litigation. *Id.* at *6.

These and other cases establish that a plaintiff waives a previously pleaded claim if the plaintiff later voluntarily withdraws the claim by omitting it from an amended complaint. *See, e.g., Westley v. Oclaro, Inc*., No. C-11-2448 EMC, 2013 WL 2384244, at *11 (N.D. Cal. May 30, 2013)

---

[1] *Lacey* addressed waiver of rights to appeal.  However, district courts have cited *Lacey* when finding waiver of causes of action in the district court, drawing a distinction between claims that a plaintiff could have pleaded in a subsequent complaint and those that were dismissed *without* leave to amend. *See, e.g. Phillips*, 2015 WL 4111448, at *6.  In doing so, the courts held that claims not barred by the court were waived when the plaintiffs declined to renew them in a subsequent pleading. *Id.*

(granting motion to dismiss claims against a defendant whom plaintiffs named in original

complaint but voluntarily omitted from subsequent complaints because, under *Lacey,* plaintiffs

"waived or abandoned the claims" against the defendant "almost two years ago."); *cf. Digby Adler*

*Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-CV-02349-TEH, 2015 WL 5138080, at *7 (N.D.

Cal. Sept. 1, 2015) ("The Court is inclined to agree that these claims were abandoned and cannot

be reasserted.").

Thus, Plaintiffs' disparate impact claim has been waived and should be dismissed.

**B.**   **The ADEA Does Not Authorize Disparate Impact Claims By Applicants.**

The question presented here is whether a job *applicant* can state a claim under section

4(a)(2) of the ADEA, or whether the protections of section 4(a)(2) are limited to employees.

Neither the Supreme Court nor the Ninth Circuit has addressed this question.  To explain, section

4(a) of the ADEA makes it unlawful for employers:

> (1)     to fail or refuse to hire or to discharge any individual or otherwise
>
> discriminate against any individual with respect to his compensation,
>
> terms, conditions, or privileges of employment, because of such
>
> individual's age; [or]
>
> (2)     to limit, segregate, or classify his employees in any way which
>
> would deprive or tend to deprive any individual of employment
>
> opportunities *or otherwise adversely affect his status as an employee*,
>
> because of such individual's age[.]

29 U.S.C. § 623(a)(1), (2) (emphasis added).  Under this statutory framework, disparate treatment

claims are brought under section 4(a)(1) and disparate impact claims are brought under section

4(a)(2).  *Smith v. City of Jackson*, 544 U.S. 228, 235-37 & n.6 (2005) ("*City of Jackson*").

In *City of Jackson*, the Supreme Court held that an employee may bring a disparate impact

claim under section 4(a)(2) of the ADEA, but did not reach the question of whether a job applicant

may do so.  544 U.S. at 240.  However, a concurrence joined by three Justices noted that "of

course" a job applicant cannot assert a disparate impact claim under the ADEA. *Id.* at 266

(O'Connor, J., Kennedy, J., Thomas, J, concurring) ("Section 4(a)(2), of course, does not apply to

'applicants for employment' at all – it is only § 4(a)(1) that protects this group." (emphasis added)).

Writing separately, Justice Scalia noted that "perhaps the … attempt to sweep employment

applications into the disparate-impact prohibition is mistaken." *Id.* at 240 (Scalia, J., concurring).

No Justice expressed a contrary view.  And while the four-Justice plurality did not focus on the

question, it implicitly assumed that Justice O'Connor was correct, stating that section 4(a)(2)

"focuses on the ***effects*** of the action on the ***employee***." 544 U.S. at 236 (second emphasis added).

Sitting *en banc* in the only appellate decision after *City of Jackson* to squarely decide the

issue, the Eleventh Circuit held that job applicants cannot bring disparate impact claims under the

ADEA.  *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) ("As to his

claim of disparate impact, we conclude that he failed to state a claim under section 4(a)(2) because

the text protects employees, not applicants"), *cert. denied,* No. 16-971, 2017 WL 478119 (June 26,

2017).  Three other Courts of Appeal that considered this question prior to *City of Jackson* are in

accord.  *EEOC v. Francis W. Parker Sch.*, 41 F.3d 1073, 1077-78 (7th Cir. 1994) ("*Francis W.

