1  Thomas M. McInerney, CA Bar No. 162055
   tmm@ogletree.com
2  Brian D. Berry, CA Bar No. 229893
   brian.berry@ogletree.com
3  Lisa M. Bowman, CA Bar No. 253843
   lisa.bowman@ogletree.com
4  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   Steuart Tower, Suite 1300
5  One Market Plaza
   San Francisco, CA 94105
6  Telephone:    415.442.4810
   Facsimile:    415.442.4870
7
   A. Craig Cleland, *pro hac vice*
8  craig.cleland@ogletree.com
   OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
9  191 Peachtree St., NE., Suite 4800
   Atlanta, GA 30303
10 Telephone:    404.881.1300
   Facsimile:    404.870.1732
11
   Elizabeth A. Falcone, CA Bar No. 219084
12 elizabeth.falcone@ogletree.com
   OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
13 The KOIN Center
   222 SW Columbia Street, Suite 1500
14 Portland, OR 97201
   Telephone:    503.552.2166
15 Facsimile:    503.224.4518

16 Attorneys for Defendant
   GOOGLE LLC
17

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HEATH, on behalf of himself, <br><br>and<br><br>CHERYL FILLEKES, on behalf of herself and others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No. 5:15-cv-01824-BLF<br><br>**DEFENDANT GOOGLE LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DECERTIFY COLLECTIVE ACTION**<br><br>Date:      July 12, 2018<br>Time:     9:00 a.m.<br>Dept.:     Courtroom 3<br>Judge:    Hon. Beth Labson Freeman<br><br>Complaint Filed:   April 22, 2015<br>Trial Date:         April 1, 2019 |

# TABLE OF CONTENTS

I. ARGUMENT ........................................................................................................................ 1

    A. *Teamsters* Does Not Eliminate or Reduce Plaintiffs' Burden on Decertification. .................................................................................................... 1

    B. Plaintiffs Are Not Similarly Situated for a Phase-One *Teamsters* Trial. ................... 2

    C. The First *Leuthold* Factor Weighs Overwhelmingly in Favor of Decertification. .................................................................................................... 4

        1. Collectively pleading the same cause of action does not move the needle. ........................................................................................... 4

        2. Plaintiffs' Googleyness and culture-fit claims and evidence are not common. ................................................................................................ 5

        3. Plaintiffs are dissimilar on alleged "experience" discrimination. .................................................................................................... 6

        4. Speculation about age-estimating is not common evidence. ......................... 8

        5. Plaintiffs are dissimilar on technical interview questions. ............................ 9

        6. Interview questions about experience varied, defeating similarity. .............................................................................................. 10

        7. The other alleged similarities are unsupported and insufficient. ................ 11

    D. Even if Credited, Plaintiffs' Statistical Evidence Does Not Defeat Decertification. .................................................................................................. 13

    E. All Other Factors Support Decertification of Plaintiffs' Dissimilar, Conflicting Claims. ............................................................................................. 14

II. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
  772 F. Supp. 2d 1111 (N.D. Cal. 2011)...............................................................................4, 14

*Coleman v. Quaker Oats*,
  232 F.3d 1271,1289 (9th Cir. 2000) ..........................................................................................7

*Daggett v. Blind Enters.*,
  1996 U.S. Dist. LEXIS 22465 (D. Or. Apr. 18, 1996) ..............................................................4

*Frank v. United Airlines, Inc.*,
  216 F.3d 845 (9th Cir. 2000) .....................................................................................................7

*Glass v. IDS Fin. Servs., Inc.*,
  778 F. Supp. 1029 (D. Minn. 1991) ..........................................................................................2

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) .................................................................................................................15

*Hazen Paper Co. v. Biggins*,
  507 U.S. 604 (1993) ..................................................................................................................7

*Hipp v. Liberty Nat'l Life Ins. Co.*,
  252 F.3d 1208 (11th Cir. 2001) ...........................................................................................2, 11

