Thomas M. McInerney, CA Bar No. 162055
tmm@ogletree.com
Brian D. Berry, CA Bar No. 229893
brian.berry@ogletree.com
Lisa M. Bowman, CA Bar No. 253843
lisa.bowman@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA 94105
Telephone: 415.442.4810
Facsimile: 415.442.4870

A. Craig Cleland, *pro hac vice*
craig.cleland@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree St., NE., Suite 4800
Atlanta, GA 30303
Telephone: 404.881.1300
Facsimile: 404.870.1732

Elizabeth A. Falcone, CA Bar No. 219084
elizabeth.falcone@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR 97201
Telephone: 503.552.2166
Facsimile: 503.224.4518

Attorneys for Defendant GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT HEATH, on behalf of himself, and CHERYL FILLEKES, on behalf of herself and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, a Delaware limited liability company, <br><br> Defendant. | Case No. 5:15-cv-01824-BLF <br><br> **DEFENDANT GOOGLE LLC'S MOTION FOR LEAVE FOR RECONSIDERATION OF ORDER DENYING MOTION FOR DECERTIFICATION** <br><br> Dept.: Courtroom 3 <br> Judge: Hon. Beth Labson Freeman <br><br> Complaint Filed: April 22, 2015 <br> Trial Date: April 1, 2019 |

**NOTICE OF MOTION AND MOTION FOR LEAVE FOR RECONSIDERATION**

Please take notice that Defendant Google LLC ("Google") hereby moves this Court for an order granting leave for Google to file a motion for reconsideration of the Court's Order Denying Google's Motion for Decertification (ECF 337). The grounds for Google's motion for leave to file a motion for reconsideration are that new material facts have emerged that warrant reconsideration, and that the Court's order denying decertification failed to consider material facts and dispositive legal arguments. Fed. R. Civ. P. 54(b); Local Rule 7-9.

This motion is based on this Notice of Motion and Motion, the Memorandum of Law in support thereof, the Declaration of Brian D. Berry and exhibits attached thereto, all filed concurrently herewith, the pleadings on file in this action, and such arguments and admissible evidence as may be presented at the time of hearing.

DATED: September 7, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:   /s/ *Brian D. Berry*
Thomas M. McInerney
A. Craig Cleland
Elizabeth A. Falcone
Brian D. Berry
Lisa M. Bowman

Attorneys for Defendant
GOOGLE LLC

# TABLE OF CONTENTS

I.   LEGAL STANDARD FOR MOTIONS FOR RECONSIDERATION ................................ 1

II.  LEAVE IS PROPER BECAUSE GOOGLE HAS BEEN REASONABLY DILIGENT. ............................................................................................................................ 2

III. RECONSIDERATION IS WARRANTED BECAUSE NEW MATERIAL FACTS EMERGED IN PLAINTIFFS' POST-HEARING EXPERT REPORT. ................................................................................................................................ 2

    A.   Plaintiffs' July 2018 expert report retreated from the standard deviations the Court relied on in its Order. ................................................ 2

    B.   Plaintiffs' July 2018 expert report contradicts their allegations about Googleyness. ............................................................................................ 6

IV.  RECONSIDERATION IS WARRANTED FOR FAILURE TO CONSIDER MATERIAL FACTS AND DISPOSITIVE LEGAL ARGUMENTS. .................................. 7

    A.   No evidence shows each Plaintiff was subjected to the same discriminatory practices. ........................................................................... 7

    B.   There is no record evidence of an "umbrella policy" or "discriminatory scheme." ....................................................................... 8

    C.   The Order found a pattern-or-practice, then found Plaintiffs were similarly situated. ................................................................................... 9

    D.   The Order disallows proof of Google's hiring process and criteria at Phase One. ............................................................................................... 10

V.   CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City of Los Angeles v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001) ...................................................................................................1

*Fresh & Best Produce, Inc. v. Oaktown Ventures, LLC*,
   2017 WL 3007079 (N.D. Cal. July 14, 2017) .........................................................................2

*Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*,
   694 F.2d 531 (9th Cir. 1982) ...................................................................................................3

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009) .................................................................................................................7

*Hazelwood Sch. Dist. v. U.S.*,
   433 U.S. 299 (1977) .................................................................................................................3

*Int'l Bhd. of Teamsters v. U.S.*,
   431 U.S. 324 (1977) ......................................................................................................5, 9, 10

