1  Thomas M. McInerney, CA Bar No. 162055
   tmm@ogletree.com
2  Brian D. Berry, CA Bar No. 229893
   brian.berry@ogletree.com
3  Lisa M. Bowman, CA Bar No. 253843
   lisa.bowman@ogletree.com
4  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   Steuart Tower, Suite 1300
5  One Market Plaza
   San Francisco, CA  94105
6  Telephone:    415.442.4810
   Facsimile:    415.442.4870
7
   A. Craig Cleland, *pro hac vice*
8  craig.cleland@ogletree.com
   OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
9  191 Peachtree St., NE., Suite 4800
   Atlanta, GA 30303
10 Telephone:    404.881.1300
   Facsimile:    404.870.1732
11
   Elizabeth A. Falcone, CA Bar No. 219084
12 elizabeth.falcone@ogletree.com
   OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
13 The KOIN Center
   222 SW Columbia Street, Suite 1500
14 Portland, OR  97201
   Telephone:    503.552.2166
15 Facsimile:    503.224.4518

16 Attorneys for Defendant
   GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HEATH, on behalf of himself,<br><br>and<br><br>CHERYL FILLEKES, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 5:15-cv-01824-BLF<br><br>**DEFENDANT GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS OF PLAINTIFF ROBERT HEATH**<br><br>Date:   December 20, 2018<br>Time:   9:00 a.m.<br>Dept.:  Courtroom 3<br>Judge:  Hon. Beth Labson Freeman<br><br>Complaint Filed: April 22, 2015<br>Trial Date:          April 1, 2019 |

# NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on December 20, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 3, 5th Floor of the above-titled court, located at 280 South 1st Street, San Jose, California, 95113, Defendant Google LLC ("Google") will, and hereby does, move this Court for an order granting summary judgment in Google's favor against Plaintiff Robert Heath.

The grounds for Google's summary judgment motion are that Google has shown there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). As the moving party, Google has met its burden of showing the absence of evidence to support Heath's *prima facie* claims of age discrimination under the Fair Employment and Housing Act and/or the Age Discrimination in Employment Act, nor any material dispute of fact sufficient to create a triable issue of age discrimination under either law. Google is entitled to summary judgment because Heath lacks evidence sufficient to create a genuine issue of material fact on these claims. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986).

Google's Motion for Summary Judgment is based on this Notice of Motion and Motion, the Memorandum of Law in support thereof, the Declaration of Elizabeth A. Falcone and exhibits attached thereto, the Declaration of Brian Ong, all filed concurrently herewith, the pleadings on file in this action, and such arguments and admissible evidence as may be presented at the time of hearing.

DATED: November 15, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: s/ *Elizabeth A. Falcone*
Thomas M. McInerney
A. Craig Cleland
Elizabeth A. Falcone
Brian D. Berry
Lisa M. Bowman

Attorneys for Defendant
GOOGLE LLC

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................... 1

II. UNDISPUTED MATERIAL FACTS ................................................................................ 1

    A. Google's Non-Discrimination Policy and Hiring Process for SWEs ....................... 1

    B. Heath's Background and Credentials ....................................................................... 2

    C. 2007 & 2008: Google Solicits Heath to Interview; He Fails a TPS ........................ 2

    D. February 2011: Google Approaches Heath a Third Time When He Is
       ▮▮▮▮▮▮ .......................................................................................................... 3

    E. February 8, 2011: Google Interviewer Frank Tang Conducts a TPS of
       Heath; Various Communication Challenges Arise and Tang Rates
       Heath Poorly. ............................................................................................................. 4

    F. February 10, 2011: Heath Complains to Chun About the TPS and
       Tang ........................................................................................................................... 5

    G. Heath Files Charges With the EEOC and DFEH, and Drafts
       Correspondence Excoriating Tang Based on His Perceived
       Nationality ................................................................................................................ 5

III. LEGAL ARGUMENT ....................................................................................................... 6

    A. Summary Judgment Standard .................................................................................. 6

    B. The *Prima Facie* Elements of Age Discrimination and the Burden-
       Shifting Analysis Applicable Under the FEHA and the ADEA ............................... 6

