Thomas M. McInerney, CA Bar No. 162055
tmm@ogletree.com
Brian D. Berry, CA Bar No. 229893
brian.berry@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:   415.442.4810
Facsimile:    415.442.4870

A. Craig Cleland, *pro hac vice*
craig.cleland@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
191 Peachtree St., NE., Suite 4800
Atlanta, GA 30303
Telephone:    404.881.1300
Facsimile:    404.870.1732

Elizabeth A. Falcone, CA Bar No. 219084
elizabeth.falcone@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone:    503.552.2166
Facsimile:    503.224.4518

Attorneys for Defendant GOOGLE LLC

Daniel L. Low, CA Bar No. 218387
dlow@kotchen.com
Daniel Kotchen (*pro hac vice*)
dkotchen@kotchen.com
Michael von Klemperer (*pro hac vice*)
mvk@kotchen.com
Lindsey Grunert (*pro hac vice*)
lgrunert@kotchen.com
Amy Roller (*pro hac vice*)
aroller@kotchen.com
KOTCHEN & LOW LLP
1745 Kalorama Road NW, Suite 101
Washington, D.C. 20009
Telephone:    202.471.1995
Facsimile:    202.280.1128

Attorneys for Plaintiff
CHERYL FILLEKES & OPT-IN PLAINTIFFS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HEATH, on behalf of himself<br><br>and<br><br>CHERYL FILLEKES, on behalf of herself and others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>　　　　　Defendant. | Case No. 5:15-cv-01824-BLF<br><br>**JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT**<br><br>Date:　　　December 5, 2019<br>Time:　　　9:00 a.m.<br>Location: Courtroom 3 – 5th Floor<br><br>Hon. Beth Labson Freeman<br><br>Complaint Filed:  April 22, 2015 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that Plaintiff Cheryl Fillekes and the Opt-In Plaintiffs ("Plaintiffs") and Defendant Google LLC hereby move this Court for final approval of the Collective Action Settlement Agreement in this matter.

The Settlement meets the applicable standards for approving a collective action settlement under the Age Discrimination in Employment Act of 1967 ("ADEA"), as it (1) resolves a bona fide dispute between the parties; (2) is fair and equitable to all parties; and (3) the proposed award for attorneys' fees, expenses, and an incentive award for named Plaintiff Cheryl Fillekes is reasonable. Moreover, as explained in the accompanying memorandum of points and authorities, the parties do not believe a fairness hearing is necessary, and respectfully request that the Court decide this motion without oral argument. If the Court decides to conduct a hearing, the parties have reserved December 5, 2019 at 9:00 a.m., in Courtroom 3, 5th Floor of the above-titled court, located at 280 South 1st Street, San Jose, California 95113 for the hearing.

# <u>TABLE OF CONTENTS</u>

I.      STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

II.     INTRODUCTION ............................................................................................. 1

III.    FACTUAL BACKGROUND ............................................................................. 1

IV.     SUMMARY OF THE SETTLEMENT ............................................................... 3

V.      LEGAL STANDARD ...................................................................................... 4

VI.     ARGUMENT .................................................................................................. 6

        A.      The Settlement Resolves a Bona Fide Dispute. ............................................ 6

        B.      The Settlement Is Fair and Equitable to All Parties. ...................................... 7

        C.      The Proposed Award of Attorneys' Fees, Expenses, and Incentive
                Award Is Reasonable. ..................................................................... 11

                1.      The 25% Benchmark Is Presumed Reasonable. ................................ 11

                2.      Plaintiffs' Expenses Are Reasonable ................................................ 14

                3.      The Proposed Incentive Award for the Named Plaintiff Is
                        Reasonable. ................................................................................ 14

        D.      A Fairness Hearing Is Not Required. ........................................................ 15

VII.    CONCLUSION ............................................................................................. 16

TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ......................................... 10

*Buckinham v. Bank of America*, No. 3:15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243 (N.D. Cal. July 11, 2017) ............................................................................................................................... 15

*Campbell v. City of L.A.*, 903 F.3d 1090 (9th Cir. 2018) ...................................................................... 5

*Chalmers v. City of L.A.*, 796 F.2d 1205 (9th Cir. 1986) ................................................................... 14

*Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27, 2014) ....................................................................................................................................... passim

*Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal 1991) ................................... 5

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................................................. 4

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ....................................................................... 14, 15

*Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014) ............................................................................................................................................. 12

