# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ROBERT HEATH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 15-cv-01824-BLF<br><br>**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT; DISMISSING ACTION WITH PREJUDICE**<br><br>[Re: ECF 428] |

Before the Court is the Parties' Joint Motion for Final Approval of Collective Action Settlement Agreement. Mot., ECF 428. In this collective action, Named Plaintiff Cheryl Fillekes alleges that Defendant Google LLC violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, by engaging in a systematic pattern or practice of discrimination against applicants age forty and older for three positions at Google across the United States. Pending before the Court is the Parties' motion seeking settlement approval. Mot. at i. The settlement resolves the claims of Named Plaintiff and 227 individuals who opted in to (and did not subsequently opt out of) the ADEA collective action (collectively, "Opt-In Plaintiffs") (together with Named Plaintiff, "Plaintiffs"). In their motion, the Parties request that the Court approve the payments to Opt-In Plaintiffs, the incentive award to Named Plaintiff, and the attorney's fees and litigation costs, as well as dismiss the action with prejudice. *See id.* at 1.

Having considered the papers filed by the Parties and the relevant legal authority, the Court GRANTS the Parties' Motion and DISMISSES this action WITH PREJUDICE.

## I. BACKGROUND

### A. Factual and Procedural Background

On April 22, 2015, Robert Heath, who has since settled and dismissed his claims (ECF 422), filed this ADEA collective action. ECF 1. On June 25, 2015, he amended the complaint to add Named Plaintiff. ECF 18. On September 11, 2017, Named Plaintiff[1] filed a second amended complaint. Second Am. Compl. ("SAC"), ECF 218. Defendant is a large American multinational corporation with internet-related products and services that employs over 72,000 employees. SAC ¶ 10. The SAC alleges that Defendant's interviewing and hiring policies intentionally discriminate against or have a disparate impact on older workers. SAC ¶¶ 3, 16–28. Named Plaintiff, who was 47 years old at the time of the relevant events and had extensive educational and work experience, interviewed with Defendant for four different positions, including by in-person interview, but Defendant never hired her. SAC ¶¶ 5, 46–56. She alleges that Defendant did not hire her because of her age.

Based on these alleged actions, Named Plaintiff asserts the following claims against Defendant: (1) violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, for disparate treatment (on behalf of herself and a collective of similarly situated individuals), SAC ¶¶ 62–66; (2) violation of the ADEA for disparate impact (on behalf of herself and a collective of similarly situated individuals),[2] SAC ¶¶ 67–71; and (3) violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 (on behalf of herself), SAC ¶¶ 72–76.

On October 5, 2016, the Court conditionally certified the following collective:

> All individuals who: interviewed in-person for any Site Reliability Engineer ("SRE"), Software Engineer ("SWE"), or Systems Engineer ("SysEng") position with Google, Inc. ("Google") in the United States; were age 40 or older at the time of the interview; and were refused employment by Google; and received notice that they were refused employment on August 28, 2014 through [October 5, 2016].

ECF 121 at 6; ECF 119. By the end of the opt-in period, 262 individuals had opted in. Some of these opt-ins later withdrew or were dismissed. *See, e.g.*, ECF 342. On August 1, 2018, the Court

---

[1] The Court omits references to prior-plaintiff Heath to avoid confusion.
[2] The Court later dismissed Named Plaintiff's disparate impact claim with prejudice. ECF 235.

denied Google's motion to decertify the collective action. ECF 317, 337. On September 13, 2018, the Court denied Google's motion for reconsideration of that decision. ECF 367.

The Parties engaged in extensive discovery in this case between September 4, 2015 and September 21, 2018, when they reached a settlement in principle. *See* Low Decl. ISO Mot. ¶ 5, ECF 432. Defendant deposed Named Plaintiff and about 35 Opt-In Plaintiffs and took written discovery from Named Plaintiff and about 75 Opt-In Plaintiffs. *Id.* Plaintiffs likewise propounded discovery on Defendant, receiving and reviewing over 419,000 pages of documents. *Id.* Both Parties also retained experts who produced multiple expert reports pertaining to potential statistical disparities in Defendant's hiring practices. *Id.*

Since the action's inception, the Parties have also engaged in extensive settlement discussions. They attended a settlement conference with Magistrate Judge Ryu on December 19, 2017 and continued discussions in the summer of 2018. *See* Low Decl. ¶ 7. The Parties engaged in a second settlement conference with Judge Ryu on October 5, 2018 and reached a settlement in principle. *Id.* The Settlement Agreement was finalized in April 2019, when Named Plaintiff, Defendant, and counsel signed the Agreement. *See id.*