Parker*"); *Smith v. City of Des Moines*, 99 F.3d 1466, 1470 n.2 (8th Cir. 1996) ("*City of Des

Moines*"); *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1007 n.12 (10th Cir. 1996).  As further

explained below, the plain text, context, and structure of the ADEA, as well as Congress's

amendments to the Title VII provision that mirrors the ADEA's section 4(a)(2), all leave no doubt

that Congress intended to exclude disparate impact claims by job applicants.

### 1.    The Text of Section 4(a)(2) Excludes Job Applicants.

Based on a straightforward reading of section 4(a)(2), only an individual with "status as an

employee" may bring a disparate impact claim.  As the court in *Villarreal* explained:

> The key phrase in section 4(a)(2) is "or otherwise adversely affect
>
> his status as an employee." 29 U.S.C. § 623(a)(2). By using "or
>
> otherwise" to join the verbs in this section, Congress made
>
> "depriv[ing] or tend[ing] to deprive any individual of employment
>
> opportunities" a subset of "adversely affect[ing] [the individual's]
>
> status as an employee." *Id.* In other words, ***section 4(a)(2) protects***
>
> ***an individual only if he has a "status as an employee."*** *Id.*

*Villarreal*, 839 F.3d at 963 (emphasis added).[2]

Put differently, although section 4(a)(2) makes it unlawful for an employee to "deprive or tend to deprive any individual of employment opportunities," this phrase cannot be read in isolation. Placed in the proper grammatical context of the entire sentence, the phrase "any individual" is subsumed and qualified by the subsequent phrase "or otherwise adversely affect his status as an employee." *See* 29 U.S.C. § 623(a)(2); *Villarreal*, 839 F.3d at 965. The text of section 4(a)(2) is specifically phrased as a prohibition on what an employer may do *to* "his employees" to affect them in their capacity *as* employees." 29 U.S.C. § 623(a)(2) (emphasis added). It would be nonsensical to speak of "adversely affect[ing]" the "status as an employee" of someone who has never been an employee. Thus, only an employee may bring a disparate impact claim under section 4(a)(2) because only an individual who has been employed by an employer has "status as an employee" that could have been adversely impacted by a neutral employment practice. *See Villarreal*, 839 F.3d at 964 (reviewing dictionary definitions of the word "status" and concluding "the phrase 'status as an employee' connotes a present fact" that excludes an individual with a future status as an employee).

## 2. Other Sections of the ADEA Confirm the Plain Meaning of Section 4(a)(2)'s Exclusion of Job Applicants.

The textual dissimilarities between section 4(a)(2) and other sections of the ADEA are presumptively intentional and cannot be ignored. *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *see also S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory interpretation that the use of different words or

---

[2] *Villarreal* went on to explain that the legislature's use of the phrase "or otherwise…" to connect the verbs in this subsuming fashion is a "familiar construction" used in various sections of the U.S. Code and the rules of judicial procedure. *Villarreal*, 839 F.3d at 963 (examples of this construction "abound" in legislation).

1  terms within a statute demonstrates that Congress intended to convey a different meaning for those

2  words.").

3      A comparison of the text of section 4(a)(2) with other provisions of the ADEA eliminates

4  any doubt that the legislature intended to exclude job applicants from section 4(a)(2).  As an initial

5  matter, Congress used the phrase "fail or refuse to hire" in section 4(a)(1) when prohibiting

6  employers from intentionally discriminating against job applicants.  29 U.S.C. § 623(a)(1).  This

7  phrase and others like it are conspicuously absent from section 4(a)(2).  29 U.S.C. § 623(a)(2);

8  *Villarreal*, 839 F.3d at 967;  *Ellis*, 73 F.3d at 1007 n.12.   At the same time, section 4(a)(2)'s

9  limiting phrase "status as an employee" is nowhere to be found in section 4(a)(1).  29 U.S.C.

10 § 623(a)(1), (2).