*Koren v. SUPERVALU, Inc.*,
  2003 WL 1572002 (D. Minn. Mar. 14, 2003) ...................................................................2, 3, 13

*Lewis v. Wells Fargo & Co.*,
  669 F. Supp. 2d 1124 (N.D. Cal. 2009)....................................................................................11

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D.N.J. 1987) ........................................................................................2, 13, 14

*Mooney v. Aramco Serv. Co.*,
  54 F.3d 1207 (5th Cir. 1995) ...................................................................................................13

*Rodolico v. Unisys Corp.*,
  199 F.R.D. 468 (E.D.N.Y. 2001)..................................................................................5, 11, 14

*Shelley v. Geren*,
  666 F.3d 599 (9th Cir. 2012) ...................................................................................................15

*Thiessen v. Gen. Elec. Capital Corp.*,
  267 F.3d 1095 (10th Cir. 2001) .........................................................................................2, 3, 4

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................................................12

*Vaszlavik v. Storage Tech. Corp.*,
  175 F.R.D. 672 (D. Colo. 1997) ..............................................................................................3

*Wilkins v. Univ. of Houston*,
  725 F. Supp. 331 (S.D. Tex. 1989)....................................................................................11, 14

**STATUTES**

ADEA ............................................................................................................................... *passim*

28 U.S.C. § 2072 ...........................................................................................................................15

29 U.S.C. § 216(b) ................................................................................................................. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................................................................12

The record evidence overwhelmingly supports decertifying this case. The 260 Plaintiffs, each of whom interviewed for different positions at different job levels, were evaluated under different job-specific hiring criteria by over ▇▇▇ separate interviewers who work at Google locations throughout the country. Plaintiffs' claims that Google subjected them to five discriminatory practices are at bottom disparate-impact claims. But the record evidence—including Plaintiffs' own deposition testimony and Google's interview records—shows Plaintiffs are not similarly situated with respect to any one of these alleged practices, much less all of them. They look to the *Teamsters* trial framework to provide what the facts do not—some "glue" that might bind their individual claims together into a coherent whole for a fair and efficient trial. But, even if applicable to ADEA cases, *Teamsters* does not trump § 216(b)'s statutory requirement, nor does it reduce Plaintiffs' burden at decertification to present substantial evidence they are similarly situated. Because they fail to do so, the Court should decertify the action.

## I. ARGUMENT

### A. *Teamsters* Does Not Eliminate or Reduce Plaintiffs' Burden on Decertification.

On decertification under § 216(b), the Court must rigorously analyze the record evidence on the *Leuthold* factors—Plaintiffs' "disparate factual and employment settings," "the various defenses available to" Google "with respect to the individual plaintiffs," and "fairness and procedural considerations"—to decide if Plaintiffs are similarly situated. 224 F.R.D. 462, 466 (N.D. Cal. 2004). Disregarding these factors, Plaintiffs boldly claim that because they invoke the *Teamsters* pattern-or-practice framework, their case is immunized from decertification. *See* Opp. 10:12-14 (Plaintiffs are similarly situated **"[b]ecause** this is a *Teamsters* pattern-or practice case in which Plaintiffs *allege* a common discriminatory scheme"; *id.* 13:9-10 ("Plaintiffs **bring** a *Teamsters* pattern-or-practice claim, and they are ***therefore*** similarly situated, and decertification should be denied"); *id.* 8:13-14 (Plaintiffs "epitomize" the similarly-situated standard because they are "***bringing***" a *Teamsters* claim); *id.* 13:12-13 (challenging whether decertification ***"can"*** be appropriate in a pattern-or-practice case); *id.* 13:22 ("requisite nexus" established by ***"nature of the claims alone"***). (Emphasis added throughout.) All this mischaracterizes the proper legal standard and Plaintiffs' burden under it.