*McDowell v. Calderon*,
   197 F.3d 1253 (9th Cir. 1999) .................................................................................................1

*Pottenger v. Potlatch Corp.*,
   329 F.3d 740 (9th Cir. 2003) ...................................................................................................3

*Radue v. Kimberly-Clark Corp.*,
   219 F.3d 612 (7th Cir. 2000) ...................................................................................................7

*Rudebusch v. Hughes*,
   313 F.3d 506 (9th Cir. 2002) ...................................................................................................3

*Sch. Dist. No. 1J Multnomah Cnty. v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993) .....................................................................................................2

*Sheehan v. Daily Racing Form*,
   104 F.3d 940 (7th Cir.1997) ....................................................................................................3

*Shelley v. Geren*,
   666 F.3d 599 (9th Cir. 2012) ...................................................................................................7

**STATUTES**

29 U.S.C. § 216(b) ..........................................................................................................................6, 9

ADEA ..................................................................................................................................................7

Title VII ................................................................................................................................3

**OTHER AUTHORITIES**

Local Rules

    Rule 7-9(a) ............................................................................................................................2
    Rule 7-9(b) ............................................................................................................................1
    Rule 7-9(b)(2) .......................................................................................................................2
    Rule 7-9(b)(3) .......................................................................................................................7
    Rule 7-9 ................................................................................................................................1
    Rule 54(b) ............................................................................................................................1

1  On August 1st, the Court issued its Order denying Defendant Google Inc.'s Motion for
2  Decertification, which, with redactions, was entered on August 20th. Order, ECF 337. Respectfully,
3  Google now seeks leave to file a motion for reconsideration of this Order on two grounds: (i) the
4  emergence of new material facts occurring after the Order; and (ii) the failure to consider material
5  facts or dispositive legal arguments presented to the Court. L.R. 7-9(b). The new facts that have
6  emerged since the Court's Order that merit leave for reconsideration are two. After the Court's
7  Order, Plaintiffs' expert submitted an expert report that: (i) materially changed his opinions and
8  confirmed that the claimed ■ standard deviations the Court relied on are not correct; and (ii) now
9  finds no statistically significant disparity in Googleyness scores. Leave for reconsideration is also
10 proper because the Court's Order denying decertification did not consider material facts or
11 dispositive legal arguments: (i) no evidence shows each Plaintiff was subjected to the same
12 discriminatory practices; (ii) there is no record evidence of an "umbrella policy" or "discriminatory
13 scheme"; (iii) the Order found a pattern-or-practice, then found Plaintiffs were similarly situated;
14 and (iv) the Order disallows proof of Google's hiring process and criteria at Phase One. By seeking
15 leave on these grounds, Google does not waive any other objections it has.

16 **I.  LEGAL STANDARD FOR MOTIONS FOR RECONSIDERATION**

17 Rule 54(b) and Local Rule 7-9 govern motions for reconsideration. Under Rule 54(b), "any
18 order … that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the
19 parties … *may be revised at any time before the entry of a judgment*." Fed. R. Civ. Proc. 54(b)
20 (emphasis added). Motions for reconsideration are not favored, *McDowell v. Calderon*, 197 F.3d
21 1253, 1254 (9th Cir. 1999)(per curiam), but are permitted when appropriate. Rule 54(b) gives the
22 Court the power, discretion, and flexibility to reconsider, set aside, or amend a decision for any
23 reason it deems sufficient at any time before the entry of judgment. *City of Los Angeles v. Santa*
24 *Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001). Local Rule 7-9 requires a party to obtain
25 leave of Court and "show reasonable diligence" before bringing the motion. L.R. 7-9(b). Leave for
26 reconsideration is proper for any of three reasons: (i) a material difference in fact or law exists from
27 what was presented to the Court; (ii) new facts emerged or a change in law occurred after the order;
28 or (iii) there was a manifest failure to consider material facts or dispositive legal arguments. *Id.*

1  (b)(1)–(3); *Fresh & Best Produce, Inc. v. Oaktown Ventures, LLC,* 2017 WL 3007079, *2 (N.D.
2  Cal. July 14, 2017). "There may also be other, highly unusual circumstances warranting
3  reconsideration." *Sch. Dist. No. 1J Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.
4  1993).