    C. Tang's Assessment that Heath Lacked the Necessary Skill Set Is a
       Legitimate Reason for Google's No-Hire Decision ................................................. 7

    D. Heath Has No Evidence Whatsoever of Causation or Pretext ................................. 8

       1. Tang's Conduct During the TPS Was Consistent with His
          Ordinary Practice ............................................................................................. 8

       2. Tang's Conclusions About Heath, Even if Mistaken, Were
          Non-Discriminatory. ........................................................................................ 9

       3. Heath Cannot Establish His Qualifications Through His Own
          Personal Opinion or Comments By a Recruiter ............................................ 11

IV. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abed v. Western Dental Servs.*,
   23 Cal. App. 5th 726, 736 (2018) ..................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .......................................................................................................6

*Arteaga v. Brink's, Inc.*,
   163 Cal. App. 4th 327 (2008) ........................................................................................7

*Cotton v. City of Alameda*,
   812 F.2d 1245 (9th Cir. 1987) .......................................................................................6

*Cramblett v. McHugh*,
   2014 WL 2093600 (D. Or. May 19, 2014) ..................................................................12

*EEOC v. The Boeing Company*,
   577 F.3d 1044 (9th Cir. 2009) .......................................................................................7

*Finley v. Cty of Martin*,
   2009 WL 5062326 (N.D. Cal. 2009) .............................................................................8

*Grant v. Tosco Refining Co., Inc.*,
   1996 WL 590587 (N.D. Cal. 1996) .........................................................................7, 11

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009) .......................................................................................................6

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ....................................................................................7, 10, 12

*Hersant v. Department of Social Services*,
   57 Cal. App. 4th 997 (1997) ........................................................................................10

*Horn v. Cushman & Wakefield Western, Inc.*,
   72 Cal. App. 4th 798 (1999) ........................................................................................10

*King v. United Parcel Service*,
   152 Cal. App. 4th 426 (2007) ......................................................................................10

*Lee v. Solano County Probation Dept.*,
   2006 WL 495996 (E.D. Cal. 2006) ..............................................................................11

*Morgan v. Regents of Univ. of Cal.*,
   88 Cal. App. 4th 52 (2000) ........................................................................................7, 9

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133 (2000) ...........................................................................................................7

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ..............................................................................................6

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ..........................................................................................10

**Statutes**

Age Discrimination in Employment Act (ADEA) .................................................................. *passim*

California Fair Employment and Housing Act (FEHA).............................................................6, 7, 8

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................................................6

## I. INTRODUCTION

In 2011, Defendant Google LLC invited Plaintiff Robert Heath, then 60 years old, to interview with it for the ***third time*** for a software engineer ("SWE") position. On all three occasions, Heath was over age 40. On February 8, 2011, Google conducted a Technical Phone Screen ("TPS") of Heath. According to Heath, the interviewer, Frank Tang, lacked the necessary English proficiency to properly conduct the interview, which compounded other snags in the process, including what Heath believed was a lousy phone connection and Tang's lateness to the interview. Rather than conclude that these irregularities were just bad luck or that Tang was not a strong interviewer, Heath concluded that his recruitment by Google was a ploy to create the appearance that skilled STEM workers are not available in the U.S. to support Google's (supposed) political agenda in favor of the issuance of more H1-B visas. Heath then went on a screed against Google and Tang, filing agency charges and publicly posting his displeasure on various websites, complete with repeated references to his conclusion that Tang was from "Red China." The truth is, Tang concluded Heath performed poorly. That is the only reason Heath did not proceed to the next step in Google's interview process. Even if Heath were correct that Tang failed to properly assess Heath's skill as a SWE and that the interview was hampered by communication and technological challenges, that does not show intentional age discrimination, which is the theory on which Heath now proceeds. There are no facts on which a jury could possibly conclude that Heath's rejection resulted from age bias. Summary judgment should be granted.