*Custom LED, LLC v. eBay, Inc*, No. 12-cv-00350-JST, 2014 U.S. Dist. LEXIS 87180 (N.D. Cal. June 24, 2014) ...................................................................................................................................... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................ 8, 12

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ............................................................................ 14

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ......................... 11, 13

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ........................................................................................................ 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ............................... 13

*K.H. v. Sec'y of the Dep't of Homeland Sec.*, No. 15-cv-2740-JST, 2018 U.S. Dist. LEXIS 125459 (N.D. Cal. July 26, 2018) ...................................................................................................... 5, 6, 7

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ....................................................... 13

*Koehler v. Freightquote.com, Inc.*, No. 12-2505, 2016 U.S. Dist. LEXIS 48597 (D. Kan. Apr. 11, 2016) ............................................................................................................................................. 5, 16

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............................. 4, 5, 6

*Moore v. Ackerman Inv. Co.*, No. C 07-3058, 2009 U.S. Dist. LEXIS 78725 (N.D. Iowa Sept. 1, 2009) ................................................................................................................................................... 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .............. 8, 9, 11

*Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S.F.*, 688 F.2d 615 (9th Cir. 1982) ............................................................................................................................................................. 6

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ........................................ 12

*Richardson v. Alaska Airlines, Inc.*, 750 F.2d 763 (9th Cir. 1984) ................................................. 11

*Rodriguez v. West Publ'g Co.*, 563 F.3d 948 (9th Cir. 2009) ....................................................... 6, 10

*Saleh v. Valbin Corp.,* No. 17-CV-00593-LHK, 2018 U.S. Dist. LEXIS 195348 (N.D. Cal. Nov. 15, 2018) ............................................................................................................................................. 5

*Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001) ........................................................................... 14

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................................ 14

*Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-0066079660-HSG, 2017 U.S. Dist. LEXIS 137182 (N.D. Cal. Aug. 25, 2017) ............................................................................... 6, 8, 9, 10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................................... 12

*West v. Circle K Stores, Inc.*, No. CIV S-04-0438, 2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006) ...................................................................................................................................... 10

**Statutes**

29 U.S.C. § 216 ................................................................................................................................. 5

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 5, 6, 7, 16

**Treatises**

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (5th ed.)............................................... 13

JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Cheryl Fillekes and the Opt-In Plaintiffs ("Plaintiffs") and Defendant Google LLC move this Court for approval of the Collective Action Settlement Agreement attached hereto as Exhibit 1. Because this litigation involves a bona fide dispute, and because the proposed settlement is fair, reasonable, and adequate, and contains a reasonable award of attorneys' fees, the parties respectfully request that the Court enter into the accompanying proposed order approving the Settlement.

## I.   STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should approve the Collective Action Settlement Agreement, approve an award of attorneys' fees and expenses, approve an incentive award for named Plaintiff Cheryl Fillekes, and dismiss the action with prejudice.

## II.   INTRODUCTION

On April 29, 2019, a Settlement Agreement ("Settlement") was fully executed by Defendant Google LLC, Counsel for Google, Plaintiff Cheryl Fillekes, and Counsel for Fillekes and the Opt-In Plaintiffs.  Two hundred and twenty-seven of the 234 members of the Opt-In class (including Plaintiff Fillekes) subsequently signed Acknowledgement and Consent forms, making them parties to the Settlement. The Settlement provides for a total payment of $11 million from Google, and for programmatic relief. A copy of the parties' Settlement Agreement is attached as Exhibit 1.

For the reasons set forth below, the Settlement meets the applicable standards for approving a collective action settlement under the Age Discrimination in Employment Act of 1967 ("ADEA"). The parties respectfully request that the Court approve the Settlement, approve an award of attorneys' fees and expenses, approve an incentive award, and then dismiss the case with prejudice.

## III.   FACTUAL BACKGROUND

Plaintiffs originally filed this ADEA collective action on April 22, 2015, *see* Compl. (Dkt. #1), and amended the complaint to add Cheryl Fillekes as a named Plaintiff on June 25, 2015. Am.

Compl. (Dkt. #18). Plaintiffs allege that Defendant Google LLC engaged in a systematic pattern or practice of discrimination against applicants age forty and older for three positions across the United States. 2d Am. Compl. ¶¶ 1, 28, 59-61 (Dkt. #218). Google has denied and continues to deny that it intentionally discriminated against Plaintiff Fillekes or the Opt-In Plaintiffs, or any other applicant, because of their age.