On May 14, 2019, the claims administrator Kurzman Carson Consultants, LLC ("KKC") sent notice to the Opt-In Plaintiffs. Seven opt-ins did not accept the Settlement Agreement, leaving 227 Opt-In Plaintiffs (included Named Plaintiff) in the collective. *See* Mot., Ex. 4. Six of the opt-ins declined after discussions about the Agreement with Plaintiffs' counsel. *See* Low Decl. ¶ 12. The other opt-in who did not accept could not be reached despite several attempts through various means by KCC and Plaintiffs' counsel. *Id.*

**B. Settlement Agreement**

In the Parties' Settlement Agreement, Defendant agrees to a gross settlement amount of $11 million. Mot., Ex. 1 ("Agreement") § III.A, ECF 428-2. The gross settlement amount will be allocated as follows: Named Plaintiff will receive $10,000 as an incentive award for serving as Lead Plaintiff. *Id.* § III.B. Plaintiffs' counsel will receive $2,750,000 in fees (25% of the gross settlement amount, without factoring in programmatic relief) plus costs of $174,349. *Id.* § III.B; Mot. at 4. KCC's costs (which total $21,390) will also be deducted from the gross settlement

3

amount. *Id.* § III.A.3; Low Decl. ¶ 17.

The remainder of the fund will go to Plaintiffs. $2.683 million of the gross fund will be distributed equally among the 227 Opt-In Plaintiffs, which amounts to at least $11,465 per Plaintiff. *Id.* § VII.A. The remainder of the fund will be distributed on a pro rata basis to those Opt-In Plaintiffs who have provided information to Collective counsel concerning lost-wages damages they may have suffered as a result of Defendant's decision not to hire them. *Id.* Each Opt-In Plaintiff will receive a pro rata share of the fund proportional to their alleged lost wages. *Id.* All payroll withholding taxes will be paid out of the fund. *Id.* § III.A; *see generally id.* § VII.

KCC will bear responsibility for distributing the funds. *Id.* §§ III.A.3, VII.B, VII.H. If more than $25,000 remains after KCC has attempted to distribute the funds, the funds will be distributed equally among Opt-In Plaintiffs. *Id.* § VII.I. If less than $25,000 remains, the remainder will be donated to the AARP Foundation, and KCC will request that the donation be used to promote the employment of individuals over 40 years of age in technology jobs. *Id.*

Defendant has also agreed to certain "programmatic relief" for four years, including "training employees and managers on age-based bias; the creation of a subcommittee within recruiting that will focus on age diversity in [Software Engineering, Site Reliability Engineering, and Systems Engineering] positions; ensuring that Google's marketing collateral reflects age diversity; ensuring that any age bias complaints for the relevant positions are adequately investigated; and conducting surveys of departing employees about potential discrimination." Mot. at 4; *see* Agreement § IV.A–D.

Under the terms of the Settlement Agreement, Plaintiffs agree to release the following claims and rights against Defendant:

> [A]ll known or unknown claims, promises, causes of action, or similar rights of any kind that they may presently have for discrimination because of age based on claims or allegations that were raised or could have been raised in this Action, in the Second Amended Complaint, or in any Complaint filed in this Action, including, without limitation, claims under the Age Discrimination in Employment Act of 1967 ("ADEA") or parallel state or local laws ("Released Claims").

Agreement § V.A. Named Plaintiff also agrees to release "any and all employment-related claims" she might bring against Defendant. *Id.* § V.C. Plaintiffs also agree not to apply to a job

4

1 with Defendant for three years. *Id.* § VI.

## II. LEGAL STANDARD

The ADEA makes it unlawful for an employer to discriminate against employees on the basis of age. 29 U.S.C. § 623(a)(2). Employees may bring collective age discrimination actions under the ADEA, which "shall be enforced using certain of the powers, remedies, and procedures of the [Fair Labor Standards Act ("FLSA")]." *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 298-99 (N.D. Cal 1991); *see also* 29 U.S.C. § 626(b). Collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discussing FLSA collective action provision, 29 U.S.C. § 216(b), in context of ADEA claims). Courts in this district have held that either the Secretary of Labor or a district court must approve the settlement of an FLSA claim. *See Gonzalez v. Fallanghina, LLC*, No. 16-CV-1832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017); *Slezak v. City of Palo Alto*, No. 16-CV-3224-LHK, 2017 WL 2688224, at *1 (N.D. Cal. June 22, 2017).