11     Further, section 4(a)(2) has the same structure as section 4(c)(2), which governs labor

12 organization practices, yet only the latter includes the phrase "applicant for employment."   Section

13 4(c)(2) makes it unlawful for labor organizations:

14             to limit, segregate, or classify its membership, or to classify or fail or

15             refuse to refer for employment any individual, in any way which would

16             deprive or tend to deprive any individual of employment opportunities, or

17             would limit such employment opportunities or otherwise adversely affect

18             his status as ***an employee or as an applicant for employment***, because of

19             such individual's age.

20 29 U.S.C. § 623(c)(2) (emphasis added).

21     In other words, while Congress included the phrase "an employee or as an applicant for

22 employment" when articulating the scope of disparate impact claims that may be brought against

23 labor organizations under section 4(c)(2), and did so using the same grammatical structure as

24 section 4(a)(2), Congress did not mention applicants in section 4(a)(2).  *Compare* 29 U.S.C.

25 § 623(a)(2), *with* 29 U.S.C.§ 623(c)(2); *see Villarreal*, 839 F.3d at 966 (explaining that comparison

26 between sections 4(a)(2) and 4(c)(2) confirms the former does not encompass claims by

27 applicants).

28     Nor is this an isolated example.  The phrase "employees or applicants for employment"

appears *repeatedly* in the text of the ADEA.  For instance, the ADEA makes it unlawful for an employer to retaliate against "any of his employees or applicants for employment" for opposing practices prohibited by the ADEA or for initiating or participating in any investigation or proceeding under the ADEA.  29 U.S.C. § 623(d).  The ADEA also specifies based on amendments introduced *after* the ADEA's original enactment that certain prohibitions related to the federal government's employment practices apply to "employees or applicants for employment."  29 U.S.C. §§ 631(b), 633a(a), 633a(b); *see Villarreal*, 839 F.3d at 980 (concurrence) (noting significance of Congress's decision to amend the ADEA to add "applicants" to the section on labor organization liability but not the section on employer liability.)

In light of these striking textual differences, "it would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).  Plainly, Congress recognized the difference between a provision that covers only "employees" and one that covers both "employees" and "applicants for employment," and it knew how to include applicants for employment in the provisions of the ADEA when it wanted to do so.  These stark textual differences cannot be ignored.  *Russello*, 464 U.S. at 23; *McCarthy*, 322 F.3d at 656.

### 3. The Amendments to Title VII Show Congress Intended to Exclude Job Applicants From Section 4(a)(2).

Congress enacted the ADEA in 1967, modeling section 4(a)(2) on section 703(a)(2) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(2).  *Lorillard v. Pons*, 434 U.S. 575, 584 & n. 12 (1978).  As enacted in 1967, section 703(a)(2) of Title VII was identical to the ADEA's section 4(a)(2).  "Except for substitution of the word 'age' for the words 'race, color, religion, sex, or national origin,' the language of [Section 4(a)(2)] in the ADEA is identical to that found in § 703(a)(2) of the Civil Rights Act of 1964 (Title VII)." *City of Jackson*, 544 U.S. at 233.

Before 1972, neither section 703(a)(2) nor section 4(a)(2) applied to applicants for employment.  In 1972, Congress amended Title VII by inserting the words "or applicants for employment" after the words "his employees" in section 703(a)(2).  With this amendment, Section 703(a)(2) now makes it unlawful for an employer:

1  |  to limit, segregate, or classify his employees *or applicants for*

2  |  *employment* in any way which would deprive or tend to deprive any

3  |  individual of employment opportunities or otherwise adversely affect his

4  |  status as an employee, because of such individual's race, color, religion,

5  |  sex, or national origin.

6  42 U.S.C. § 2000e-2(a)(2) (emphasis added to show amendment's additions).

7  But Congress has never amended ADEA's section 4(a)(2) to apply to "applicants for

8  employment."  This further confirms that Congress intended to exclude job applicants from section

9  4(a)(2).  Indeed, in *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167 (2009), the Court determined

10 that Congress is "presumed to have acted intentionally" when it amends Title VII but does not

11 amend the parallel provisions of the ADEA.  *Id.* at 174 ("[w]e cannot ignore Congress' decision to

12 amend Title VII's relevant provisions but not make similar changes to the ADEA.")  Conversely,

13 when Congress amends the ADEA but does not amend the equivalent provisions of Title VII, that

14 decision is also presumed to be intentional.  *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 256

15 (1991).