*Teamsters* is not a talisman that wards off decertification or reduces Plaintiffs' burden. Even in a pattern-or-practice case, plaintiffs must satisfy § 216(b)'s "similarly situated" requirement. Plaintiffs' own authorities prove the point. For instance, in *Thiessen*, the centerpiece of the plaintiffs' claim was that their former employer had a "blocker" policy under which older employees who were allegedly "blocking" the advancement of younger, up-and-coming talent were subjected to adverse actions (e.g., termination, demotion, reassignment) to clear the way. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1107-08 (10th Cir. 2001). The plaintiffs presented direct evidence of this policy, including "blocker" lists with the names of targeted plaintiffs and opt-ins. This, the court of appeals said, was "legitimate evidence" of a pattern-or-practice of intentional discrimination, but the court warned that "[w]e do not hold that whenever there is evidence of a pattern-or-practice, a class must be certified. Whether certification or decertification is appropriate depends upon application of the [ad hoc] factors we have identified." *Id.* at 1108. Other courts agree. *E.g., Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1228, 1229 n.29 (11th Cir. 2001) (reversing jury verdict for plaintiffs in pattern-or-practice case for lack of evidence that plaintiffs were similarly situated; "We nevertheless do not think this case should have been allowed to proceed as a pattern and practice case"; "While it might in some other case be appropriate to conclude an employer engaged in a 'pattern and practice' of forcing out employees of a certain class, it is not appropriate here, where each Plaintiff relies heavily on individualized and personalized 'harassment.'"); *Glass v. IDS Fin. Servs., Inc.*, 778 F. Supp. 1029, 1080–81 (D. Minn. 1991) (significant evidence that plaintiffs held "identical positions," had "same job requirements," and were subject to "same national performance standards, and a similar compensation system"). So at decertification Plaintiffs must satisfy the *Leuthold* factors. Their merely alleging a pattern-or-practice of intentional discrimination does not alter this standard. And where, as here, Plaintiffs fail to carry their burden, courts decertify collective actions even in pattern-or-practice cases. *E.g., Koren v. SUPERVALU, Inc.*, 2003 WL 1572002, at *16 (D. Minn. Mar. 14, 2003)*; Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 376 (D.N.J. 1987).

**B.     Plaintiffs Are Not Similarly Situated for a Phase-One *Teamsters* Trial.**

*Teamsters* does not trump the statutory requirement of § 216(b) that only "similarly situated"

plaintiffs may proceed collectively. Yet Plaintiffs contend that they can bypass the first *Leuthold* factor—differences in factual and employment settings—because their prospective employment situations are allegedly "identical" for purposes of phase one. *See* Opp. 15:18-27 (citing *Vaszlavik*). Not only does the evidence here indisputably show that Plaintiffs are not similarly situated even for phase one, *see infra*, but the *Teamsters* framework itself is only a burden-shifting mechanism that cannot magically transform the facts in a given case. Moreover, Plaintiffs' reliance on *Vaszlavik* is misplaced. There, the court conditionally certified a collective action (it was not a ruling at stage two) because the plaintiffs alleged they were all subject to reductions-in-force (RIFs) as part of a "Strategic Plan" to solve a "major corporate financial problem" by eliminating expensive older workers. *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 677, 679 (D. Colo. 1997). As in *Thiessen*, where the plaintiffs alleged they were all subject to the same blocker policy, the *Vaszlavik* plaintiffs identified a common plan affecting them all. So the district court concluded that any differences in their employment settings would not matter at phase one. *Id.*

Glue binding Plaintiffs' individual failure-to-hire claims is absent here. Plaintiffs have identified no common policy or plan, and their prospective employment settings are far from "identical." The 260 Plaintiffs interviewed for different positions at different job levels, and were evaluated under different job-specific hiring criteria by over ▮ separate interviewers who work at Google locations throughout the country. *See* Def. Br. 11:4-20:7. Also, ▮

▮

▮ These and many more material factual differences between Plaintiffs' prospective employment settings cannot be ignored even in phase one of a *Teamsters* trial. As such, they warrant decertification. *See Koren*, 2003 WL 1572002, at *16 (in age discrimination case under *Teamsters*, "[o]pt-in[s] [doing] different jobs at different geographic locations … subject to different job actions where various decisions by different supervisors are made on a decentralized employee-by-employee basis are not appropriate for class treatment").