## II. LEAVE IS PROPER BECAUSE GOOGLE HAS BEEN REASONABLY DILIGENT.

Google has been "reasonably diligent" and so has complied with this requirement of Local Rule 7-9(a). One week after the decertification hearing, on July 19th, Plaintiffs served on Google their expert report on the merits. *See* Berry Decl. ¶ 2, Ex. 3 (7/19/18 Neumark Report). The subject matter of this July 2018 expert report is complex statistical analysis. So Google had to consult with its own expert in order to analyze and understand the report. *Id.* It deferred that substantial cost until the Court issued its Order denying decertification on August 1st. *Id.* Since then, Google has been analyzing Plaintiff's July 2018 expert report; preparing proposed redactions to the Order; preparing its summary judgment motion, which dovetails with this Motion; preparing joint discovery letters; responding to and completing discovery; and participating in meet-and-confers and settlement negotiations with opposing counsel. This constitutes reasonable diligence under the circumstances.

## III. RECONSIDERATION IS WARRANTED BECAUSE NEW MATERIAL FACTS EMERGED IN PLAINTIFFS' POST-HEARING EXPERT REPORT.

Reconsideration of the Court's Order denying decertification is warranted upon the "emergence of new material facts … occurring after the time of such order." L.R. 7-9(b)(2). First, the Order on decertification relied on Plaintiffs' expert's claimed ▇ standard deviations, but one week after the hearing, Plaintiffs' expert, Dr. Neumark, submitted an expert report on the merits that materially changed his opinions and confirmed these standard deviations are incorrect. Second, this same expert report contradicts their claims about Googleyness. These require leave for reconsideration.

### A. Plaintiffs' July 2018 expert report retreated from the standard deviations the Court relied on in its Order.

The first ground warranting reconsideration of the Court's Order denying decertification is new facts that emerged after the Order. Initially, the Order's finding that Plaintiffs (including the Opt-Ins) are "similarly subject to Google's hiring practices that favored younger workers" is

1  indisputably based on Dr. Neumark's ▮ standard deviations. Order 22.3-23.12, 2.19-22, ECF 337.
2  And, in fact, his ***March 2018 report***—the report available to the Court and Google on
3  decertification briefing and at the hearing—did report that ▮ of younger candidates received
4  offers compared to ▮ of older candidates and that this amounted to ▮ standard deviations.
5  *See* Berry Decl., Ex. 1 (3/5/18 Neumark Report) ¶ 36). Plaintiffs touted these at decertification, Hrg.
6  Tr. 36-40, ECF 360, but standard deviations like these are where the analysis starts, not where it
7  ends. As Dr. Neumark explains, the economist "*must* explore whether there are *other, non-*
8  *discriminatory explanations for the disparity.*" *Id.* ¶ 6 (emphasis added). Courts agree. *E.g.,*
9  *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003) (statistical analysis insufficient to
10 raise triable issue where expert did not examine factors other than age and whether employee was
11 fired); *accord Sheehan v. Daily Racing Form*, 104 F.3d 940, 942 (7th Cir.1997).

12  Regardless, in his ***July 2018 report***, which was timely served one week *after* the decertification
13 hearing, Dr. Neumark opined for the first time that there are only ▮ standard deviations between
14 older and younger candidates—a figure this Circuit consistently holds does not support an inference
15 of intentional discrimination. Ex. 3 (7/19/18 Neumark Report ¶ 21-22). *See Hazelwood Sch. Dist. v.*
16 *U.S*., 433 U.S. 299, 309 (1977) ("general rule" of two or three standard deviations for statistical
17 significance); *Rudebusch v. Hughes*, 313 F.3d 506, 515 (9th Cir. 2002) ("in the Title VII context, we
18 rejected the proposition that standard deviations of 1.3 and 2.46 were sufficiently representative, at
19 least on their own, to make an inference of discrimination"); *Gay v. Waiters' & Dairy Lunchmen's*
20 *Union, Local No. 30*, 694 F.2d 531, 551 (9th Cir. 1982) ("courts should be extremely cautious of
21 drawing any inferences from standard deviations in the range of 1 to 3"). Why the sudden change?

22  To explain, in his first report (Mar. 2018), Dr. Neumark tried to "control" (*i.e.*, adjust) for
23 factors such as job code, experience, and education. Then, he conducted his analyses using two
24 statistical models: a linear probability model ("LPM") and a probit probability model ("probit
25 model"). *See* Berry Decl., Ex. 1 (3/5/18 Neumark Report ¶ 39, n. 20; *Id.*, Appx. C ¶ 2, n.44). In
26 rebuttal, Google's expert, Dr. Johnson, said that Dr. Neumark had failed to control for obvious age-
27 neutral factors that might affect his observed disparity of ▮ standard deviations. So, in his second
28 report (July 2018), Dr. Neumark did control for additional factors, adding them *to his LPM analysis*.