## II. UNDISPUTED MATERIAL FACTS

### A. Google's Non-Discrimination Policy and Hiring Process for SWEs

Google policy clearly prohibits age discrimination, and requires that all employment decisions be based on each individual's merit, qualifications, and professional competence. *See* concurrently filed Declaration of Elizabeth A. Falcone in Support of Google's Motion for Summary Judgment as to Claims of Plaintiff Robert Heath (hereafter, "Falcone Decl."), attaching as Exh. 1 the Declaration of Kara Silverstein, ¶¶ 3-4, Ex. 1.[1] Its "Legal and Ethical Guidelines" make clear that this policy applies to any "applicant." *Id.* Google also trains interviewers on

---
[1] All cited deposition testimony and exhibits are attached as exhibits to the Falcone Declaration.

conscious and unconscious bias, including instructions to avoid considering age in the hiring process. Brian Ong Dep. 76:9-18, 86:6-87:5, 101:11-102:1. Once an engineering candidate passes an initial screen by a recruiter, he or she undergoes a TPS, in which an engineer may ask the candidate to write code, formulate algorithms, or answer substantive questions. *See* Declaration of Brian Ong in Support of Google's Motion for Summary Judgment as to Claims of Plaintiff Robert Heath (hereafter, "Ong Decl."), ¶¶ 4-5. If the candidate passes the TPS, they may be invited to onsite interviews; if they fail, the process ends. *Id*. Google's applicant-tracking system, gHire, has no age or birthdate information on a candidate. Ong Decl., ¶ 6.

### B. Heath's Background and Credentials

Heath describes himself as having "extensive work experience in information technology, including software engineer positions." Dkt. 218, ¶ 29. He earned a B.S. in computer science from North Carolina State University, graduating in 1978, and states he has "over 32-years of post-college jobs." Pl. Dep. 52:11-16, 55:11-13, Dkt. 218, ¶ 30. He was born ▮▮▮▮▮▮▮. Pl. Dep. 35:3-5. At the time of the interview relevant to this lawsuit, he resided in Delray Beach, Florida. Pl. Dep. 41:1-19.

### C. 2007 & 2008: Google Solicits Heath to Interview; He Fails a TPS

In 2007, Google contacted Heath (then roughly age ▮▮▮▮ and conducted a TPS of him for a job in Santa Monica. Pl. Dep. 105:2-24, 106:10-12, 107:7-12. Heath recalls being asked during the 2007 TPS what project in his past he was most proud of; the rest of the interview "is kind of vague" to Heath, though he recalls "some very abstract, esoteric problems." Pl. Dep. 106:14-107:4, 107:13-16. While Heath found the 2007 interviewer "very charming" and "enjoyed talking to" him, Heath found fault with the interview because he "wasn't able to explain all of the other projects" he had worked on during his career. Pl. Dep. 108:6-13, 108:19-109:11. He believes that "younger workers . . . only have one or two projects," but older workers "probably have worked on dozens of projects," and Google "would be better able to understand [his] qualifications" if its interview process provided him with more time to expound on his job history. Pl. Dep. 115:9-116:2. According to Heath, he had a "wealth of knowledge" that he was "never given a chance to explain," which he believes is "unfair to older workers." Pl. Dep. 118:8-11,

118:20-119:2. Other than not being able to talk about more projects, there was nothing else about his 2007 TPS that Heath thought suggested discrimination. Pl. Dep. 109:12-15. Heath did not get the job, nor did Google invite him to proceed with the interview process beyond the TPS. Pl. Dep. 110:10-15. He did not file a complaint or charge of discrimination. Pl. Dep. 110:8-9.

In May 2008, a Google recruiter contacted Heath ▬▬▬▬▬ to ask if he was interested in another TPS for a SWE job. Chun Dep. Ex. 1, pg. 6. When Heath called the recruiter to discuss scheduling a TPS, the recruiter realized that "Robert" Heath is the same person as "Bob" Heath who had performed poorly on a TPS in 2007. *Id.* Heath grew ▬▬▬▬▬ with the recruiter on the call, and a TPS was not scheduled. *Id.* Like the year before, Heath did not file a charge or complaint of discrimination. Pl. Dep. 114:6-8.