On October 5, 2016, the Court conditionally certified the following class:

> All individuals who: interviewed in-person for any Site Reliability Engineer ("SRE"), Software Engineer ("SWE"), or Systems Engineer ("SysEng") position with Google, Inc. ("Google") in the United States; were age 40 or older at the time of the interview; and were refused employment by Google; and received notice that they were refused employment on August 28, 2014 through [October 5, 2016].

Order (Oct. 5, 2016) (Dkt. #119); Order at 6 (Oct. 7, 2016) (Dkt. #121). 262 individuals joined as Opt-In Plaintiffs. Some Opt-Ins later withdrew or were dismissed.  Seven Opt-In Plaintiffs chose not to accept the Settlement (*see* Ex. 4), and 227 Opt-In Plaintiffs (including Plaintiff Fillekes) signed onto the Settlement.

Discovery in the case stretched from September 4, 2015 to September 21, 2018. Google deposed Ms. Fillekes and about 35 Opt-In Plaintiffs, and Google took written discovery from Fillekes and about 75 Opt-Ins. Plaintiffs obtained a variety of discovery from Google, including over  419,000 pages of documents and substantial applicant and employee data. Plaintiffs retained an expert, Dr. David Neumark, who conducted a variety of analyses in multiple expert reports regarding alleged statistical disparities of Google on-site interviewees who received offers. Google retained its expert, Dr. John Johnson, who also conducted a variety of analyses in several expert reports to dispute Dr. Neumark's analyses.

On August 27, 2018, the Court denied Google's motion for decertification. Order (Aug. 27, 2018) (Dkt. #337). Google sought reconsideration of the decertification Order, which the Court denied. Order (Sept. 13, 2018) (Dkt. #367). Google filed a motion for summary judgment on

September 7, 2018 (Dkt. #352), and Plaintiffs began drafting their response, but did not file it because the parties reached a settlement in principle.

The parties have engaged in extensive settlement discussions. The parties, including Plaintiff Fillekes, first held an in-person Settlement Conference with Magistrate Judge Ryu on December 19, 2017. The parties had additional settlement discussions during the summer of 2018, including telephonic conferences with Judge Ryu, and held a second in-person Settlement Conference on October 2, 2018. The parties continued to discuss settlement after the second Settlement Conference and reached agreement on the monetary terms of a settlement during a telephonic conference with Judge Ryu on October 5, 2018, and immediately informed the Court and requested a stay. *See* Stip. Staying and Vacating Deadlines (Dkt. #394). The parties subsequently negotiated the remaining terms of the settlement. Plaintiff Fillekes and Plaintiffs' Counsel signed the Settlement Agreement on April 25, 2019. Google and its Counsel signed the Agreement on April 29, 2019. The Claims Administrator, Kurzman Carson Consultants, LLC ("KCC"), sent notice to the Opt-Ins on May 14, 2019.

227 Opt-Ins (including Plaintiff Fillekes) subsequently signed the Acknowledgement and Consent form. Six Opt-Ins declined to join the settlement, despite discussions with Plaintiffs' counsel. Only one Opt-In did not respond after repeated contacts: KCC sent notice to the non-responsive Opt-In via both e-mail and USPS mail; and Plaintiffs' Counsel attempted to contact him via multiple phone calls, multiple e-mails, and a message sent via LinkedIn.

During the course of the litigation, Plaintiffs' Counsel has spent $174,348.98 in out-of-pocket expenses. Through the end of June 2019, Plaintiffs' Counsel has incurred a lodestar of $2,433,068, and will incur additional fees in finalizing the Settlement.

## IV.   SUMMARY OF THE SETTLEMENT

Plaintiff Fillekes and 226 members of the Opt-In class have executed the Settlement

Agreement, which is subject to Court approval. The total amount of the settlement is $11 million. Google has also agreed to programmatic relief in the form of: training employees and managers on age-based bias; the creation of a subcommittee within recruiting that will focus on age diversity in SWE, SRE, and SysEng positions; ensuring that Google's marketing collateral reflects age diversity; ensuring that any age bias complaints for the relevant positions are adequately investigated; and conducting surveys of departing employees about potential discrimination. The Settlement provides that Plaintiffs' Counsel will be awarded 25% ($2,750,000) of the $11 million settlement amount as attorneys' fees (without anything additional for the value of programmatic relief), and that they will be awarded their out-of-pocket expenses — which amount to $174,349.

The costs of the Settlement Administrator, estimated to be $21,390, are to be deducted from the Settlement Amount. In recognition of her service to the collective action, the Settlement provides that the parties will request an Incentive Award of $10,000 for named plaintiff, Cheryl Fillekes.