The Ninth Circuit has not specifically addressed the criteria courts should use to determine whether to approve an FLSA settlement. However, district courts in the Ninth Circuit have followed the standard set forth in the Eleventh Circuit's *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g.*, *Gonzalez*, 2017 WL 1374582 at *2; *Slezak*, 2017 WL 2688224, at *2. Under *Lynn Food Stores*, before approving an FLSA settlement, the court must scrutinize the settlement agreement to determine if it is "a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355. If the settlement reflects a reasonable compromise over issues that are in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

## III. DISCUSSION

In their motion, the Parties ask the Court to (1) approve the terms of the ADEA settlement, including the recovery for each Plaintiff, attorneys' fees and costs, and Named Plaintiff's incentive award; and (2) dismiss the lawsuit with prejudice. *See* Mot. at i, 1. The Court discusses each request in turn.

5

### A. Approval of the Collective Settlement

Before approving an ADEA settlement, pursuant to FLSA procedures, the Court must find that (1) the case involves a bona fide dispute; (2) the proposed settlement agreement is fair and reasonable; and (3) the award of costs is reasonable. *Lynn's Food Stores*, 679 F.2d at 1354. The Court addresses each issue in turn.

#### 1. Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez*, 2017 WL 1374582, at *2). That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims. *See Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting *Collins v. Sanderson Farms*, 568 F. Supp. 2d 714, 719–20 (E.D. La. 2008)). If there were no doubt as to the employer's liability, the FLSA settlement would allow an employer to avoid paying out the full cost of complying with the FLSA. *See id.* at 1173.

Here, the Court finds that there is a bona fide dispute. The Parties have rigorously debated whether Defendant's interviewing and hiring practices and policies constitute age discrimination under the ADEA, as evidenced by the years of litigation on these issues, including hotly contested motions to dismiss, to certify the collective, to decertify the collective, and to reconsider the order declining to recertify the collective. For example, the Parties disputed (and still dispute) whether Defendant engaged in a pattern or practice of intentional discrimination; whether this case can properly proceed as a collective; whether Named Plaintiff's claims were proper under the ADEA; whether Plaintiffs' expert's statistical evidence—which is critical to claims like these—was admissible and sufficient to establish discrimination; whether Google interviewers have access to interviewees' ages when evaluating them; and more. *See, e.g.*, ECF 317, 252, 235, 119; *see also* Mot. at 7; Low Decl. ¶ 9.

Because the Parties disputed these aspects of the case, the Court finds a bona fide dispute under the FLSA. Most importantly, the Court acknowledges that the purpose of the bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp.*, No. 17-CV-0593-LHK,

6

2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.").

### 2. Fair and Reasonable Resolution

To determine whether the settlement is fair and reasonable, the Court looks to the "totality of the circumstances." *Selk*, 159 F. Supp. 3d at 1173. In making this determination, courts consider the following factors: (1) the plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the Parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See, e.g.*, *id.*; *Jennings*, 2018 WL 4773057, at *4.

The Court will now address each of these factors accordingly.

#### a. Plaintiffs' Range of Possible Recovery

Regarding the Plaintiffs' range of possible recovery, courts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See, e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F. Supp. 3d at 1175; *Glass v. UBS Financial Services, Inc.*, No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co.*, No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc.*, No. SACV 13-128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

Each Plaintiff's average gross recovery under the Agreement is $48,458. Plaintiffs submit that this amount represents over 80% of the estimated actual damages each Opt-In allegedly suffered during the relevant time, based on the lost wages information provided to Plaintiffs' counsel. *See* Low Decl. ¶ 11; Mot., Ex. 1 at 62–72 (documenting each Plaintiff's recovery based on lost wages). Given this substantial recovery, this factor weighs in favor of approval.

#### b. The Stage of the Proceedings and Amount of Discovery Completed

The Court next assesses "the stage of proceedings and the amount of discovery completed

7

to ensure the Parties have an adequate appreciation of the merits of the case before reaching a settlement." *Jennings*, 2018 WL 4773057, at *5 (quoting *Slezak*, 2017 WL 2688224, at *4). If the Parties have "sufficient information to make an informed decision about [the] settlement, this factor weighs in favor of approval." *Id.* (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

This case is several years old, and in that time the Parties have engaged in extensive discovery, including depositions, written discovery, and expert reports. *See* Low Decl. ¶ 5. Indeed, at the time the case settled, Defendant had filed a summary judgment motion. ECF 352. Before that, the Parties had engaged in extensive discovery and briefing related to the motions to certify and then to decertify the collective. Moreover, the Parties have participated in numerous settlement discussion throughout this time. *See* Low Decl. ¶ 7. Given the current stage of the case, the Parties have a good understanding of the merits of their respective positions. Accordingly, this factor weighs in favor of approving the settlement.