16 The textual difference between Title VII and the ADEA has convinced multiple Courts of

17 Appeal that section 4(a)(2) "governs employer conduct with respect to 'employees' only."  *City of*

18 *Des Moines*, 99 F.3d at 1470 n.2; *Francis W. Parker*, 41 F.3d at1077-78 ("The 'mirror' provision

19 in the ADEA omits from its coverage, 'applicants for employment.'  In light of the ADEA's nearly

20 verbatim adoption of Title VII language, the exclusion of job applicants from subsection (2) of the

21 ADEA is noteworthy. Hence, while the dissent may find our decision creates a 'practical

22 difficulty,' it is a result dictated by the statute itself."); *Ellis,*73 F.3d at 1007 n.12 ("…in 1972,

23 Congress expressly added applicants to the parallel provision in Title VII, see 42 U.S.C. § 2000e–

24 2(a)(2), but not to the ADEA, indicating an intent that § 623(a)(2) of the ADEA not apply to

25 applicants as § 623(a)(1) expressly does.")  To be sure, the Eighth Circuit's opinion in *City of Des*

26 *Moines,* the Seventh Circuit's opinion in *Francis W. Parker*, and the Tenth Circuit's opinion in

27 *Elllis* each pre-dated *City of Jackson* and were overruled to the extent they conflicted with *City of*

28 *Jackson*'s holding that disparate impact claims by *employees* are cognizable under the ADEA.

However, *City of Jackson* did not abrogate these appellate courts' conclusion that section 4(a)(2) excludes job applicants.

Taken together, *City of Jackson*'s finding that disparate impact claims are properly brought only under Section 4(a)(2), section 4(a)(2)'s focus on "employees" and its omission of "applicants for employment" while this phrase appears elsewhere in the ADEA, and Congress' decision to amend Title VII's parallel provision to include applicants and its corresponding decision not to amend Section 4(a)(2), all establish that disparate impact claims are not available to job applicants under the ADEA.

The concurrence in *Villarreal* summed it up this way:

> So to recap, the "applicants for employment" issue was on Congress's radar screen at the time that it enacted the ADEA without that language in § 4(a)(2); at the time that it amended the parallel provision of Title VII, after the ADEA had already been enacted; and at the time that Congress amended the ADEA itself, in part to provide coverage to "applicants for employment" in federal-government employment. At any one of these times, Congress easily could have chosen to add the "applicants for employment" language to § 4(a)(2) of the ADEA. It did not. We can't ignore that fact.

*Villarreal*, 839 F.3d at 980 (concurrence).

### 4.      The District Court's Opinion in *Rabin* Is Erroneous.

In *Rabin,* the district court (Tigar, J.) denied the defendant's motion for judgment on the pleadings based on the court's conclusion that the ADEA authorizes a job applicant to bring a disparate impact claim against an employer.  *Rabin*, 236 F. Supp. 3d at 1133.  In doing so, the court relied heavily on the dissenting opinion in *Villarreal*.  *See Rabin*, 236 F. Supp. 3d at 1128-32. Respectfully, the decision in *Rabin* is erroneous.

First, the phrase "any individual" in section 4(a)(2) cannot be read in isolation.  In *Rabin*, the court's analysis started, as it should, with the text of the ADEA. *Rabin*, 236 F. Supp. 3d at 1128.  A "critical" part of the court's analysis was that section 4(a)(2) uses the phrase "any

1   individual" rather than "employee" when describing those whom an employer cannot "limit,

2   segregate, or classify,"  while the term "employee" is used elsewhere in the same provision.  *Id.*

3   But as explained in *Villarreal*, the phrase "any individual" cannot be read in isolation.  *Villarreal*,

4   839 F.3d at 965.  Rather, as explained above, "[t]he words 'any individual' in section 4(a)(2) are

5   limited by the phrase 'or otherwise affect his status as an employee,' so the 'individuals' that the

6   statute covers are those with a 'status as an employee.'… the whole text makes clear that 'any

7   individual' with a 'status as an employee' means 'any employee.'"  *Id.*

8        If read out of context, the phrase "any individual" would include literally anyone who

9   might be adversely affected by an employer's conduct.  Plainly, that is not the law.  In the context

10  of Title VII, for instance, courts of appeal have acknowledged that the phrase "any individual"

11  must be read in context and on that basis recognized limits to the scope of the statute's protections.