Plaintiffs are also not similarly situated because Google has highly individualized phase-one defenses. For example, in *Thiessen*, "all of the plaintiffs relied on the existence of the 'blocker

3    Case No. 5:15-cv-01824-BLF
GOOGLE'S REPLY MEMO OF LAW IN SUPPORT OF MOTION TO DECERTIFY COLLECTIVE ACTION

policy' to support their claims." 267 F.3d at 1105. Recognizing that the employer would be permitted to present phase-one evidence that the challenged "blocker" policy did not exist, the court of appeals concluded that the defendant's "few common defenses" could be tried in phase one and the defenses were not individualized. *Id.* at 1107. By contrast, as discovery here has shown, *see infra*, Plaintiffs do not allege the ***same*** discriminatory practices; they are all over the map on any purported common practices; and Google's phase-one defenses on whether these practices exist at all are not "few" or "common." Because Plaintiffs' alleged common practices are not susceptible to common proof, phase one would devolve into mini-trials, and the efficiencies of § 216(b)'s joinder mechanism would be lost. *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1127–28 (N.D. Cal. 2011) ("given Plaintiffs' varying factual and employment settings and the lack of substantial evidence [they] were subjected to a uniform decision, policy or practice … proceeding collectively would be 'unmanageable, chaotic, and counterproductive'").

**C. The First *Leuthold* Factor Weighs Overwhelmingly in Favor of Decertification.**

As detailed at great length in Google's Motion, the discovery here shows that each Plaintiff has different discrimination allegations challenging different facially-neutral employment practices, which arise from each Plaintiff's unique factual and prospective employment settings. *See* Def. Br. 11:4-20:7. Decertification is appropriate on these facts.

**1. Collectively pleading the same cause of action does not move the needle.**

On the first *Leuthold* factor, Plaintiffs primarily argue they all challenge "the same 'employment practice'– age discrimination in hiring." Opp. 14:1-7 (quoting *Rodolico*). If alleging the same general violation (hiring) of the same statute (the ADEA) were enough, no case would be decertified. Section 216(b)'s similarly-situated standard requires more. Again, Plaintiffs' own authority makes the point. Opp. 7:20-22 (citing *Daggett*). In *Daggett,* the court said that "more similarity is required by § 216(b) than the mere fact that all proposed class members have a possible FLSA claim based on [the employer's] plan to circumvent the FLSA in order to save costs." *Daggett v. Blind Enters.*, 1996 U.S. Dist. LEXIS 22465, *18-19 (D. Or. Apr. 18, 1996) (granting notice-stage certification where "[the employer's] plan was directed only at blind employees working at a single facility run by the same management."). Plaintiffs also misconstrue

4 Case No. 5:15-cv-01824-BLF

1  *Rodolico*. There, the court found the plaintiffs to be similarly situated with respect to their
2  individual claims not because they pleaded the same cause of action, but because they challenged a
3  single RIF in which all were laid off on the same day from the same plant and the evidence showed
4  that high-level managers "made discriminatory comments and voiced a desire to reduce the number
5  of older workers and to lay off the senior-most engineers at the plant." *Rodolico v. Unisys Corp.*,
6  199 F.R.D. 468, 483 (E.D.N.Y. 2001).

### 2. Plaintiffs' Googleyness and culture-fit claims and evidence are not common.

Plaintiffs assert Google places a "strong emphasis" on a candidate's Googleyness or culture fit, which Plaintiffs say are "euphemisms for youth." Opp. 4:10-14; 15:1:4. Tellingly, Google produced ▓▓▓ from August 28, 2014 to October 5, 2016. Yet Plaintiffs do not cite a single one. Instead, they cite ▓▓▓. Because the commen▓▓▓, it has no evidentiary value.