1  The result was only ■ standard deviations. *Id.*, Ex. 3 (7/19/18 Neumark Report ¶ 21-22). So what

2  are the standard deviations using the probit model?

3  Although Dr. Neumark used both the LPM and the probit models in his March 2018 report, he

4  used only the LPM in his July 2018 report. *See* Berry Decl., Ex. 4 (8/16/18 Johnson Report) ¶ 11-

5  13). Why? Because the resulting standard deviations from the probit model are even less favorable

6  for Plaintiffs. As Google's expert, Dr. Johnson, found, even using Dr. Neumark's flawed dataset and

7  his controls, "there are ***no statistically significant age disparities in the offer rates***" between older

8  and younger applicants when the probit model is used. *Id.* (emphasis added). Put differently,

9  Dr. Neumark's new report no longer supports the ■ standard deviations the Order relied upon.

10  Plaintiffs will argue that at bottom this is a "battle of the experts" over which model—LPM or

11  probit model—is correct. This is a red herring. For one thing, Dr. Neumark himself ***endorsed*** the

12  probit model in his March 2018 report. *See* Berry Decl., Ex. 1 (3/5/18 Neumark Report) ¶ 16 n.6

13  (applying probit model); *id.* ¶ 39 n.20 (comparing results of LPM and probit models); *id.* ¶ 26, Table

14  1 ("Predicted probabilities are calculated from the probit model"); *id.* ¶ 66, Table A16 ("Probit

15  Model Estimates"). He deserted the probit model in his July 2018 report because it showed no

16  statistically significant age disparity. *Id.* Ex. 4 (8/16/18 Johnson Report ¶¶ 10-11).

17  Economists generally agree that the LPM is inferior to the probit model when analyzing data for

18  binary decisions, i.e., those in which there are only two choices (here, to make a job offer or not).

19  *See* Berry Decl., Ex. 4 (8/16/18 Johnson Report) ¶ 10 n.13 (explaining that "deficiencies of the

20  [linear] model are well understood in economic literature"); *id.* Appx. D. The LPM has two key

21  flaws. First, it is less accurate than the probit model because it nonsensically predicts probabilities

22  below 0% and above 100%, even though the variable (anything that can be measured such as age or

23  years of experience) cannot be outside either of these in reality. *See* Berry Decl., Ex. 4 (8/16/18

24  Johnson Report). Dr. Neumark's own analysis is a good example of this problem. His LPM analysis

25  predicts that ■ of onsite interviewees have either a less-than-0% or a more-than-100% chance of

26  receiving an offer. This is illogical. *Id.* Appx. D. ¶¶ 11-13.

27  The LPM's second flaw is that it always assumes the effect of a variable (a factor like age or

28

1  experience) is constant and does not change, an assumption that is plainly not true.[1] *See* Berry Decl.,
2  Ex. 4 (8/16/18 Johnson Report) ¶ 10. Speaking graphically, the LPM crams all data points onto a
3  straight line, even if the data points fall naturally on a curve. For example, Dr. Neumark's LPM
4  analysis assumes that if your onsite-interview scores (here, a scale of 1.0–4.0) increase by 1/10th,
5  the effect of this increase is constant. But a 1/10th increase is not constant. As a probit model
6  shows—correctly—if your average interview score is in the ▇ range, increasing your score by
7  1/10th increases the chance of an offer by only ▇ %. But if your average interview score is in the
8  ▇ range, increasing your score by 1/10th increases your chance of an offer by about ▇ %. *Id.* ¶
9  10 n.13; *id.* Appx. D. ¶¶ 9-10. How is this so? Because an average interview score in the ▇
10 range is already a strong predictor you'll get an offer, so a 1/10th increase doesn't substantially
11 affect whether you will. By contrast, a score in the ▇ range is borderline, so a 1/10th increase
12 makes a bigger difference in whether you'll get an offer. *Id.* The LPM is not sensitive to these
13 nonlinear differences and introduces error by treating them all the same. But the probit model *is*
14 sensitive to them, overcoming the LPM's limitations. *Id.* ¶ 10 n. 13.
15     So there is no battle of the experts. Instead, the question comes down to this: Should the Court
16 grant leave to reconsider when one of the primary bases for the Court's decision was Dr. Neumark's
17 ▇ standard deviations now that new facts came to light after the hearing? Specifically, neither Dr.
18 Neumark's July 2018 LPM analysis nor Dr. Johnson's probit model analysis using the same data
19 shows any statistical significance, and Dr. Neumark endorsed the probit model in this case. Google
20 respectfully submits that leave for reconsideration is proper. As the Court said, "a statistical
21 disparity that can be put forth by an expert is not a free ride to certification … because you can find
22 an expert to say anything." Hrg. Tr. 6:9-12, ECF 360.  *See Int'l Bhd. of Teamsters v. U.S.*, 431 U.S.
23 324, 339-40 (1977) (cautioning that statistics are "are not irrefutable; they come in infinite variety
24 and, like any other kind of evidence, they may be rebutted. In short, their usefulness depends on all