**D.     February 2011: Google Approaches Heath a Third Time When He Is** ▬▬▬

Google contacted Heath again in February 2011, when he was ▬▬▬▬▬ Pl. Dep. 124:19-125:1, 125:21-126:1, 129:15-19. Specifically, Google Recruiter Sam Chun emailed Heath and told him that Google was "looking for the most talented and brightest software engineers," and asked if he was interested in applying; Heath responded "of course." Pl. Dep. 126:2-19, Dkt. 218, ¶ 33. Heath and Chun also spoke on the phone, and Heath found Chun "to be a very pleasant person." Pl. Dep. 128:25-129:6. He told Chun he had "a lot of experience with Java, C++," and mentioned his certifications in those languages. Pl. Dep. 128:9-22. Heath believes he "probably" told Chun that he had 30 years of experience. Pl. Dep. 129:12-14. Chun said, "Well, your answers are good. Let's schedule a TPS." Pl. Dep. 128:1-3. Despite the praise in his email to Heath, Chun ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Chun Dep. 27:24-28:7, 28:19-29:22. Chun's practice as a recruiter was to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Chun Dep. 64:11-10.

Chun advised Heath he would need to be at a computer with an Internet connection for the TPS, and that he was required to install Google Docs to participate. Pl. Dep. 135:14-16, 134:25-135:2. Chun also suggested to Heath that he "needed to study," and Heath recalls thinking, "What should I study?" Pl. Dep. 135:3-12. According to Heath, he can pick up a technology he used "10

years ago" if he is "exposed to it for a week or two"; this type of study will bring him "current again." Pl. Dep. 135:3-12. The TPS was set for February 8, 2011. Pl. Dep. 136:4-11.

### E. February 8, 2011: Google Interviewer Frank Tang Conducts a TPS of Heath; Various Communication Challenges Arise and Tang Rates Heath Poorly.

Google assigned Frank Tang to conduct the 2011 TPS. Pl. Dep. 142:11-16. Tang himself was born ███████████████████████████ old at the time of the TPS. Tang Dep. 24:23-24. On February 8, 2011, the day of the TPS, Tang was 10 minutes late. Pl. Dep. 136:17-139:3. When Tang "came on the phone," Heath concluded that Tang "didn't speak English well," and it sounded to Heath as though Tang was using a speaker phone. Pl. Dep. 137:14-19. Tang first asked Heath how Heath could "help Google in [its] business," and Heath "explained to him [his] project work in writing simulation models for 486 processors." Pl. Dep. 137:14-138:4. When Heath tried to say something else, Tang interrupted and said, "You've already answered the question." Pl. Dep. 138:6-12. According to Heath, he "could barely understand [Tang]" and believes Tang "could barely understand" him, because Tang was "constantly interrupting [Heath to ask him] to repeat himself." Pl. Dep. 138:15-19.

Tang asked Heath two other questions, first to calculate the amount of memory required for a particular task, and then to write an algorithm. Pl. Dep. 138:20-139:17. Although Heath had just two minutes to do the algorithm question, he "came up with the answer." Pl. Dep. 139:17. According to Heath, Tang had not logged into Google Docs and asked Heath to read his answer aloud. Pl. Dep. 139:18-140:22. Heath asked Tang to use Google Docs or to allow Heath to email the document to him, but Tang refused. Pl. Dep. 140:17-141:1. Over the phone, Heath claimed he heard a knock on the door of Tang's conference room. Pl. Dep. 141:2-14. Heath understood that Tang's conference room reservation had run out, ending the TPS. Pl. Dep. 137:4-13. Heath remembers nothing else about the 2011 TPS. Pl. Dep. 141:13-14. He never had any further communications with Tang. Pl. Dep. 143:17-21.