In return for the monetary and programmatic relief provided by Google, Plaintiff Fillekes and the 226 Opt-Ins have signed releases of their claims against Google, conditional on the Court's approval of the Settlement.

## V.     LEGAL STANDARD

Settlements are in the interests of judicial efficiency and economy. There is a "strong judicial policy that favors settlements, particularly where complex class [or collective] action litigation is concerned," as the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefits the class could hope to obtain. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (public policy encourages settlement of FLSA litigation).

Collective age discrimination actions under the ADEA are "enforced using certain of the powers, remedies, and procedures of the FLSA." *Church v. Consolidated Freightways, Inc.*, 137

JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

F.R.D. 294, 298-99 (N.D. Cal 1991). Unlike a Rule 23 opt-out class action, the FLSA's collective action provision prohibits employees from becoming "a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b); *see also Campbell v. City of L.A.*, 903 F.3d 1090, 1100 (9th Cir. 2018).

"[W]hile Rule 23 expressly requires that courts review settlement agreements that bind class members for fairness, reasonableness, and adequacy, there is no such statutory requirement in the FLSA or the ADEA." *K.H. v. Sec'y of the Dep't of Homeland Sec.*, No. 15-cv-2740-JST, 2018 U.S. Dist. LEXIS 125459, at *6 (N.D. Cal. July 26, 2018). Similarly, "[t]he FLSA does not require a fairness hearing like that required for settlements of class actions brought under Fed. R. Civ. P. 23." *Koehler v. Freightquote.com, Inc.*, No. 12-2505, 2016 U.S. Dist. LEXIS 48597, at *57 (D. Kan. Apr. 11, 2016); *accord* 29 U.S.C. § 216(b); *Campbell*, 903 F.3d at 1104 (describing opt-in members of an FLSA collective action as party plaintiffs). Nonetheless, some courts in this District have followed the Eleventh Circuit's holding in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) that FLSA settlements require supervision of either the district court or the Secretary of Labor. *E.g., Saleh v. Valbin Corp.*, No. 17-CV-00593-LHK, 2018 U.S. Dist. LEXIS 195348, at *2 (N.D. Cal. Nov. 15, 2018).  By its terms, the Settlement requires approval of the Court (Ex. 1 §§ I, VII(G)), which the parties are seeking for the sake of certainty. Under *Lynn's Foods*, FLSA collective action settlements must "constitute 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *K.H.*, 2018 U.S. Dist. LEXIS 125459, at *7 (quoting *Lynn's Foods*, 679 F.2d at 1355). The district court may approve a settlement agreement and dismiss the action upon finding that: (1) the litigation involves a bona fide dispute; (2) the proposed settlement is fair and

1    equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of

2    attorneys' fees.[1] *Id.* at *7-8, 13-14; *Lynn's Foods*, 679 F.2d at 1354.

3                                  **VI.      ARGUMENT**

4         "This circuit has long deferred to the private consensual decision of the parties. . . . As [this

5    circuit has] emphasized, 'the court's intrusion upon what is otherwise a private consensual agreement

6    negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

7    judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

8    the negotiating parties[.]' . . . [This circuit puts] a good deal of stock in the product of an arms-length,

9    non-collusive, negotiated resolution … and have never prescribed a particular formula by which that

10   outcome must be tested." *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting

11   *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir.

12   1982)) (Rule 23 settlement); *accord Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-0066079660-

13   HSG, 2017 U.S. Dist. LEXIS 137182, at *10 (N.D. Cal. Aug. 25, 2017) (same).

14        Consistent with the *Lynn's Foods* factors, the Settlement should be approved because: (a) the

15   settlement resolves a bona fide dispute, (b) the proposed settlement is fair and equitable, and (c) the

16   proposed award of attorneys' fees, expenses, and incentive award is reasonable.