### c. The Seriousness of the Litigation Risks Faced by the Parties

Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Jennings*, 2018 WL 4773057, at *5. Plaintiffs faced significant risks if they were to proceed with this litigation. At the time the case settled, Defendant had filed a summary judgment motion targeting several potential weaknesses in Plaintiffs' case (ECF 352). Moreover, when the Court declined to decertify the case, it indicated that it reserved the right to reconsider the decision either for both phases of the two-phase *Teamsters* pattern-or-practice trial or for the remedial phase only. ECF 337 at 28–29. Thus, Plaintiffs faced the risk that the collective might eventually be decertified. And given Defendant's vehement denial of any wrongdoing, it is likely that this case would have been appealed on both factual and legal issues were it to proceed to trial.

Accordingly, further litigation could easily result in Plaintiffs recovering less than the settlement amount or perhaps nothing at all, so this factor weighs in favor of approving the settlement.

### d. The Scope of Any Release Provision in the Settlement Agreement

Courts in this district have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever. *See, e.g., McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-CV-5243-SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012) (ruling that the plaintiffs failed to demonstrate that it would be fair and reasonable for a court to enforce a general release provision of all claims related to their employment in an FLSA settlement); *Garcia v. Jambox, Inc.*, No. 14-CV-3504-MHD, 2015 WL 2359502, *4 (S.D.N.Y. Apr. 27, 2015) (disapproving of release of all claims known and unknown against defendants, including those that seemingly had "no relationship whatsoever" to wage and hour issues); *Ambrosino v. Home Depot. U.S.A., Inc.*, No. 11-CV-1319-MDD, 2014 WL 1671489, at *2–*3 (S.D. Cal. Apr. 28, 2014) (same). However, when a district court in the Ninth Circuit approves an FLSA collective action settlement, it may approve a release of any claims sufficiently related to the current litigation. *See Selk*, 159 F. Supp. 3d at 1178–79; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–89 (9th Cir. 1992)).

Here, the release provision, consistent with Ninth Circuit precedent, is limited to releasing age discrimination claims that Plaintiffs could have asserted in the instant action. *See* Agreement § V.A. As such, the release is not a blanket release of all potential claims, but is instead tailored to the age discrimination action here. Accordingly, this factor weighs in favor of approval of the settlement.

### e. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak*, 2017 WL 2688224, at *5 (citation omitted). Here, the Parties' counsel, "who are experienced in class litigation," "believe that the Settlement is fair and reasonable." Mot. at 10. The Agreement was reached as the result of arms-length, non-collusive negotiations over more than a year and with the aid of Magistrate Judge Ryu. Moreover, after

9

notice and discussion with counsel, only six opt-ins declined to join the settlement.[3] No objections were filed. Low Decl. ¶ 12. Thus, 97% of the class chose to participate in the settlement, indicating widespread approval of the Agreement by the Plaintiffs. Accordingly, this factor weighs in favor of approval of the settlement.

#### f. The Possibility of Fraud or Collusion

When courts in the Ninth Circuit examine the terms of FLSA settlements, courts will often find fraud or collusion if the following conditions are present:

> (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the plaintiffs negotiate a 'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds . . .; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Jennings*, 2018 WL 4773057, at *8 (alterations omitted) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

In this case, the Court finds no signs of fraud or collusion. The Parties reached the settlement through arm's-length negotiations, including with the help of Magistrate Judge Ryu. Low Decl. ¶ 7. Plaintiffs' Counsel will not receive a disproportionate distribution of the settlement fund since only 25% of the gross settlement amount will go towards attorney's fees. Low Decl. ¶ 13. In addition, the Court does not find any evidence of a clear sailing agreement or any reversion of funds. *See generally* Agreement. Therefore, the Court concludes this factor weighs in favor of approval.

\* \* \*

After considering the totality of the circumstances, the Court finds that the proposed settlement is a fair and reasonable resolution of a bona fide dispute.