12  *See, e.g.*, *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 939 (9th Cir. 2003); *Serapion v. Martinez*,

13  119 F.3d 982, 987 (1st Cir. 1997) (factual inquiry required to determine whether a member of a

14  partnership is an individual covered by statute); *Llampallas v. Mini-Circuits, Lab, Inc*., 163 F.3d

15  1236, 1242-43 (11th Cir. 1998) (an individual who has a "gratuitous working relationship" with an

16  employer is not covered by statute).  Although these cases do not address the distinction between

17  applicants and employees, they ***do*** demonstrate that the term "any individual" does not literally

18  mean any individual whatsoever.

19       Second, *Rabin* misapprehends the significance of the phrase "applicants for employment"

20  in section 4(c)(2) and leaves the ADEA's other usage of this phrase unexamined.  In *Rabin,* the

21  court recognized the strength of the textual argument that the phrase "applicant for employment" is

22  omitted from section 4(a)(2) and included in section 4(c)(2).  *Rabin*, 236 F. Supp. 3d at 1129.

23  Nevertheless, the court concluded section 4(c)(2) is "distinguishable" because it governs labor

24  organizations, which have a "unique referral role" and sometimes act as the sole conduit through

25  which employers receive job applicants.  *Id.* (quoting *Villarreal*, 839 F.3d at 985 (Martin, J.,

26  dissenting).)  This rationale is flawed for a few reasons.  First, it is self-defeating.  If the phrase

27  "any individual" as it appears in sections 4(c)(2) itself covers applicants, Congress would have had

28  no reason to add the phrase "or applicants for employment" in section 4(c)(2).  *Villarreal*, 839 F.3d

1   at 966–67 (explaining that this interpretation violates the surplusage canon because section 4(a)(2)

2   "would mean the exact same thing…if the words 'or as an applicant for employment' were

3   deleted.").  Second, as explained above (*supra* at § IV.B.2), the ADEA uses the phrase "applicants

4   for employment" repeatedly.  *Rabin* does not attempt to square these other provisions with the

5   omission of "applicants" from section 4(a)(2).

6          Third, the Supreme Court's opinion in *Griggs* does not support *Rabin*'s interpretation of

7   section 4(a)(2).  In *Rabin*, the court read the Supreme Court's opinion in *Griggs* to "support[] an

8   interpretation of section 4(a)(2) that permits job-seekers to bring disparate impact claims," because

9   *Griggs* held that disparate impact claims could be brought under the pre-1972 version of section

10  703(a)(2) of Title VII, which is the same as section 4(a)(2) of the ADEA.  *Rabin*, 236 F. Supp. 3d at

11  1130 (citing *Griggs v. Duke Power Co*., 401 U.S. 424 (1971)).  *Rabin* found it persuasive that the

12  Supreme Court used the phrase "condition of employment" in framing the question on appeal.  *Id.*

13  Contrary to *Rabin*'s reading of *Griggs*, however, the Supreme Court did not reach the issue of

14  whether an ***applicant*** could bring a disparate impact claim.  It did not have occasion to do so

15  because all the plaintiffs in *Griggs* were employees.  *Villarreal*, 839 F.3d at 968 (citing *Griggs*,

16  401 U.S. at 426 ("All the petitioners are employed at the Company…").)  Also, the term "condition

17  of employment" as it was used in *Griggs* referred to conditions for transfer or promotion within the

18  company.  As the court in *Villarreal* explained,

19              The only 'condition of employment' that the Supreme Court considered in

20              Griggs was "a condition of employment in or transfer to jobs"—that is, a

21              condition that employees graduate high school or pass a test before they

22              could be ***promoted or transferred to a new position***. *Griggs*, 401 U.S. at

23              425–26 (emphasis added). Lest there be any doubt, on remand the district

24              court entered an injunction in favor of present and future employees, not

25              applicants "who may hereafter seek employment." *See Griggs v. Duke*

26              *Power Co*., No. C-210-G-66, 1972 WL 215, at *1 (M.D.N.C. Sept. 25,

27              1972) (defining "[t]he class of persons entitled to relief under this Order"

28              as "[a]ll black persons employed" or "who may subsequently be

14

1    employed").