Their only other supporting evidence is the attorney-drafted interrogatory responses of ▓▓▓

Critically, Plaintiffs have no response to Google's showing that interviewers' ▓▓▓

5    Case No. 5:15-cv-01824-BLF
GOOGLE'S REPLY MEMO OF LAW IN SUPPORT OF MOTION TO DECERTIFY COLLECTIVE ACTION

[REDACTED]. On this record, Plaintiffs' claim that they will present "common documentary and testimonial evidence" on Googleyness or culture fit is empty. Even at phase one, the jury would need to consider each Plaintiff's testimony, interviewers' testimony, and contemporaneous interview records because no Plaintiff is representative of another.

### 3. Plaintiffs are dissimilar on alleged "experience" discrimination.

According to Plaintiffs, Google holds older candidates "to higher standards" than younger candidates and considers older applicants only for "higher level jobs." Opp. at 4:3-9. As an initial matter, Plaintiffs present no evidence that they are similarly situated with respect to the alleged practice of refusing to consider older candidates for lower-level jobs. *See id.* Nor do they have any response to Google's affirmative showing that [REDACTED] *See* Def. Br. 17:10-26.

Turning to Plaintiffs' assertion that Google holds older applicants to a higher standard (*see* Opp. 3:9), Plaintiffs misconstrue the record. First, every employer engages in the lawful practice of holding candidates for higher-level positions (e.g., manager and director positions) to higher standards than candidates for entry-level positions. So Plaintiffs' heavy reliance on Google documents that reflect these standards is misplaced. *See, e.g.,* Pls.' Comp. Ex. D (rows 1-3); Pls.' Comp. Ex. F (chart 1 (rows 1-10); chart 2 (generally)). Second, Plaintiffs suggest that the term "senior candidate" refers to a candidate's age rather than her level of experience. *Id.* Resolving this question requires an individualized inquiry into the facts of each comment. For instance, Plaintiffs cite [REDACTED]

---

[1] Google [REDACTED].

| | |
|---|---|
| 1 | ■ |
| 2 | ■ |
| 3 | ■ |
| 4 | ■ |
| 5 | ■ |
| 6 | ■ |
| 7 | ■ |

8   ■ The jury could draw no common conclusions from these statements.

9   Stripped of the conclusory rhetoric about "age" discrimination, Plaintiffs' claim is actually that Google holds candidates with more *experience* to a higher standard than it does candidates with less experience. Such "experience" discrimination does not constitute intentional age discrimination under the ADEA as a matter of law. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) ("[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 856 (9th Cir. 2000) (no age discrimination if based on factor "merely empirically correlated with age."); *Coleman v. Quaker Oats*, 232 F.3d 1271,1289 (9th Cir. 2000) (in absence of disparate-impact claim, court "will not second guess the selection criteria used by the employer").

Even if the ADEA recognized "experience" discrimination as a form of intentional age discrimination, which it does not, Plaintiffs are not similarly situated with respect to that "claim," either. Many of them—■ ■. As a result, even if the jury were to credit Plaintiffs' evidence that Google holds older candidates to a higher standard when they apply for lower-level positions, the jury could not infer age discrimination as to the large (but uncertain) number of Plaintiffs who were

1  ███████████████████████████  And Plaintiffs offer no evidence that Google holds older
2  candidates for senior positions to a higher standard than younger candidates for the same senior
3  positions—at most, their evidence addresses only candidates for lower-level positions. It would be
4  highly prejudicial for the Plaintiffs interested only in senior positions to benefit from an inference
5  of discrimination drawn from Plaintiffs' purportedly "common" evidence that Google holds senior
6  candidates for lower-level positions to a higher standard than younger candidates.