---

[1] For example, a 100-point increase in your SAT score does affect your getting into college if your score is 1,000. But if your score is 400 or already high enough to get in, it has no effect. The LPM cannot account for this variable's (100-point increase) different effects, but the probit model can.

of the surrounding facts and circumstances."). Plaintiffs' new, post-hearing statistics do not provide the missing "glue" § 216(b) requires. 29 U.S.C. § 216(b).

### B. Plaintiffs' July 2018 expert report contradicts their allegations about Googleyness.

The second ground for granting leave to reconsider the Order denying decertification on the basis of new facts is also related to Dr. Neumark's July 2018 expert report. Plaintiffs argue that Googleyness or culture fit are euphemisms for youth and Google interviewers use these to intentionally discriminate on the basis of age. SAC ¶¶ 19, 27. On decertification, Google showed Plaintiffs' anecdotal evidence that Googleyness is code for youth is quantitatively and qualitatively lacking. The *only* evidence they offered, after three-plus years of discovery, is a handful of alleged recruiters' comments to Plaintiffs that they were rejected because of Googleyness or culture fit, which are facially neutral remarks. At the hearing, the Court expressed concern that Plaintiffs had no actual evidence that Googleyness is tied to youth. *See* ECF 360 28.14-17 ("I'm not seeing any evidence that cultural fit was designed in any way to eliminate older people …. It's just [counsel's] inference and it's attorney argument."). Dr. Neumark's July 2018 expert report directly contradicts Plaintiffs' claim. For the first time, he analyzed two dimensions of Googleyness: ████████ ████████████████████████████ *Id.,* Ex. 3 (7/19/18 Neumark Report, Table 1). His results yielded standard deviations of only ████████, respectively, far below statistical significance. *Id.*; Ex. 4 (8/16/18 Johnson Report ¶ 24). So Plaintiffs' *own evidence* shows Googleyness is not a proxy for age. This merits reconsideration.

Responding, Dr. Neumark opines that Google's hiring process is still "consistent" with age discrimination because the hiring criteria *he included* in his analysis (*e.g.*, overall interview scores and rubric ratings) show a statistically significant disparity between older and younger candidates—even though his LPM and Dr. Johnson's probit analyses show no statistical disparity. *See supra* at pp. 4-5; Ex. 3 (7/19/18 Neumark Report ¶¶ 13-16). These statistics do not show that Google was less likely to make an offer to older candidates with equivalent or higher interview scores or rubric ratings than to younger candidates with comparable scores and ratings. Rather, they show only that the observed disparities are driven by facially age-neutral practices of using technical interview questions to assess job qualifications. *Id.* This is not sufficient to carry the day for Plaintiffs.

1    Indeed, each Plaintiff must prove that intentional age discrimination is the "but for" cause for not
2    being hired. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009); *accord Shelley v. Geren*,
3    666 F.3d 599, 607 (9th Cir. 2012). And each Plaintiff's age must have "actually played a role in [the
4    decision] and had a determinative influence on the outcome." 557 U.S. at 176. So Plaintiffs' now-
5    unwound statistics—which show the real driver for offers is interview scores—cannot suffice. "Because
6    the occurrence of adverse employment actions may correlate to older employees for reasons other than
7    intentional discrimination, causation is suggested only when the other variables are shown to be
8    insignificant." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616-617 (7th Cir. 2000), *overruled on
9    other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Here, the primary
10   variable is interview scores, a legitimate, nondiscriminatory reason for making hiring decisions.