Tang entered feedback on Heath's TPS into gHire that same day, scoring him a ███ on a 4.0 scale. Tang Dep. Ex. 8; Ong Decl., ¶ 7, Ex. 1. In particular, Tang criticized Heath's answer on the memory question, writing ███████████ in his narrative feedback. *Id.* On the algorithm, Tang

4   Case No. 5:15-cv-01824-BLF
GOOGLE'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS OF PLAINTIFF ROBERT HEATH

1 | described Heath's performance as ███████ but recommended Heath not be brought for an
2 | onsite interview, writing that he did not ████████████████████████████████████" *Id.*

### F. February 10, 2011: Heath Complains to Chun About the TPS and Tang

Heath called Chun to tell him about his difficulties communicating with Tang. Pl. Dep. 162:21-163:11. Chun told him he would look into it, and Heath felt Chun "sympathized with [his] situation." Pl. Dep. 162:7-11. On February 10, 2011, two days after the TPS, Chun emailed Heath and advised him that, "based on the feedback" from Tang, Heath would not continue to the next step in the interview process. Pl. Dep. Ex. 3. Heath responded by sending an email with the following opening line: "May I suggest in the future that when you conduct an interview with your candidates, that you do so with an interviewer that has a solid command of the language being used by the candidate." *Id.* Chun entered a note in Google's records stating that Heath had "████████████████████████████████████ Chun Dep. 52:6-10, Ex. 1, pg. 3. Heath had no further communication with anyone at Google about his 2011 TPS. Pl. Dep. 163:23-164:5, 169:9-13. He has not applied for or expressed interest in any position at Google since February 2011. Pl. Dep. 166:17-19.

### G. Heath Files Charges With the EEOC and DFEH, and Drafts Correspondence Excoriating Tang Based on His Perceived Nationality

On June 13, 2011, Heath dual-filed a charge with the EEOC and the DFEH alleging age discrimination in hiring. Pl. Dep. 170:2-18, Ex. 4. In connection with preparing to pursue those claims, Heath "drafted up a letter" dated February 14, 2011 (four days after Google rejected him). Pl. Dep. 172:13-174:19, Ex. 5. In that letter, Heath refers to Tang as "Chinese and barely fluent in English," and decried Google as "dependent on the employment of immigrants from India and Communist China," and "unwilling to hire US workers." Pl. Dep. Ex. 5. He also posted comments about his Google interview on a website called "democraticunderdog.com," in which forum he referred to Tang as being "from Red China." Pl. Dep. Ex. 8, pg. 2; *see also id.* at p. 21 ("maybe they could tell us to take a course in Mandarin so we can pass the job interview with their workers from Red China."). Heath testified that he believes that Google is the "leader" in a problem of "epidemic proportions" in which US-born STEM workers are "taunted, mocked, and smeared." Pl.

Dep. 212:12-215:9. He believes Google offered him the 2011 TPS as "a prop" to "demonstrate that there is a shortage of US workers, to build public support for expanding the H-1B visa program." Pl. Dep. 167:3-10.

In this suit, Heath brings two claims: (1) disparate treatment under the Age Discrimination in Employment Act (ADEA); and (2) intentional discrimination under the California Fair Employment and Housing Act (FEHA). Dkt. 218, *passim*.

## III. LEGAL ARGUMENT

### A. Summary Judgment Standard

A court should grant summary judgment when the moving party "show[s] that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as here, the nonmoving party has the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see* Fed. R. Civ. P. 56(c), (e).

### B. The *Prima Facie* Elements of Age Discrimination and the Burden-Shifting Analysis Applicable Under the FEHA and the ADEA

While the *prima facie* case for a failure to hire claim is similar under the ADEA and the FEHA, it is not identical. Under the FEHA, to prove intentional discrimination in a failure-to-hire case, a plaintiff must provide evidence that (1) he is a member of a protected class; (2) he was qualified for the position he sought; (3) he suffered an adverse employment action (a failure to hire); and (4) some other circumstance suggests discriminatory motive. *Abed v. Western Dental Servs.*, 23 Cal. App. 5th 726, 736 (2018).