17   **A.      The Settlement Resolves a Bona Fide Dispute.**

18        The settlement agreement resolves a bona fide dispute concerning liability under the ADEA.

19   As illustrated in the briefing on the various motions submitted to the Court through the course of this

20   litigation, the case involves genuinely disputed factual and legal issues, including, for example:

21

22

23

24   _____

25   [1] Because this ADEA collective action is not a Rule 23 class action but is instead an opt-in joinder

26   action, the parties agree that the Northern District of California's Procedural Guidance for Class

27   Action Settlements under Rule 23 does not apply to this settlement.

28

JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

whether Google engaged in a pattern or practice of intentional age discrimination; whether this case could be maintained as a collective action through trial; whether a pattern-or-practice case may be brought under the ADEA; whether the statistical evidence Plaintiffs' expert presented is admissible, persuasive, and sufficient to establish intentional discrimination because of age; whether Google's interview processes are designed to disfavor older applicants or are based on legitimate, nondiscriminatory hiring criteria and practices; whether in onsite, in-person interviews Plaintiff Fillekes and the Opt-Ins performed well in response to technical interview questions posed by Google; whether Plaintiff Fillekes and the Opt-Ins were qualified for the positions for which they interviewed; whether "Googleyness" or "cultural fit" is a euphemism for youth or a legitimate, nondiscriminatory hiring criterion; whether Google estimates applicants' age based on their appearance or age-related data collected from applicants to discriminate against older applicants; whether Google interviewers have access to any age-related data or information related to interviewees; whether Google discounts experience to the detriment of older applicants; whether Google holds older applicants to a higher or to the same qualification standards as younger applicants; whether each Plaintiff is required to demonstrate that age discrimination was the "but for" cause of Google's failure to hire him or her; whether Google rejected each individual Plaintiff's applications for legitimate, non-discriminatory reasons; whether individual Plaintiffs failed to mitigate their damages; and the amount of damages, if any, that each Plaintiff suffered. *See, e.g.*, 2d Am. Compl. (Dkt. #218); Answer to 2d Am. Compl. (Dkt. #237); Mot. for Decertification (Dkt. #260); Mot. for Summ. J. (Dkt. #352).

**B.      The Settlement Is Fair and Equitable to All Parties.**

Courts evaluating the reasonableness of a collective action settlement often consider the factors used to evaluate the reasonableness of a Rule 23 class action settlement. *K.H.*, 2018 U.S. Dist. LEXIS 125459, at *8-9. Under Rule 23, courts may consider some or all of the following factors:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Van Kempen*, 2017 U.S. Dist. LEXIS 137182, at *11. "Not all of these factors will apply to every class action settlement, and in certain circumstances, 'one factor alone may prove determinative in finding sufficient grounds for court approval.'" *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002, at *9 (N.D. Cal. June 27, 2014) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

These factors support approval of the settlement. First, "the Court must balance against the risks of continued litigation, including the strengths and weaknesses of Plaintiff's case, the benefits afforded to class members, and the immediacy and certainty of a recovery." *Ching*, 2014 U.S. Dist. LEXIS 89002, at *10. Plaintiffs' case faces a number of risks in litigation. For example, Plaintiffs are facing a summary judgment motion from Google laying out potential weaknesses in Plaintiffs' case (Dkt. #352), and will face risks not only in the initial pattern-or-practice phase of the case, but in proving liability and damages in subsequent individual trials. Plaintiffs also face the risk of renewed efforts by Google to decertify the collective action before, during, or after trial. Yet another risk is the likelihood of appeals of both factual determinations as well as of legal issues that are unsettled in this Circuit and under federal law. When considering the considerable risks of litigation, conferring an immediate and certain benefit on class members is preferable.

Second, the "the risk, expense, complexity, and likely duration of further litigation" favors settlement. *Van Kempen*, 2017 U.S. Dist. LEXIS 137182, at *11. "Generally, 'unless the settlement

is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Ching*, 2014 U.S. Dist. LEXIS 89002, at *13 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526). Settlement is favored where, as here, "significant procedural hurdles remain," such as summary judgment, trials, and appeals, as "[a]voiding such . . . expenditure of resources and time would benefit all parties, as well as the court." *Id.* This collective action case is risky, expensive, and complex, and would take years to resolve. As a collective action, this case would be tried under the two-phase *Teamsters* pattern-or-practice framework, the second phase of which would require over two-hundred individual trials, after which appeals are almost certain. Trial would require substantial resources and multiple witnesses for each Plaintiff, including considerable expert testimony on statistical analyses. This factor strongly supports settlement.

Third, "the risk of maintaining class action status throughout the trial" favors settlement. *Van Kempen*, 2017 U.S. Dist. LEXIS 137182, at *11. In denying Google's motion for decertification, the Court explicitly "reserve[d] the right to reconsider its decision if Plaintiffs' trial plan becomes unmanageable," and stated that "[i]f Plaintiffs prevail on the liability phase, the Court can also revisit the issue of 'whether the action should be dismantled for the remedial phase." Order at 28-29 (Aug. 27, 2018) (Dkt. #337). Further, even if the action were not decertified, Plaintiffs would likely face an appeal of the Court's orders denying decertification by Google.