### B. Attorney's Fees and Litigation Costs

Attorney's fees and litigation costs may also be awarded as part of an FLSA settlement if they are reasonable. *See Selk*, 159 F. Supp. 3d at 1180–81; *see also* 29 U.S.C. § 216(b). Where a

---

[3] An additional opt-in could not be reached.

settlement produces a common fund for the benefit of the entire class, courts may employ either the lodestar method or percentage-of-recovery method to determine whether the attorney's fees are reasonable. *See In re Bluetooth*, 654 F.3d at 942. When applying a percentage-of-recovery method, courts often use 25% of the fund as the "benchmark" for a reasonable fee award. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). In addition, courts can use the lodestar method to cross-check the percentage of recovery. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (noting that when applying the percentage-of-the-fund approach, the court may use the lodestar as a cross-check on the reasonableness of the fee request).

Plaintiffs' counsel requests fees in the amount of $2.75 million and costs in the amount of $174,348.98. Mot. at 11, 14; Mot. Ex. 2, ECF 428-2; Mot., Ex. 3, ECF 428-3. These attorney's fees constitute 25% of the $11 million dollar settlement. Plaintiffs' counsel have expended over 4,000 hours litigating this case and have accumulated a lodestar in the amount of $2,433,068 (plus any fees for the time it takes to finalize the settlement). Low Decl. ¶¶ 13–14; Mot., Ex. 2. Therefore, their request for attorney's fees represents a multiplier of 1.13. Low Decl. ¶ 14. Thus, the percentage of recovery matches the benchmark in the Ninth Circuit, and a lodestar cross check confirms that the request is reasonable.

Furthermore, the litigation costs sought by Plaintiffs' counsel are reasonable. These costs primarily involve professional fees, such as expert fees and court reporting fees, as well as travel expenses. Low Decl. ¶ 15. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Selk*, 159 F. Supp. 3d at 1181 (citation omitted). The Court finds that the amount requested in costs is reasonable under the circumstances and appropriately documented. The same is true of the costs requested by KCC in the amount of $21,390. *See* Agreement § III.A.3; Low Decl. ¶ 17.

Accordingly, the requested attorney's fees and litigation costs are reasonable.

**C. Incentive Award**

The Settlement Agreement also provides for an incentive award of $10,000 for Named Plaintiff. Mot. at 14–15. "[A] district court may award an incentive payment to the named

11

plaintiffs in an FLSA collective action to compensate them for work done on behalf of the class." *Selk*, 159 F. Supp. 3d at 1181. In determining whether a service award is warranted, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). In FLSA settlements, courts in this district have generally found service awards of $5,000 to be reasonable. *Jennings*, 2018 WL 4773057, at *9.

Though the $10,000 award for Named Plaintiff is greater than the typical incentive award in this district, the Court finds that Named Plaintiff's deep involvement with this active case warrants a larger service award. Since June 25, 2015, when she was added as a named plaintiff, Named Plaintiff has spent approximately 250 hours participating in this litigation, including assisting with the amended complaint and her motion to certify the collective, travelling to California from New York to participate in a full-day deposition, responding to written discovery, gathering and producing documents, and travelling to California to participate in mediation. Fillekes Decl. ISO Mot. ¶ 2, ECF 428-1; *see also* Low Decl. ¶ 16. Named Plaintiff's active, continued participation in the case was critical to achieving the substantial recovery here. Accordingly, the Court finds that the requested incentive award is appropriate and approves it.

### D. Dismissal of Action

In the motion's statement of issues to be decided, the Parties ask that this action be dismissed with prejudice if the Court approves the settlement. Mot. at 1. The Court having approved the ADEA settlement hereby DISMISSES WITH PREJUDICE this action. Pursuant to the Parties' Settlement Agreement, the Court retains jurisdiction over this Action for the purpose of entering all orders and judgments authorized that may be necessary to implement and enforce the Settlement. Agreement § VII.G.1.

## IV. ORDER

For the foregoing reasons, the Court GRANTS the Parties' Joint Motion for Final Approval of Collective Action Settlement Agreement. Pursuant to the request in the Joint Motion, the Court hereby DISMISSES WITH PREJUDICE this action.

Without affecting the finality of this Order and accompanying Judgment in any way, the Court retains jurisdiction over (1) implementation and enforcement of the Settlement Agreement until each and every act agreed to be performed by the parties pursuant to the Settlement Agreement has been performed; (2) any other actions necessary to conclude the Settlement and to administer, effectuate, interpret, and monitor compliance with the provisions of the Settlement Agreement; and (3) all parties to this action and Settlement class members for the purpose of implementing and enforcing the Settlement Agreement. Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, the parties shall file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements. The parties must seek approval from the Court for any Cy Pres distributions.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: August 15, 2019

_____
BETH LABSON FREEMAN
United States District Judge