2    *Villarreal*, 839 F.3d at 968 (emphasis added).  In short, *Rabin's* reliance on *Griggs* is misplaced not

3    only because it relies on dicta, but also because the "dicta" it extracts from *Griggs* misconstrues the

4    Court's discussion of the case.

5          Finally, although *Rabin* reached the EEOC's interpretation of section 4(a)(2) and the

6    legislative history of the ADEA to assist the court with its interpretation of the statute (*see Rabin*,

7    236 F. Supp. 3d at 1132-22), it should not have done so because the statute is unambiguous.  *See*

8    *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) ("If a court,

9    employing traditional tools of statutory construction, ascertains that his Congress had an intention

10    on the precise question at issue, that intention is the law and must be given effect."); *Ratzlaf v.*

11    *United States*, 510 U.S. 135, 147-48 (1994) ("There are, we recognize, contrary indications in the

12    statute's legislative history.  But we do not resort to legislative history to cloud a statutory text that

13    is clear.")  Significantly, a statute is not ambiguous merely because there are "dueling

14    characterizations of what Congress 'really meant.'"  *See, e.g., Bank of Am. Nat. Trust & Sav. Ass'n*

15    *v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 461 (1999) (Thomas, J., joined by Scalia, J., dissenting).

16          In any event, *Rabin* is incorrect that the EEOC has interpreted section 4(a)(2).  *Compare*

17    *Rabin*, 236 F. Supp. 3d at 1132 (the EEOC has "long interpreted the ADEA as permitting disparate

18    impact claims by job-seekers,"), *with City of Jackson*, 544 U.S. at 262-67 (O'Connor, concurring)

19    (disputing that the EEOC or DOL have interpreted section 4(a)(2).)  Because the ADEA expressly

20    authorizes disparate treatment claims by applicants (29 U.S.C. § 623(a)(1)), *Rabin* also errs by

21    taking general expressions of concern about age discrimination voiced by individual Congressional

22    supporters of the ADEA and inferring from those comments that Congress intended to authorize

23    disparate *impact* claims by applicants.  *Compare Rabin*, 236 F. Supp. 3d at 113, *with Mims v.*

24    *Arrow Fin. Servs., LLC*, 565 U.S. 368, 385 (2012) (in appeal involving question of subject-matter

25    jurisdiction, the Court rejected inference based on remarks by Senate sponsor of Telephone

26    Consumer Protection Act because "the views of a single legislature, even a bill's sponsor, are not

27    controlling," and because the Senator's remarks "did not mention" the jurisdictional issue on

28    appeal).

**C.**     **The Disparate Impact Claim Is Barred Because Fillekes Failed to Exhaust Her Administrative Remedies.**

Federal courts have subject matter jurisdiction over a discrimination claim only if the plaintiff has "exhaust[ed] her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("*Maui Police Dept.*"); 29 U.S.C. 626(d)(1).   This is so because "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Maui Police Dept.*, 276 F.3d at 1099 (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985).) Allegations of discrimination not included in a plaintiff's administrative charge may not be considered by a federal court unless the new claims are "like or reasonably related to the allegations contained in the EEOC charge," when construed with "utmost liberality." *Maui Police Dept*, 276 F.3d at 1100; *Lindsey v. United Airlines, Inc.*, No. C 17-00753 WHA, 2017 WL 2404911, at *2 (N.D. Cal. June 2, 2017).  In making this determination, the "crucial element" of the charge is its statement of facts. *Maui Police Dept.*, 276 F.3d at 1099.