### 4. Speculation about age-estimating is not common evidence.

According to Plaintiffs, Google recruiters collected age-related information from Plaintiffs in order to "approximate their ages." Opp. 3:13-15. Here, too, Plaintiffs have no evidence that this practice actually exists, apart from Fillekes' disputed account of a telephone call with a recruiter *in 2010*, four years before the liability period began and after which Google repeatedly recruited her and invited her to onsite interviews. Def. Br. 19:4-8. Fillekes' testimony is not common evidence. Also, Plaintiffs rely heavily on the fact that a ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Nor are these claims susceptible to common proof. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. This all demonstrates that a highly individualized inquiry is required to assess whether this practice actually exists—which is a phase-one inquiry.

Plaintiffs also assert that they are similarly situated because "Google interviewers were *able* to approximate" their ages during onsite interviews. Opp. 2:26-27 (emphasis added). Of course, the

mere ability of an onsite interviewer to estimate a candidate's age, standing alone, is immaterial. What matters is that Plaintiffs have no evidence—much less common or representative evidence—that any of their ▮ onsite interviewers ***actually did*** approximate their ages, or used any alleged age-approximation as a basis for rejecting or downgrading a single Plaintiff (much less that age-approximation was "standard operating procedure"). In addition, ▮ of the 260 Plaintiffs progressed to the Hiring Committee stage after Google interviewers allegedly observed their station in life and discounted their interview evaluations accordingly. What is more, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which is yet another reason why these claims and Google's defenses could not be tried on a common or representative basis.

**5. Plaintiffs are dissimilar on technical interview questions.**

As Google has shown, some Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Def. Br. 11:24-15:7. Plaintiffs meet these material variations with silence and speculate that Google's use of technical interview questions discriminated against everyone. Opp. 4:15-18. As evidence, they ▮▮▮▮▮▮▮▮▮▮▮▮. This scarcely constitutes substantial common evidence, especially when Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮[2]

Plaintiffs also cite criticisms ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. Critically, Plaintiffs do not even attempt to show that any of their

---

[2] Plaintiffs fail to note that the ▮▮▮▮▮▮▮▮▮▮

1

2

3 ▮▮▮ *Id.*; Ex. 44 (Ong

Dep. 43:10-17). Nor do Plaintiffs offer any common or representative evidence to show that interviewers asked them "more difficult" interview questions than younger candidates. *See* Opp. 4:2-5. One reason they cannot adduce this evidence is that many interviewed for senior positions with different hiring standards. *See* § I.C.3, *supra*. Even so, they have no disparate-impact claim and offer no evidence that the technical questions were intended to discriminate because of age.

**6. Interview questions about experience varied, defeating similarity.**

Plaintiffs claim Google interviewers ignored their "real-world" experience even though Google purportedly values such experience in candidates. As an initial matter, their argument is predicated on a conflation of "real-world" experience (Plaintiffs' term) ▮▮▮ *Compare* Opp. 5:3-11, *with* Reply Decl. Ex. 86 ▮▮▮

Also, Plaintiffs do not cite a single interview record to support their claim that interviewers ignore work experience. They do not do so ▮▮▮

Nor does Plaintiffs' compilation of lawyer-drafted interrogatory responses constitute substantial evidence that they are similarly situated for trial. ▮▮▮, and Plaintiffs successfully opposed Google's request to take more than 35 depositions and ▮▮▮ Def. Br. 16:16-17:1; SE No. 33. Because some Plaintiffs ▮▮▮

[REDACTED] the phase-one evidence on this alleged practice alone would be voluminous and highly individualized.