## IV. RECONSIDERATION IS WARRANTED FOR FAILURE TO CONSIDER MATERIAL FACTS AND DISPOSITIVE LEGAL ARGUMENTS.

Last, leave for reconsideration is warranted because the Court's Order failed to consider
"material facts or dispositive legal arguments which were presented to the Court." L.R. 7-9(b)(3).

### A.   No evidence shows each Plaintiff was subjected to the same discriminatory practices.

First, there is no record evidence that each Plaintiff was subjected to and challenges the same
five allegedly discriminatory practices. Discussing the first *Leuthold* factor, the Order says that "the
mere fact that each Plaintiff alleges a violation of the ADEA is insufficient to bind Plaintiffs
together." Order 18.10-12, ECF 337. It then draws the erroneous conclusion that Plaintiffs are
similarly situated because "*each … was subject to and challenges* the same five allegedly
discriminatory aspects of Google's hiring process." *Id*. 18:12-14; *see id.* 18:17-21 ("Plaintiffs have
put forth substantial evidence that *each candidate was subject to a hiring process* that permitted
interviewers to approximate their age, emphasized abstract theoretical questions, discounted real-
world experience, used higher standards for older applicants, and emphasized 'Googleyness' or
culture fit."); *id.* 20:13-15 ("Plaintiffs here have demonstrated substantial evidence of a hiring plan
with five components *affecting all of them*."); *id.* 234:2-3 (suggesting Plaintiffs made a "substantial
showing that *they were similarly subject to* Google's common hiring practice**.**").

But Plaintiffs, who bore the burden of proof, did not submit *any evidence*, let alone substantial

evidence, that each of the 260 Opt-Ins was subject to all *or even one* of these alleged practices, much less all 260 were subject to *all* of them. Even considering just the 34 Opt-Ins whom Google has deposed, Google's unrebutted evidence shows there is wide variation among these on who was subject to an alleged practice and who was not. For instance, Google submitted Opt-Ins' deposition admissions that interviewers did *not* ask them technical and abstract interview questions, that interviews focused on their professional experiences, and that they *agreed it was appropriate* to hold them to higher standards than entry-level applicants because they only wanted higher-level jobs (by comparison to less-experienced candidates who applied for lower-level jobs). Google also submitted unrebutted interview records showing that interviewers treated various Opt-Ins' professional experience as a plus and gave them positive Googleyness or culture fit scores.

### B. There is no record evidence of an "umbrella policy" or "discriminatory scheme."

Second, no record evidence exists of any Google "umbrella hiring policy" or "allegedly discriminatory scheme." Neither is there any evidence that any Google hiring policy had its genesis in intentional age discrimination. Even so, the Order concludes Google's argument on the first *Leuthold* factor is "flawed" because it assumes Plaintiffs are not proceeding on five separate theories of discrimination. It then states Plaintiffs "premise their disparate treatment theory on Google's *overarching 'umbrella' hiring policy* that encompass at least five different components that combine to intentionally discriminate against older workers." Order 19:21-23, ECF 337 (emphasis added); *id.* 20.13-14 ("the Court finds that Plaintiffs here have still demonstrated substantial evidence of a *common hiring plan with five components*") (emphasis added); *id*. 20:2-3 ("there is substantial evidence that Plaintiffs' experience were similar because they were all subject to the *same allegedly discriminatory scheme*.") (emphasis added).

There is no record evidence of—and Plaintiffs do not identify—any "umbrella policy" or "discriminatory scheme" to which they were all subjected. After three-plus years of discovery, the SAC and Plaintiffs' Opposition identify only these five alleged practices, but never any overarching policy or practice that somehow binds the five together. ECF 258 at 3:10-7:8. The Order finds this missing "glue" by invoking the existence of an "overarching 'umbrella' hiring policy" that is itself not identified, named, described, or supported *by any record evidence*. Nor did Plaintiffs argue such

an overarching, umbrella policy exists, much less offer substantial evidence it exists. Instead, they argued that the overarching policy is age-discrimination in hiring (ECF 258 at 14:4-7 ("Here, the class is limited to those challenging the same 'employment practice'—age discrimination in hiring.")), which is "insufficient to bind Plaintiffs together." Order 18.10-12, ECF 337.