A *prima facie* case under the ADEA requires more than this. Specifically, to show intentional discrimination under the ADEA, Heath must offer admissible evidence that a younger person with similar qualifications received the position. *Cotton v. City of Alameda*, 812 F.2d 1245,

6  Case No. 5:15-cv-01824-BLF
GOOGLE'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS OF PLAINTIFF ROBERT HEATH

1248 (9th Cir. 1987). Further, Heath cannot prevail on his ADEA claim unless he can show "but for" causation as to the decision not to hire him. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

If Heath can state a *prima facie* case, "the burden shifts to [Google] to [articulate a] legitimate nondiscriminatory reason for its employment decision." *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 342–343 (2008). If Google proffers a legitimate reason for its decisions, Heath must show that reason is a pretext for age discrimination, either directly by showing that a discriminatory reason more likely motivated the employer or indirectly by showing that Google's explanation is unworthy of credence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *EEOC v. The Boeing Company*, 577 F.3d 1044, 1049 (9th Cir. 2009); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355-56 (2000); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000). If Heath relies on circumstantial evidence to show pretext, that evidence must be "specific and substantial." *Boeing*, 577 F.3d at 1049; *see also Grant v. Tosco Refining Co., Inc.*, 1996 WL 590587 (N.D. Cal. 1996), *quoting Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." *Guz,* 24 Cal. 4th at 356.

Google does not dispute that Heath is a person over age 40, nor that it chose not to hire him. It focuses its arguments on the elements of causation and pretext. There is simply no admissible evidence from which a jury could conclude that (1) as required under FEHA, the circumstances suggest a discriminatory motive; (2) as required by the ADEA, the but-for cause of his non-hire was age discrimination; or (3) under either statute, that Google's legitimate, non-discriminatory reason for not hiring Heath is actually a pretext for discrimination. With respect to the ADEA claim, Heath also cannot meet his burden on summary judgment to show that a younger person was selected for the position he sought.

### C. Tang's Assessment that Heath Lacked the Necessary Skill Set Is a Legitimate Reason for Google's No-Hire Decision

Here, Google has articulated a clearly legitimate reason for its decision: Tang's assessment that Heath lacked the computer science skills necessary for the job. Tang Dep. Ex. 8 (scoring

Heath a ███ on a 4.0 scale, noting his interview answer was ███████ and concluding that he did not "███████████████████████████████████████"); Ong Decl., ¶ 7 (███████████
███████████████████████████████████████████ should not proceed further in the interview process."). It is axiomatic that an employer's assessment that an applicant lacks the requisite skills for a job qualifies as a legitimate, non-discriminatory reason for a no-hire decision. *See, e.g., Finley v. Cty of Martin*, 2009 WL 5062326 (N.D. Cal. 2009). Accordingly, the burden shifts back to Heath; it is one he cannot carry.

### D. Heath Has No Evidence Whatsoever of Causation or Pretext

Pertinent to both the FEHA and the ADEA claims, Heath has testified that he has no evidence of age discrimination other than his recollections of his interview and the concerns set out in his February 10 email to Chun about how it was conducted. Pl. Dep. 164:6-17. In other words, Heath can point to no ageist comments, no documents evidencing ageist bias, nor any other direct evidence of age discrimination. To the contrary, he offers an incoherent mish-mash of speculative theories for why he was not hired, including discrimination in favor of foreign applicants, that Tang was supposedly from "Red China," a poor phone connection, and a disinterest in hiring older workers. Because the relevant evidence as to pretext/proof of discriminatory motive is the same on both the federal and the state law claims, Google addresses these issues jointly.

#### 1. Tang's Conduct During the TPS Was Consistent with His Ordinary Practice

Notably, Heath concedes that his only evidence that Tang was acting intentionally to disadvantage him was that, in his view, Tang did not take steps Heath thought might eliminate some of the communication problems. Pl. Dep. 162:2-19. But, there is no evidence that any action or inaction by Tang was the result of age bias. Rather, Tang's TPS of Heath was consistent with his practice for conducting TPS interviews. He treated Heath no differently than other applicants, whether over or under 40 years old.