Fourth, the amount offered in settlement, $11 million, is substantial, and will result in an average gross recovery for each of the 227 Opt-Ins (including Plaintiff Fillekes) of approximately ███████. Although total exposure estimates are uncertain and Google disputes that Plaintiffs were the victims of intentional age discrimination and are entitled to any damages at all, Plaintiffs contend that the average gross recovery represents over 80% of the estimated actual damages suffered by Opt-Ins during the time period from August 28, 2014 to December 31, 2017 (not including any potential liquidated damages). Such a significant recovery favors approval. *See Bellinghausen v. Tractor*

1   *Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving "$1,000,000 settlement fund

2   represent[ing] between 25.4 percent and 8.5 percent of Defendant's total potential liability

3   exposure.").

4           Fifth, "the extent of discovery completed, and the stage of the proceedings" favors settlement.

5   *Van Kempen*, 2017 U.S. Dist. LEXIS 137182, at *11. The parties reached a settlement only after over

6   three years of discovery were completed, which included production of over 419,000 pages of

7   discovery by Google, the completion of written discovery and document production from Plaintiff

8   Fillekes and about 75 Opt-Ins, the deposition of multiple parties and witnesses (including the

9   deposition of Plaintiff Fillekes and 35 Opt-Ins), the preparation of extensive expert statistical

10  analyses, and multiple discovery disputes. Thus, the parties had sufficient information to make an

11  informed decision about the merits of the case, supporting approval. *Ching*, 2014 U.S. Dist. LEXIS

12  89002, at *16-17.

13

14          Sixth, counsel for the parties, who are experienced in class litigation, reached the settlement

15  as a result of arms-length, non-collusive negotiations over a period of almost one-and-a-half years

16  with the assistance of Magistrate Judge Ryu. Counsel believe that the Settlement is fair and

17  reasonable. The opinions of counsel "should be given considerable weight both because of counsel's

18  familiarity with this litigation and previous experience with cases" of similar nature. *West v. Circle

19  K Stores, Inc.*, No. CIV S-04-0438, 2006 U.S. Dist. LEXIS 76558, at *17-18 (E.D. Cal. Oct. 19,

20  2006). As noted above, this Circuit defers to the private, arms-length negotiated settlements of parties

21  when reviewing Rule 23 settlements as long as there is no evidence of fraud, overreaching, or

22  collusion, none of which exist here. *See Rodriguez*, 563 F.3d at 965.

23

24          Seventh, because there are no governmental parties, the "governmental participant" factor is

25  irrelevant.

26

27          Finally, "'[t]he absence of a large number of objections to a proposed class action settlement

28

JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" *Ching*, 2014 U.S. Dist. LEXIS 89002, at *18 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529).  Here, no objections were filed. 227 Opt-Ins (including Plaintiff Fillekes) have opted in to the Settlement, while only 7 have chosen not to participate in the Settlement. This positive participation rate – over 97% – weighs in favor of settlement.

Thus, these factors demonstrate that the Settlement is fair and reasonable, and should be approved.

**C.     The Proposed Award of Attorneys' Fees, Expenses, and Incentive Award Is Reasonable.**

In opting-in to the settlement, each of the Opt-Ins expressly agreed that Plaintiffs' counsel would seek fees of 25% of the gross settlement amount, *i.e.*, $2.75 million, that Plaintiffs' Counsel would be reimbursed out-of-pocket expenses, and that Plaintiff Fillekes would seek a $10,000 incentive award. *See* Settlement Agreement §III(B)-(C); Notice of Collective Action Settlement ¶ 5 (Ex. 1).  The Opt-Ins' affirmative approval of these amounts weighs in favor of approving these amounts.  *See Ching*, 2104 U.S. Dist. LEXIS 89002, at *27 (citing *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13627, at *48 (C.D. Cal. June 10, 2005)).

Moreover, the amounts requested in fees, expenses, and as an incentive award are reasonable and proper.