A claim for disparate treatment is different from a claim for disparate impact. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).  A disparate treatment claim "depends on whether the protected trait actually motivated the employer's decision," but a disparate impact claim involves a facially neutral employment practice that has a disproportionate and unnecessary adverse effect on a given group. *Id.*  Given the differences between these two theories of liability, a plaintiff cannot rely on a disparate treatment theory in an EEOC charge to exhaust administrative remedies related to a disparate impact claim. *See, e.g., Pacle v. JPMorgan Chase Bank, N.A.*, No. C13-3379 TEH, 2013 WL 5289020, at *2 (N.D. Cal. Sept. 19, 2013); *De Los Santos*, 2010 WL 4971761, at *4.

For a disparate impact claim to be within the scope of an administrative charge, the charge must identify the facially neutral policy or practice that is alleged to have caused the disparate impact. *E.g., Lindsey*, 2017 WL 2404911, at *2 (plaintiff's EEOC charge "lacks the characteristic feature of a disparate-impact claim – the recitation of a facially-neutral employment policy."); *De*

1   *Los Santos*, 2010 WL 4971761, at *4; *Goethe v. California, Dep't of Motor Vehicles,* No. 207-CV-

2   01945-MCE-GGH, 2008 WL 489554, at *6 (E.D. Cal. Feb. 20, 2008) ("Plaintiff did not allude to

3   any specific policy or procedure that adversely affected African-Americans as a group").  Indeed,

4   courts consistently require that discrimination charges "identify or describe the neutral employment

5   practice which is alleged to disproportionately affect protected employees."  *Brown v. Ameriprise*

6   *Fin. Servs., Inc.*, 707 F. Supp. 2d 971, 976 (D. Minn. 2010) (collecting cases).

7       The *De Los Santos* case is instructive.  There, a non-Asian restaurant worker's EEOC

8   charge alleged an Asian manager told him that the employer had not promoted the worker for over

9   three years because of the worker's status on the restaurant's "GM Points" system, even though

10  other less experienced Asian employees had been promoted.  *De Los Santos*, 2010 WL 4971761, at

11  *5.  The court (Armstrong, J.) granted the employer's motion to dismiss the worker's disparate

12  impact claim because his charge's "passing reference" to the facially neutral "GM points" system

13  was insufficient to exhaust a disparate impact claim.  *Id.* (citing *Donaldson v. Microsoft Corp.*, 205

14  F.R.D. 558, 571 (W.D. Wash. 2001) (mentioning "bell curve" system in administrative charge is

15  insufficient for exhaustion)).  The court's conclusion was further supported by the narrative context

16  of the charge, which revealed the plaintiff understood the manager's reference to the "GM Points"

17  system to be a pretext for intentional discrimination—not a neutral practice that had an adverse

18  impact on him.  *Id.*; *see also Donaldson* 205 F.R.D. at 571 ("there was nothing in the original

19  EEOC documents to suggest that Ms. Donaldson was pointing to the rating system as a source of

20  disparate impact.")

21      Here, Fillekes' charge makes only "passing reference" to a recruiter who was

22  "disappointed" that Fillekes' resume omitted her graduation dates and allegedly asked Fillekes to

23  provide this information in a revised resume.  RJN, Ex. 1 (Kotchen Decl., Ex. 3 (Fillekes Charge at

24  ¶ 7)).  As in *De Los Santos* and *Bell*, however, the narrative context of Fillekes' charge shows she

25  understood the recruiter asked for her graduation dates in order to assess her age.  *Id.* at ¶¶ 7, 8, 13

26  (alleging recruiter was "disappointed" by resume without graduation dates and requested this

27  information, followed by no job offer after "in-person interview.")  Fillekes' complaint eliminates

28  any doubt that she understood Google's alleged practice of collecting graduation dates to be

*motivated* by age.  ECF 218 (SAC ¶ 50 ("When Ms. Fillekes asked why she needed to put her graduation dates on her resume, Ms. Cutler responded ***"so the interviewers can see how old you are."***) (emphasis added)).