### 7. The other alleged similarities are unsupported and insufficient.

Plaintiffs claim they sought positions with "similar and overlapping job responsibilities." Opp. 1:26-2:17. Their evidence, however, focuses only on generic similarities among the SWE, SRE, and SysEng job families. They offer no common evidence of material similarities between all the roles or across job levels. *Id.* The evidence shows (and common sense dictates) that lower-level engineers do not have the same job responsibilities as their managers and directors, [REDACTED] Berry Decl., Ex 44 (Ong Dep.54:9-14, 56:7-57:2). [REDACTED]

Nor is there merit to Plaintiffs' proclamation that these differences are "minor" and "immaterial." *See* Opp. 15:28-16:1. Even assuming arguendo that collective-action plaintiffs need not have sought the "same" position, they still must have been subject to a common discriminatory plan or policy. Plaintiffs here were not commonly subjected to any one of the five alleged practices they identify—let alone all of them. *See* Def. Br. 11:4-20:7. As a result, Plaintiffs' reliance on their authorities is misplaced. *Compare* Opp. 16:1-14, *with Rodolico*, 199 F.R.D. at 483 (single RIF executed on a single day against workers at a single plant); *Hipp.*, 252 F.3d at 1228 (concluding pattern-or-practice treatment was inappropriate due to individualized issues); *Wilkins v. Univ. of Houston*, 725 F. Supp. 331, 334 (S.D. Tex. 1989) (all nine job levels covered by a single "P&A Pay Plan" that covered the professional and administrative staff); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009) (explaining that courts often ***conditionally*** certify FLSA

actions with multiple job levels, in overtime case where "all technical support workers share a job description, [and] were uniformly classified as exempt."); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043 (2016) (Rule 23 and collective-action wage-and-hour case by workers at a single facility all paid under same compensation system).

Plaintiffs also argue they are similarly situated because they are among the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And qualifications vary for the many jobs and levels for which they applied.

Plaintiffs say Google evaluated them according to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Opp. 2:27. This is misleading in several respects. For one thing, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Here, too, Plaintiffs proffer no common evidence.

Finally, Plaintiffs claim they are similarly situated because Google uses a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ███████████████████████████—the antithesis of common proof.

2 Nor is this ████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ██████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ███████████████████████████████████████ Setting all this aside, the existence ██

9 █████████████████████████████████████████████████████

10 ███████████████████████████ myriad hiring standards for different jobs and levels. To illustrate, there is no reason to think a student who receives a B+ in a 9th grade Geometry class has demonstrated the same skills as a student who receives a B+ in a 12th grade Physics class, even though they received the same "standardized" grade.

### D. Even if Credited, Plaintiffs' Statistical Evidence Does Not Defeat Decertification.

Submitting an expert report on the merits does not evade decertification. *Koren*, 2003 WL 1572002, at *16 ("statistical evidence does not address the similarly situated requirement."); *accord Lusardi*, 118 F.R.D. at 376 n .41); *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1219 (5th Cir. 1995). *Koren* is instructive. Although the court credited the plaintiffs' statistical evidence on the merits and therefore denied the defendant's motion for summary judgment, it ***decertified*** the collective action because the plaintiffs "worked at different jobs in different business units located at different locations" and the hiring decisions were "decentralized" and involved "multiple decisionmakers." *Koren*, 2003 WL 1572002, at *16. Plaintiffs have no response to *Koren*, and their attempt to distinguish *Lusardi* fails. *Compare* Opp. 13:12-20 (arguing *Lusardi* was based on "insufficient" evidence), *with Lusardi*, 118 F.R.D. at 376 (plaintiffs' statistical data and expert opinions "does not address the similarly situated requirement.").

Here, Plaintiffs argue that their expert's statistical evidence defeats decertification. Opp. 5, 7, 15. But even assuming *Teamsters* applies in ADEA cases—and it does not post-*Gross* (*see* Def. Br. 24:15-28)—Plaintiffs' statistical evidence on the merits does not satisfy § 216(b) or provide "glue"

1  binding Plaintiff's individual claims together for trial. *See Lusardi*, 118 F.R.D. at 376 n.41; *Koren*,
2  2003 WL 1572002, at *16. Although Dr. Neumark opines ▮

3  ▮
4  ▮
5  ▮
6  ▮
7  ▮
8  ▮
9  ▮ *E.g., Rodolico*, 199 F.R.D. at 479
10 (statistical evidence showing effects of a single RIF on older and younger employees); *Wilkins*, 725
11 F. Supp. at 334 (statistical evidence showing pay inequities under single "P&A Pay Plan"). So even
12 if credited Dr. Neumark's opinion provides no support for Plaintiffs' claim that they are similarly
13 situated for trial on their highly individualized claims.