What is more, the fundamental flaw is that Plaintiffs were not subjected to any "discriminatory scheme," but merely participated in the same neutral hiring process that workers the world over experience at millions of companies where they hope to work: submitting a resume/application form, speaking to a recruiter, interviewing in-person, and having their candidacy evaluated. *See* ECF 337 at 21.3.5 ("these interviewers served to implement Google's standardized hiring process and criteria that resulted in the decision not to hire Plaintiffs"). That Google has a multi-step, consensus-based hiring process (rather than haphazardly evaluating each candidate differently) cannot be the glue that renders Plaintiffs similarly-situated. If it were, every disparate-impact case against an employer with any hiring structure would be a disparate-treatment case under *Teamsters*.

### C.  The Order found a pattern-or-practice, then found Plaintiffs were similarly situated.

Third, the Order found that there was substantial evidence of a pattern-or-practice of intentional discrimination and only then found Plaintiffs were similarly situated. This was legal error. The Order states that "the Court's analysis ***centers on*** Plaintiff's evidence that ***there was such a pattern-or-practice such that*** Plaintiffs are similarly situated." Order 18:15-16, ECF 337 (emphasis added). This gets the § 216(b) analysis backwards. Whether a pattern-or-practice of discrimination exists— *i.e.*, is intentional discrimination is Google's "standard operating procedure"—is the ultimate merits question at Phase One in a *Teamsters* case. But on decertification, drawing any conclusions about whether a pattern-or-practice exists as *a predicate to* deciding whether plaintiffs are similarly situated is improper. But that is what the Order does. *Id.; id.* 23:8-9 (finding Plaintiffs' statistics, which do not address or evidence existence of *any* of five alleged practices, "support Plaintiffs' assertion that they were similarly subject to Google's overarching hiring practices that favored younger applicants."). Rather than identifying, for example, an actual "umbrella policy" and asking the Court to decide whether they were similarly situated as to such a policy, Plaintiffs invited the Court to err by urging it to look to the fundamental merits question—*i.e.*, did they all experience age

discrimination?—rather than deciding first if Plaintiffs are similarly situated in the first place.

At the hearing, Plaintiffs made an unabashed merits argument on their statistics, urging the Court to infer intentional discrimination, then to decline to decertify for that reason. *See* Hrg. Tr. 36:20-23, ECF 360 ("[L]ook at the standard deviations, when you walk through Google's campus, and you see it's just 20 and early 30-year-olds, … that doesn't happen by happenstance."), 37.3-4 ("[T]hat is a crazy disparity in statistics."), 38.10-12 ("[P]lease focus on the statistics."), 39.8-16 ("[P]lease don't discount the statistics…. When you walk in their cafeteria and you see all these 20, 30-year-olds, … It's yielding such a disparity statistically, that … we have to infer that Google knows exactly what's happening."), 40.4-6 ("[S]tatistics matter and standard deviations matter."). Thus, the Order improperly relied on how Google's workforce appears when walking around its campus and on its purported workforce composition. *See* ECF 337; Hrg. Tr. 28:8-9, ECF 360.

**D.   The Order disallows proof of Google's hiring process and criteria at Phase One.**

Similarly, Plaintiffs encouraged the Court to draw erroneous conclusions about the facts and evidence at issue in Phase One of a *Teamsters* trial. So the Court concluded that "[n]one of the defenses cited by Google are relevant to the liability inquiry at phase one," Order 25:11-12, ECF 377, including whether Google's technical interview questions are *valid hiring criteria* (*id.* 24:21-22). This is error. In an intentional discrimination case, Google must be permitted to defend its hiring criteria as legitimate and nondiscriminatory during Phase One. As the Court properly recognizes elsewhere, this is not a disparate-impact case. The jury—who in a Phase One Teamsters trial must decide whether intentional age discrimination in hiring is Google's "standard operating procedure"—must be allowed to hear evidence that Google's hiring process and criteria are not intended to discriminate against older candidates, but have legitimate, nondiscriminatory purposes.

**V.   CONCLUSION**

For these reasons, Google ask the Court to grant leave to reconsider its August 1st Order.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED:  September 7, 2018 | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. |
| 3 | | |
| 4 | | By:   /s/ *Brian D. Berry*  <br>       Thomas M. McInerney <br>       A. Craig Cleland |
| 5 | | Elizabeth A. Falcone <br> Brian D. Berry |
| 6 | | Lisa M. Bowman |
| 7 | | Attorneys for Defendant <br> GOOGLE LLC |