Specifically, as to the use of a speakerphone, Tang testified that he had ███████████
███████ when conducting telephone interviews for Google. Tang Dep. 53:20-54:8. He also testified that he does not remember if he brought ███████████████████████████

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tang Dep. 70:2-6, 107:5-9.  He explained

that his practice is not ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for two reasons.  First, Tang found through experience that some candidates ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tang Dep. 72:17-21.  Second, Tang had a negative experience where a candidate somehow ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tang Dep. 73:22-74:11.  For these reasons, Tang asks all candidates to do what Heath did:  Write the code and then ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tang. Dep. 76:24-77:10.  ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*  In short, even if Heath disagrees with how Tang conducts interviews, because Tang's process was consistent with how he screened other candidates, no inference of discrimination arises.  *See Morgan*, 88 Cal. App. 4th at 72 (hiring manager's alleged rudeness to a would-be applicant was not evidence of an illegal motive for a failure to hire claim).

### 2. Tang's Conclusions About Heath, Even if Mistaken, Were Non-Discriminatory.

Heath may argue that (1) a variant of the memory question had been banned by Google,[2] or (2) Heath's answer to the memory question was correct and Tang simply misheard him due to the language barrier and the poor phone connection.  Neither argument defeats summary judgment.

First, Heath's argument that Google banned the memory question is a red herring.  Tang testified that Google banned a variant of the question ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tang Dep. 46:1-25.  In other words, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ undermined the question's utility in sorting candidates.  Google banned the question not because it was substantively improper or reflective of age discrimination, but because its ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[2] Heath cannot argue that the question was not job-related.  He admits that SWEs need to be able to accurately calculate memory and storage, because it can cause problems if the requirements of the end product software exceed the estimate of memory or storage needed.  Pl. Dep. 158:11-159:13. This type of mistake can affect other systems, squeezing them out of the memory.  Pl. Dep. 159:22-160:9.

1  ██████████████████████████████████████████████████████████████████████ This cannot have

2  possibly disadvantaged Heath. Indeed, if anything he had an *advantage*.

3  Heath may also argue that he got the answer right and Tang was wrong in concluding he

4  had given a "████████" answer. Heath admits the correct response to that question is that the

5  necessary memory was "more than two bites." Pl. Dep. 151:24-152:18. Tang's notes show that he

6  recorded Heath's answer as indicating two bites were sufficient. This cannot raise a triable issue of

7  pretext, however, because Heath admitted at deposition that Tang may have thought he heard

8  Heath answer "two bites." Pl. Dep. 152:22-153:1. Heath testified that he believes that Tang may

9  have misheard him because "[Tang] doesn't speak English precisely" and "he was talking on [a

10  speakerphone] that had poor communication." Pl. Dep. 153:2-15.

11  But even if Tang did mishear Heath, this mistake would not be sufficient to create a triable

12  issue of intentional age discrimination because employers are allowed to make mistakes or bad

13  decisions without running afoul of anti-discrimination laws. Indeed, "[i]t is the employer's honest

14  belief in the stated reasons for [the alleged adverse action] and not the objective truth or falsity of

15  the underlying facts that is at issue in a discrimination case." *King v. United Parcel Service*, 152

16  Cal. App. 4th 426, 436 (2007); *see also, e.g., Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054,

17  1063 (9th Cir. 2002); *Guz,* 24 Cal. 4th at 358 ("[I]f nondiscriminatory, [an employer's] true reasons

18  need not necessarily have been wise or *correct*."); *Horn v. Cushman & Wakefield Western, Inc*., 72

19  Cal. App. 4th 798, 806-807 (1999) (To establish pretext, "[t]he employee cannot simply show the

20  employer's decision was wrong, mistaken, or unwise."); *Hersant v. Department of Social Services,*

21  57 Cal. App. 4th 997, 1005 (1997) ("It is not enough for the employee simply to raise triable issues

22  of fact concerning whether the employer's reasons for taking the adverse action were sound. What

23  the employee has brought is not an action for general unfairness but for [] discrimination.").