### 1.     The 25% Benchmark Is Presumed Reasonable.

Under the ADEA, Plaintiffs are entitled to reasonable attorneys' fees and costs. *Richardson v. Alaska Airlines, Inc.*, 750 F.2d 763, 765-66 (9th Cir. 1984). The Ninth Circuit has established 25% of the common fund as a benchmark award for attorney fees. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (noting that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th

JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

Cir. 2002); *Hanlon* 150 F.3d at 1029. Courts may only deviate from the 25% benchmark if they provide "a reasonable explanation of why the benchmark is unreasonable under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). The court's award of attorneys' fees should be supported by findings that take into account: (1) the results achieved; (2) the risk involved; (3) the skill required and the quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Ching*, 2014 U.S. Dist. LEXIS 89002, at *23 (citing *Vizcaino*, 290 F.3d at 1048-50). Courts will sometimes undertake a lodestar cross-check, comparing the percentage award to the time counsel expended on the case at the prevailing hourly rates, to further ensure the fee's reasonableness. *Vizcaino*, 290 F.3d at 1050. The lodestar cross-check calculation may be based on "'summaries submitted by the attorneys and [the court] need not review actual billing records.'" *Ching*, 2014 U.S. Dist. LEXIS 89002, at *23-24 (quoting *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *21 (N.D. Cal. Mar. 6, 2014)).

Here, Plaintiffs have requested attorneys' fees in the amount of $2.75 million, or 25% of the common fund. Several factors underscore the reasonableness of Plaintiffs' request.  First, the results obtained by Plaintiffs' Counsel are very favorable considering the significant challenges faced by Plaintiffs if the case were to proceed beyond summary judgment to a *Teamsters* trial and on to appeals. Claims of age discrimination are difficult to prove and rarely asserted on a collective action basis. Collective action members will recover a significant percentage of their damages, and Google is also providing programmatic relief. Plaintiffs' Counsel do not seek any compensation based on the value of the programmatic relief that they obtained on behalf of the class. *Cf. Vizcaino*, 290 F.3d at 1049 (in approving fee award above 25%, Ninth Circuit noted that "[i]ncidental or nonmonetary benefits conferred by the litigation are a relevant circumstance").

Second, Plaintiffs' Counsel undertook their representation at substantial risk. They have

JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

invested a substantial amount of time and money despite a substantial risk of losing on decertification or on the merits.

Third, the litigation required substantial skill, including an ability to properly define and certify a class, the ability to marshal fact and expert evidence to support the claims, and a familiarity with the *Teamsters* pattern-or-practice framework.

Fourth, Plaintiffs' Counsel undertook the case on a contingency basis, and advanced case expenses. As a result of their representation in this case, Counsel were precluded from other employment that may have offered a more immediate and more certain payout. In common fund cases, courts routinely enhance fees for attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney. *Id.*

Fifth, Plaintiffs' request for a 25% fee is in line with the established benchmark that the Ninth Circuit considers presumptively reasonable. *In re Bluetooth*, 654 F.3d at 942.

A lodestar cross-check further supports Plaintiffs' fee request. As reflected in Exhibit 2, based on current hourly rates, the lodestar of Plaintiffs' counsel in this case through the end of June 2019 is $2,433,068, and Plaintiffs' counsel will need to perform additional work to finalize the settlement. This would result in a multiplier of 1.13.  The Ninth Circuit has approved multipliers as high as 3.65 when completing a lodestar cross-check. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). From 2005-2011, the mean multiplier in the Ninth Circuit was 1.43. *See* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 15:89 (5th ed.). Based on the lodestar cross-check, the requested fees are reasonable.

2.     Plaintiffs' Expenses Are Reasonable

Plaintiffs' counsel is entitled to recover "those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986)); *see also Custom LED, LLC v. eBay, Inc*, No. 12-cv-00350-JST, 2014 U.S. Dist. LEXIS 87180, at *28 (N.D. Cal. June 24, 2014) (applying this standard in approving common fund reimbursement for expenses "incurred in connection with computer research, travel to hearings, telephone charges, and costs for copying and printing" because "these expenses are of the type normally charged to a paying client"); *Sorenson v. Mink*, 239 F.3d 1140, 1143–44 (9th Cir. 2001).

A summary of Plaintiffs' expenses is attached as Exhibit 3. Plaintiffs' Counsel have incurred out-of-pocket expenses of $174,349. The bulk of these expenses fall within two categories: $147,980 in professional fees, including expert fees and court reporting fees; and $20,182 for travel expenses related to court appearances, depositions, and Settlement Conferences. These expenses are of the type normally charged to a paying client, and should be approved as reasonable and appropriate.