Fillekes' charge fails to make even "passing reference" to the four other alleged practices that form the bases for Plaintiffs' new disparate impact cause of action.  Indeed, her charge does not identify Google's alleged emphasis on "abstract, theoretical" questions; its alleged practice of "ignor[ing]" or "discount[ing]" real world experience; its alleged practice of holding "senior" candidates to higher standards than younger candidates; or its alleged emphasis on "Googleyness" and "cultural fit" that allegedly disadvantages older applicants.  *Compare* SAC ¶¶ 24-27, *with* RJN, Ex. 1 (Kotchen Decl., Ex. 3 (Fillekes Charge)).  Notwithstanding Fillekes' familiarity with Google's interview process from the four separate rounds of interviews she attended over a seven-year period, she did not so much as mention these alleged practices in her charge, let alone single them out as neutral practices that disparately impacted her and other older job applicants.  RJN Ex. 1 (Kotchen Decl., Ex. 3 (Fillekes Charge at ¶¶ 1, 3)).  In fact, her charge makes no reference whatsoever to the interview experiences of any job applicant — young or old — other than herself. *Id.* at ¶¶ 1-17.

The sole "disparate impact" allegation in her charge is her boilerplate assertion that "Google's policies and practices, even if facially neutral, have had a substantial adverse impact on the hiring and employment opportunities of applicants and workers..."  RJN, Ex. 1 (Kotchen Decl., Ex. 3 (Fillekes Charge at ¶ 16)).  But this is a completely generic, boilerplate allegation that is untethered to any employment policy or practice.  It improperly purports to place the EEOC and Google on notice regarding every conceivable policy or practice related to Google's conduct toward job applicants and ***even its own "workers." Id.***  Not surprisingly, courts reject this "check the box" approach to administrative exhaustion.  *See Maui Police Dep't*, 276 F.3d at 1100-03 (explaining that checking boxes for discrimination based on "race," "sex," and "national origin" was insufficient to exhaust claim for sexual discrimination because the charge's factual statement did not describe discrimination of a sexual nature, but resolving "close question" of exhaustion in plaintiff's favor based on plaintiff's pre-complaint administrative questionnaire and apparent

1  negligence by the state commissioner who assisted with the preparation of the charge); *McKinney*

2  *v. Eastman Kodak Co.*, 975 F. Supp. 462, 466  (W.D.N.Y. 1997) ("the fact that [plaintiff] checked

3  the box for sex discrimination does not mean that she can now bring such a claim in this action

4  even though there were no facts alleged in her EEOC complaint relating to sex discrimination.").

5  As a practical matter, the administrative exhaustion requirement would be eliminated and the

6  EEOC's investigatory and conciliatory role would be undermined, if plaintiffs could exhaust their

7  administrative remedies in this perfunctory way.  *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110

8  (7th Cir. 1992); *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1403 (2d

9  Cir. 1993).  That is why courts look to the alleged facts, not the labels, in reviewing an

10  administrative charge for exhaustion purposes.

11         At bottom, the SAC fails to state a disparate impact claim and the court lacks subject matter

12  jurisdiction over this claim because Fillekes did not exhaust her administrative remedies.  Because

13  Fillekes' charge controls the scope of the action for herself and the Opt-In Plaintiffs who are piggy-

14  backing on her charge (*Grayson v. K Mart Corp*., 79 F.3d 1086, 1101 (11th Cir. 1996)), the Opt-In

15  Plaintiffs, too, have failed to exhaust their administrative remedies with respect to a disparate

16  impact claim.  *Id.*  Thus, Plaintiffs' disparate impact claim must be dismissed.

17  **V.     CONCLUSION**

18         Because Fillekes waived her disparate impact claim over two years ago, the ADEA does

19  not permit a job applicant to bring a disparate claim, and Plaintiffs failed to exhaust their

20  administrative remedies with respect to any disparate impact claim, the Court should dismiss the

21  disparate impact claim in the SAC.

22  DATED:  October 6, 2017              OGLETREE, DEAKINS, NASH, SMOAK &
                                        STEWART, P.C.
23

24                                      By:    /s/ *Brian D. Berry*

25                                          Thomas M. McInerney
                                            Brian D. Berry
26                                          A. Craig Cleland
                                            Lisa M. Bowman
27                                          Elizabeth A. Falcone

28                                      Attorneys for Defendant GOOGLE INC.