### E. All Other Factors Support Decertification of Plaintiffs' Dissimilar, Conflicting Claims.

Turning to the second and third *Leuthold* factors, Plaintiffs argue that the prospect of individual defenses "standing alone" does not defeat a collective action in a *Teamsters* case, and that individualized defenses could be deferred to phase two. Opp. 17:13-14. But as explained above, the *Teamsters* framework does not cure the absence of similarly situated plaintiffs. Given the wide variety of allegedly discriminatory practices asserted and Plaintiffs' dissimilarity as to each, Google has many defenses that would need to be tried in any phase-one trial. *See* § I.C, *supra*. What is more, the evidence on these defenses is highly individualized. All these considerations underscore why Plaintiffs' claims are not suited for a *Teamsters* trial. Also, Google is entitled to present its legitimate, non-discriminatory reasons for not hiring each Plaintiff and its mitigation defenses. Both are unique to each Plaintiff. The specter of 260 mini-trials involving precious little common proof is a proper consideration on a motion for decertification. *Lusardi*, 118 F.R.D. at 379; *Beauperthuy*, 772 F. Supp. 2d at 1127–28.

Another important consideration is the difference between the substantive law of the ADEA and that of Title VII, which, unlike the ADEA, expressly authorizes pattern-or-practice claims.

Although plaintiffs in Title VII cases can prevail on a "mixed motives" theory, plaintiffs in an ADEA case cannot. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009) (clarifying that "but for" causation is the standard under the ADEA); *accord Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012). Thus, even if the Court were to use the *Teamsters* framework, it could not issue an injunction or grant any declaratory relief if Plaintiffs were to prevail at phase one. *See id*. If it were otherwise, the Court could enjoin conduct without adjudicating whether Google actually violated the ADEA, in contravention of the Rules Enabling Act. *See* 28 U.S.C. § 2072 ("rules of practice and procedure and rules of evidence…shall not abridge, enlarge or modify any substantive right."). So Plaintiffs' claims about seeking injunctive or declaratory relief miss the mark. *See* Opp. 19:2-3.

Yet another due process consideration is that Plaintiffs' claims are not only dissimilar, they also conflict. For example, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Def. Br. 11:4-20:7. No reasonable jury could be expected to keep individual Plaintiffs straight or draw non-prejudicial inferences from such evidence. The result would be a madcap trial that would prejudice not only Google but also the individual Plaintiffs whose claims would be undercut by the testimony of their co-Plaintiffs. Last, because the ADEA has a fee-shifting provision and each Plaintiff's case could have substantial value, no Plaintiff would be deterred from filing a separate case after decertification.

## II. CONCLUSION

When Google decided not to hire each of the 260 Plaintiffs for one of many jobs at many levels in three different job families, each was at least 40 years old and each now claims intentional discrimination was the root cause. That is all they have in common. Because the material facts, claims, defenses, and evidence are unique to each Plaintiff, resolving whether one Plaintiff was a victim of intentional discrimination does not resolve this question for any other Plaintiff. Nor does it create an inference of discrimination applicable to any other. Because Plaintiffs are dissimilarly situated, the Court should decertify this action.

| | | |
|---|---|---|
| DATED: June 12, 2018 | | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. |
| | By: | /s/ *Brian D. Berry* |
| | | Thomas M. McInerney |
| | | A. Craig Cleland |
| | | Elizabeth A. Falcone |
| | | Brian D. Berry |
| | | Lisa M. Bowman |
| | | Attorneys for Defendant GOOGLE LLC |