24  In short, the undisputed evidence is that Google did not hire Heath because Tang concluded

25  that he was not qualified based on Heath's TPS performance, which is a legitimate, non-

26  discriminatory reason to reject a candidate. None of Heath's counter arguments are sufficient, as a

27  matter of law, to raise a triable issue of pretext.

28

### 3. Heath Cannot Establish His Qualifications Through His Own Personal Opinion or Comments By a Recruiter

Heath likely will take issue with Tang's conclusion that Heath was not qualified for a SWE position at Google. But an applicant cannot avoid summary judgment by challenging an employer's business judgment about the applicant's qualifications, so long as the decision was not driven by a discriminatory motive. For instance, in *Grant*, an ADEA hiring case, this Court explained, "[e]ven were plaintiff more technically qualified than either [of the other two candidates], ***the ADEA does not make it unlawful for an employer to do a poor job of selecting employees***…the Court will not second guess the decision made by defendant unless plaintiff shows that defendant discriminated on the basis of age or race." 1996 WL 590587 at *6 (internal citations omitted; emphasis added).

To survive summary judgment, Heath must do more than tout his qualifications. Courts routinely hold that a plaintiff's own opinion that he is a superior candidate to others does not constitute evidence of pretext. *See, e.g., Lee v. Solano County Probation Dept.*, 2006 WL 495996 at *8 (E.D. Cal. 2006) (plaintiff "has not offered evidence, other than his own subjective opinion, that he was more qualified for the position than the two persons ultimately selected. Plaintiff has provided no affidavits or declarations … other than his bald assertion that his 18 years in the field of probation made him more qualified or that his answers to the written hypothetical were superior."). And although the recruiter found that Heath's resume presented qualifications sufficient to warrant a TPS, the mere fact that Heath has credentials he can list on a resume does not mean he performed well on the TPS.

Heath may argue that, because Chun commented that Heath was a strong candidate after reviewing his resume, Tang's conclusion that Heath did not understand basic computer science must be pretextual. But this argument is incorrect. First, the roles of Chun and Tang were different: Chun was a recruiter, while Tang was the engineer and subject-matter expert tasked with conducting the TPS. Chun testified that he Chun Dep. 27:24-28:7, 28:19-29:22.

1 Moreover, Chun's preliminary assessment of Heath's resume is just that: preliminary, and subject
2 to change. In *Cramblett v. McHugh*, 2014 WL 2093600, *12 (D. Or. May 19, 2014), the district
3 court evaluated an ADEA failure to hire claim where the plaintiff pointed to the employer's
4 favorable assessment of the plaintiff's resume as somehow showing bias when a subsequent
5 interview did not go well. The district court rejected the claim, stating as follows: "[T]he more
6 comprehensive selection process conducted by [the in-person interviewer] appears to constitute the
7 appropriate conclusion of the initial selection process begun by [the resume reviewer]. [The
8 interviewer] also viewed [the plaintiff] as a highly qualified candidate based on his resume, but the
9 additional step of an interview revealed information that was not gleanable from the simple resume
10 review." *Id.* Moreover, to establish a triable issue of pretext, it is insufficient to only present
11 evidence that the reason offered was incorrect. Heath must present ***substantial*** evidence that
12 Google's justifications were false such that "a rational inference that intentional discrimination, on
13 grounds prohibited by the statute, was the true cause of the employer's actions." *Guz*, 24 Cal.4th at
14 361. This, he cannot do.

## IV. CONCLUSION

This is not a case of age discrimination. It is a case of a disappointed job applicant who cannot accept that his interview did not go as hoped. And, while Heath may have evidence that his interview did not run smoothly, that does not permit a jury to infer age discrimination. For all the foregoing reasons, Google respectfully requests that the Court grant this Motion for Summary Judgment and dismiss Plaintiff Robert Heath's claims with prejudice.

DATED: November 15, 2018

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: s/ *Elizabeth A. Falcone*
Thomas M. McInerney
A. Craig Cleland
Elizabeth A. Falcone
Brian D. Berry
Lisa M. Bowman

Attorneys for Defendant
GOOGLE LLC

36219545.5