3.     The Proposed Incentive Award for the Named Plaintiff Is Reasonable.

Plaintiffs seek an incentive award of $10,000 to the named plaintiff, Cheryl Fillekes. "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "The district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Incentive awards of over $10,000 are common in cases of this magnitude. In *Cook*, where the

JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

total recovery was just over $13 million, the court upheld a $25,000 incentive award in 1998. 142 F.3d at 1016. Similarly, in *Buckingham v. Bank of America*, this district approved a $10,000 incentive award where the class representative sat for a full-day deposition and attended a mediation, and the total settlement was $6.6 million. No. 3:15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243, at *15-16 (N.D. Cal. July 11, 2017).

Here, the named Plaintiff who filed this collective action, Cheryl Fillekes, expended considerable time and effort to ensure the success of this case. She has filed a declaration describing her efforts in pursuing the litigation. *See* Fillekes Decl. ¶¶ 1-2. Ms. Fillekes was added as a plaintiff in the First Amended Complaint (Dkt. #18) on June 25, 2015, and has been actively involved in the litigation since then. Her efforts have included, *inter alia*: (1) stepping forward and offering to serve as a named plaintiff; (2) assisting with the preparation of the Amended Complaint and other filings; (3) traveling from upstate New York to California to prepare for and sit for a full-day deposition (and continuing the deposition by telephone at a later date); (4) reviewing the transcript of her deposition for any inaccuracies; (5) responding to written discovery requests; (6) gathering and producing documents for use in connection with the case; (7) regularly reviewing pleadings, correspondence and other documentation received from counsel in order to stay apprised of the progress of the litigation; (8) traveling from upstate New York to California for an in-person Settlement Conference; and (9) being actively involved in subsequent settlement discussions, including reviewing and approving the settlement agreement. In all, Ms. Fillekes estimates that she has spent approximately 250 hours in pursuit of this litigation. Her efforts have helped achieve a settlement of $11 million, and a $10,000 incentive award is reasonable and appropriate. *See Buckingham*, 2017 U.S. Dist. LEXIS 107243, at *15-16.

**D.     A Fairness Hearing Is Not Required.**

"The FLSA does not require a fairness hearing like that required for settlements of class

1   actions brought under Fed. R. Civ. P. 23." *Koehler*, 2016 U.S. Dist. LEXIS 48597, at *57.  When

2   collective action opt-ins have notice of the settlement and an opportunity to object, courts find that

3   fairness hearings are unnecessary.  *Id.*; *Moore v. Ackerman Inv. Co.*, No. C 07-3058, 2009 U.S. Dist.

4   LEXIS 78725, at *6-7 (N.D. Iowa Sept. 1, 2009). Here, all of the Opt-Ins received notice of the

5   settlement and an opportunity to object. No objections to the settlement were filed, and only 7 Opt-

6   Ins chose not to join the settlement. Thus, a fairness hearing is not necessary,  *Koehler*, 2016 U.S.

7   Dist. LEXIS 48597, at *57, and the settlement should be approved without a hearing.

8

9                                    **VII.    CONCLUSION**

10          For the foregoing reasons, the parties jointly request that the Settlement be approved.

JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT

1   DATED:  July 19, 2019                    OGLETREE, DEAKINS, NASH, SMOAK &
2                                             STEWART, P.C.

3                                             By:  _/s/ *Brian D. Berry*_____
4                                                  Brian D. Berry
                                                   A. Craig Cleland
                                                   Thomas M. McInerney
5                                                  Elizabeth A. Falcone

6                                             Attorneys for Defendant
                                              GOOGLE LLC
7   DATED:  July 19, 2019                    KOTCHEN & LOW LLP
8

9                                             By:  _/s/ *Daniel Low*_____
                                                   Daniel Low
10                                                 Daniel Kotchen
                                                   Michael von Klemperer
11                                                 Lindsey Grunert
                                                   Amy Roller
12
                                              Attorneys for Plaintiff
13                                            CHERYL FILLEKES and OPT-IN PLAINTIFFS

14                           **SIGNATURE ATTESTATION**

15           Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document
16   has been obtained from the other signatories.
17
18   DATED:  July 19, 2019                    By:  _/s/ *Daniel Low*_____
                                                   Daniel Low
19

20                            **CERTIFICATE OF SERVICE**

21           I hereby certify that a true and correct copy of the foregoing was served on all counsel of
22   record by electronic service through the Clerk of the Court's CM/ECF filing system.
23
24   DATED:  July 19, 2019                    By:  _/s/ *Daniel Low*_____
                                                   Daniel Low
25

26

27

28